# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION

| | |
|---|---|
| SPIRIT AEROSYSTEMS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> W. KENNETH PAXTON, in his official capacity as Attorney General of Texas, AND JANE NELSON, in her official capacity as Secretary of State of Texas, <br><br> *Defendants*. | Civil Action No. 1:24-cv-00472-DII <br><br><br> JURY TRIAL DEMANDED |

**DEFENDANT W. KENNETH PAXTON'S**

**CROSS MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

    **I.**      **The Basis for OAG's Investigation** .................................................2

    **II.**     **The Requests to Examine at Issue** ...............................................3

LEGAL STANDARD ..........................................................................................................6

ARGUMENT .......................................................................................................................6

    **I.**      **Texas's RTE Statute Represents a Valid Exercise of Visitorial Powers
and Framework for Administrative Subpoena** ....................................7

    **II.**     **Spirit Cannot Sustain a Facial Challenge to the RTE Statute** ..........9

           A.     Multiple avenues exist for RTE recipients to seek
precompliance review ....................................................10

                 1.     Declaratory Judgment Actions ......................................11

                 2.     Action for Protective Order ..........................................13

                 3.     Action for an Injunction................................................13

                 4.     The absence of a statutory provision explicitly authorizing
affirmative precompliance review is not fatal to the
RTE Statute ...................................................................14

           B.     RTE recipients have a reasonable time to seek judicial review ................15

           C.     There is no possibility of imposing penalties prior to an RTE
recipient receiving precompliance review ...................................17

    **III.**    **The Attorney General Cannot Prosecute Spirit for a Misdemeanor,
and the Misdemeanor Provision is in any Event Severable** ............19

           A.     Under Stephens, the Attorney General cannot criminally enforce
the misdemeanor provision .......................................................19

           B.     The misdemeanor provision is severable .................................20

CONCLUSION ...................................................................................................................22

# TABLE OF AUTHORITIES

**Cases:**                                                                                                   **Page(s)**

*Acosta v. Am. Postal Workers Union (APWU) Local4653,*
   2017 WL 6886673 (C.D. Cal. Dec. 4, 2017) ............................................................ 16

*Alliborne v. Freshour,*
   2017 WL 5663607 (Tex. App.—Austin Nov. 21, 2017) ..................................... 11, 12

*Ayotte v. Planned Parenthood of N. New England,*
   546 U.S. 320 (2006) ..................................................................................... 21

*Barr v. Am. Ass'n of Political Consultants, Inc.,*
   140 S. Ct. 2335 (2020)............................................................................. 20, 21

*Camara v. Mun. Court of City & Cnty. of San Francisco,*
   387 U.S. 523 (1967) ..................................................................................... 20

*City of Elsa v. M.A.L.,*
   226 S.W.3d 390 (Tex. 2007)..................................................................... 13, 14

*City of Los Angeles v. Patel,*
   576 U.S. 409 (2015) ..............................................................................*Passim*

*City of Pasadena v. Smith,*
   292 S.W.3d 14 (Tex. 2009) ............................................................................ 6

*Cotropia v. Chapman,*
   721 F. App'x 354, 356-358 (5th Cir. Mar. 12, 2018) ......................................... 13, 18

*Cuomo v. Clearing House Ass'n,*
   557 U.S. 519 (2009) ....................................................................................... 7

*Discover Prop. & Cas. Co. v. Blue Bell Creameries USA, Inc.,*
   622 F. Supp. 3d 349 (W.D. Tex. 2022) ............................................................. 6

*Doe v. United States,*
   253 F.3d 256 (6th Cir. 2001)...............................................................12-13, 18

*Donovan v. Lone Steer, Inc.,*
   464 U.S. 408 (1984) ....................................................................8, 13-14, 17

*Dow Chem. Co. v. United States,*
   476 U.S. 227 (1986) ..................................................................................... 13

*ESI/Emp. Sols. v. City of Dallas*,
    528 F. Supp. 3d 564 (E.D. Tex. 2021) ................................................. 16

*Essgee Co. of China v. United States*,
    262 U.S. 151 (1923) ............................................................. 7, 8

*Galveston, H. & S.A. Ry. Co. v. State*,
    17 S.W. 67 (Tex. 1891) ........................................................... 8

*Humble Oil & Ref. Co. v. Daniel*,
    259 S.W.2d 580, (Tex. App.—Beaumont 1953).................................. 8, 11

*In re Grand Jury Proceedings*,
    802 F.3d 57 (1st Cir. 2015) ...................................................... 16

*In re Subpoena Duces Tecum*,
    228 F.3d 341 (4th Cir.2000)...................................................... 18

*Kalthoff v. Douglas County*,
    2021 WL 3010006 (D. Nev.) ................................................. 15, 18

*Miura Corp. v. Davis*,
    2020 WL 5224348 (C.D. Cal) .................................................... 15

*Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*,
    647 F.3d 202 (5th Cir. 2011)..................................................... 21

*Oklahoma Press Pub. Co. v. Walling*,
    327 U.S. 186 (1946) ........................................................... 8, 12

*Regan v. Time, Inc.*,
    468 U.S. 641 (1984) ............................................................. 21

*Rose v. Doctors Hosp.*,
    801 S.W.2d 841 (Tex. 1990)...................................................... 21

*See v. City of Seattle*,
    387 U.S. 541 (1967) .................................................... 8, 15, 17, 19

*Shaw Constructors v. ICF Kaiser Engineers, Inc.*,
    395 F.3d 533 (5th Cir. 2004)...................................................... 6

*Southwest Airlines Co. v. Roundpipe, LLC.*,
    375 F. Supp. 3d 687 (N.D. Tex. 2019)............................................. 12

*Spears v. Crown Central Petrol. Corp.*,
133 Fed. Appx. 129 (5th Cir. June 1, 2005)............................................................ 12

*State ex rel. Shriver v. Leech*,
612 S.W.2d 454 (Tenn. 1981) .................................................................................. 18

*State Inv. & Ins. Co. v. Superior Ct. of City & County of San Francisco*,
101 Cal. 135 (Cal. 1894) ........................................................................................... 8

*State v. Farmers' Loan & Tr. Co.*,
17 S.W. 60 (1891) ............................................................................................. 8, 17-18

*State v. Stephens*,
663 S.W.3d 45 (Tex. Ct. Crim. App. 2021) ...................................................... 19, 20

*United States v. Booker*,
543 U.S. 220 (2005) ......................................................................................... 20, 21

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982) ................................................................................................... 6

*Walling v. N. Cent. Tex. Municipal Water Auth.*,
348 S.W.2d 532 (Tex. 1961) ................................................................................... 17

*Wash. State Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008) ................................................................................................. 20

*Wilson v. United States*,
221 U.S. 361 (1911) ................................................................................................... 7

**Statutes**

42 U.S.C. § 1983 ...................................................................................................... 13

Tex. Bus. Orgs. Code § 9.001 .................................................................................. 2

Tex. Bus. Orgs. Code § 12.155 ........................................................................... 8, 17

Tex. Civ. Prac. & Rem. Code § 66.001 ................................................................... 8

Tex. Civ. Prac. & Rem. Code § 66.001(d) ............................................................ 17

Tex. Civ. Prac. & Rem. Code 66.002 ..................................................................... 17

Tex. Gov't Code § 311.021(1) .................................................................................. 6

Tex. Labor Code § 21.051 ........................................................................................... 5, 9

Texas. Const. Art. IV, § 22 ............................................................................................. 8

**Rules**

Tex. R. Civ. P. 781 ........................................................................................................ 18

**Other Authorities**

16A Fletcher Cyclopedia of Corporations § 8112.10 .................................................... 19

## INTRODUCTION

This lawsuit concerns a Request to Examine (RTE)[1] issued by the Texas Office of the Attorney General's (OAG) Consumer Protection Division to Spirt AeroSystems, Inc., a manufacturer of aircraft parts and a main supplier to Boeing. In recent years, multiple Boeing planes have either lost parts mid-flight or crashed entirely, resulting in the deaths of hundreds. A recent lawsuit revealed that several whistleblowers have accused Spirit of ignoring persistent manufacturing defects in the parts it delivers to Boeing. OAG is investigating Spirit, a Texas-registered company, for potentially deceptive trade practices related to these whistleblower allegations, in violation of Texas law.

Rather than face up to an investigation, Spirit chose to file this facial challenge to the 100 plus years old RTE statute, claiming it facially violates the Fourth Amendment and is unconstitutional in every application. Spirit claims that the RTE statute provides no opportunity for precompliance review—despite the OAG affording Spirit over a month to seek precompliance review in this court—and risks criminal penalties for noncompliance.

But Texas's Request to Examine statute ("RTE statute") is constitutional, in every application. It authorizes the Office of the Attorney General to issue administrative subpoenas pursuant to the State's visitorial powers, which have been recognized as valid by the Supreme Court for over a century. The RTE statute provides several different avenues for precompliance review within a reasonable time frame. Penalties for failure to comply with an RTE cannot be imposed until and unless the Attorney General commences a quo warranto suit in court, with all the procedural protections that a lawsuit provides. And there is no risk of a criminal penalty for failure to respond to an RTE. Though the RTE statute does technically contain a misdemeanor

---

[1] RTEs are administrative subpoenas authorized by Texas law at sections 12.151–56 of the Texas Business Organizations Code (the RTE statute).

provision, it is unenforceable by the Attorney General, and the Attorney General's office has no record of it having ever been enforced by any district attorney in Texas. Even if criminal prosecution were possible, the misdemeanor provision of the RTE statute is severable.

In other words, the RTE statute raises no Fourth Amendment problems and shares virtually nothing in common with the ordinance at issue in *City of Los Angeles v. Patel*, upon which Spirit's contemporaneously filed Summary Judgment Motion presumably relies. In truth, this facial challenge is Spirit's attempt at distraction—distraction from allegations that Spirit's misleading statements and deceptive trade practices contributed to planes and plane parts falling out of the sky. This Court should grant summary judgment to defendants on all counts and dismiss this case to allow the State's investigation to proceed.

## BACKGROUND

### I.   The Basis for OAG's Investigation

Spirit AeroSystems, Inc. ("Spirit") manufactures aerostructures for commercial, military, and business jets. ECF No. 1 ¶¶ 6, 12 (Compl. for Declaratory, Injunctive, and Other Relief). It is the main aircraft parts supplier to The Boeing Company ("Boeing"), which in turn is Spirit's primary customer. Statement of Proposed Undisputed Facts ("SPUF") ¶¶ 3–4. Spirit operates a facility near Dallas Love Field Airport to provide repair and maintenance services for its customers. ECF No. 1 ¶ 13. To operate that facility, Texas law requires that Spirit register as a foreign filing entity under the Texas Business Organization. *Id.* at ¶ 15 (citing Tex. Bus. Orgs. Code § 9.001).

In October 2018 and March 2019, two separate Boeing 737 MAX airliners crashed, leaving hundreds dead. SPUF ¶ 5. In response, regulators worldwide grounded the 737 MAX aircrafts due to safety concerns. *Id.* at ¶ 6. The components of Boeing aircrafts, including defective parts

manufactured and supplied by Spirit, have since come under scrutiny in various investigations. *Id.* at ¶¶ 7–8.

Before the revelations in the wake of the Boeing crashes, Spirit and its executives routinely touted the safety and quality of the company's products. For instance, Bill Brown, Spirit's Senior Vice President of Quality and Ops Engineering, publicly stated that Spirit has "a great quality system that ensures our parts are inspected and controlled and go out FOD [foreign object debris] free and defect free." *Id.* at ¶ 9. Spirit's publicly available Sustainability Report represented that Spirit is "dedicated to a Zero-Defect target, with no escapements to [its] customers" and that the company makes every effort to "ensure product quality and safety." *Id.* at ¶ 10.

There are now serious reasons to believe that these representations were false when made. For example, on May 3, 2023, a private class action lawsuit was filed in the Southern District of New York against Spirit by shareholders harmed by the company's failure to live up to its representations on product quality. *Id.* at ¶ 11. An amended complaint revealed that several former Spirit employees faced pushback after reporting concerns about persistent manufacturing defects. *Id.* at ¶¶ 15–18. One employee claimed that management often pressured quality-control workers to approve work knowing that the final products contained defects. *Id.* at ¶ 15. The complaint further revealed that Boeing had placed Spirit on probation in 2018 due to the large number of defects found in the fuselages that Spirit shipped to Boeing. *Id.* at ¶ 17. According to the complaint, Spirit's leadership and quality department knowingly failed to take adequate remedial action to ensure quality control. *Id.* at ¶¶ 15–18.

## II.    The Requests to Examine at Issue

On March 28, 2024, the Office of the Attorney General ("OAG") issued a Request to Examine ("RTE") to Spirit Holdings, requesting that the company produce documents relevant to the concerning revelations above, with a deadline of April 17, 2024. ECF No. 1-1 (providing 20

days for compliance). OAG issued the RTE pursuant to Sections 12.151–12.156 of the Texas Business Organizations Code (the "RTE Statute"), which in relevant part grants the Attorney General the following regulatory powers over entities registered to transact business in Texas:

> Sec. 12.152. REQUEST TO EXAMINE. To examine the business of a [registered corporate] entity or foreign [registered corporate] entity, the attorney general shall make a written request to a managerial official, who shall immediately permit the attorney general to inspect, examine, and make copies of the records of the entity.

Although Section 12.152 indicates that a corporation in receipt of an RTE shall "immediately permit" the Attorney General access to the specified records, it is OAG's long-standing practice that recipients are given 20 days to comply. *See* Krhovjak Decl. ¶¶ 4–5. And that is the amount of time that OAG gave to Spirit.

The RTE sought the production of documents falling within 14 narrow specifications, divided between those concerning Spirit's manufacturing defects (Items 1–6 and 12–14) and those concerning the company's diversity, equity, and inclusion ("DEI") commitments (Items 7–11). SPUF ¶ 20. With respect to the mis-drilling defect, for instance, the RTE requested copies of Spirit's communications with investors and Boeing, as well as the company's internal reports and complaints about the defect. PUF ¶ 21 (Items 1–3). Other specifications sought documents "sufficient to show" how Spirit changed its procedures for reporting defects and the corrective measures it undertook in response to being placed on probation by Boeing. PUF ¶ 22 (Items 5–6); *see also* PUF ¶ 23 (seeking under Item 4 communications within a 14-day window from 3 Spirit employees allegedly involved in the suppression of manufacturing defects). In addition, the RTE requested specific documents related to Spirit's diversity, equity, and inclusion ("DEI") commitments and whether Spirit's employment determinations were elevating those commitments above the safety of its airplanes. PUF ¶¶ 22, 24.

On the same date, the Attorney General explained the rationale for opening investigation, noting "reoccurring issues" with Spirit's products sold to Boeing and that these "apparent manufacturing defects have led to numerous concerning or dangerous incidents." PUF ¶¶ 25. The Attorney General further explained that the investigation encompassed Spirit's "DEI commitments, and whether those commitments are unlawful [under state employment laws] or are compromising the company's manufacturing processes." PUF ¶¶ 25; *see also* Tex. Labor Code § 21.051 (outlawing the "fail[ure] or refus[al] to hire an individual" based on that individual's race or other protected characteristic). Pledging to maintain safety standards and ensure passenger safety, the Attorney General emphasized: "The potential risks associated with certain airplane models are deeply concerning and potentially life-threatening to Texans." PUF ¶¶ 25.

At Spirit's request, OAG granted two extensions beyond the initial twenty-day deadline to produce documents in response to the RTE, and a third extension to allow for the parties' cross-motions. ECF No. 1. ¶ 30. PUF ¶¶ 26–8. Thereafter, Spirit filed this lawsuit against OAG on May 1, 2024, alleging, among other things, that OAG had improperly served Spirit's parent company, Spirit Holdings, rather than Spirit. *Id.* at ¶ 22. To resolve any confusion and clarify certain legal misconceptions about the RTE inherent in Spirit's complaint, on May 13, 2024, OAG issued a revised RTE to Spirit, with a new 20-day deadline (June 3, 2024) to produce the requested documents. SPUF ¶ 29 ("the Second RTE"). That same day, before Spirit Holdings produced any documents in response to the March 28, 2024 RTE ("the First RTE"), OAG notified Spirit Holdings' counsel that the First RTE was rescinded, null, and void. SPUF ¶ 30.

In addition to resolving the service issue, the Second RTE was materially different in important respects. As most relevant here, the Second RTE comprehensively revised its introductory paragraphs to explicitly put Spirit on notice of its significant precompliance rights,

including with instructions based on case law about how to obtain precompliance review, as well as the potential penalties for noncompliance. SPUF ¶ 29.

## LEGAL STANDARD

"Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Discover Prop. & Cas. Co. v. Blue Bell Creameries USA, Inc.*, 622 F. Supp. 3d 349, 353 (W.D. Tex. 2022). "After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Id.* at 354. "Cross-motions [for summary judgment] must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533 (5th Cir. 2004).

## ARGUMENT

Spirit has a high burden to prove unconstitutionality. "In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended." Tex. Gov't Code § 311.021(1). Moreover, because Spirit is raising a challenge of facial unconstitutionality, it must show that the statute is unconstitutional in "all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95 (1982). In addition, to prevail, Spirit would have to show that it is not "possible" to "interpret the statutory language in a manner that renders it constitutional." *City of Pasadena v. Smith*, 292 S.W.3d 14, 19 (Tex. 2009). Spirit cannot make that showing.

I.   **Texas's RTE Statute Represents a Valid Exercise of Visitorial Powers and Framework for Administrative Subpoena.**

Texas's RTE statute codifies the Attorney General's authority to supervise corporate compliance with state laws. As such, it is an ordinary implementation of a centuries-old power that the Supreme Court has said time and again is constitutional.

"The corporation is a creature of the state." *Wilson v. United States*, 221 U.S. 361, 383 (1911). "It receives certain special privileges and franchises, and holds them subject to the laws of the state." *Id.* Historically, this has included the right of the state to "demand the production of the corporate books and papers" to determine "how the[] [corporate] franchise[] has been employed." *Id.* This widely recognized right is known as the "visitorial power." *Essgee Co. of China v. United States*, 262 U.S. 151, 155–56 (1923).

 Governments have long used visitorial powers "to detect the abuses [registered entities] ha[ve] committed, to discover its violations of law[,] and to inflict punishment by forfeiture of franchises or otherwise." *Essgee Co.*, 262 U.S. at 155–56. To that end, a registered entity "must submit its books and papers to duly constituted authority when demand is suitably made." *Id.* ("This is involved in the reservation of the visitatorial power of the state."); s*ee also Cuomo v. Clearing House Ass'n*, 557 U.S. 519, 525 (2009) ("Historically, the sovereign's right of visitation over corporations paralleled the right of the church to supervise its institutions and the right of the founder of a charitable institution to see that [his] property [was] rightly employed.").

Indeed, "[i]t would be a strange anomaly to hold that a state, having chartered a corporation to make use of certain franchises, could not, in the exercise of its sovereignty, inquire how these franchises ha[d] been employed, and whether they had been abused, and demand the production of the corporate books and papers for that purpose." *Wilson v. United States*, 221 U.S. 361, 384 (1911). The State's "visitatorial power over the corporations of its creation is as extensive as its

power to authorize their creation." *State Inv. & Ins. Co. v. Superior Ct. of City & County of San Francisco*, 101 Cal. 135, 145 (Cal. 1894); *accord Galveston, H. & S.A. Ry. Co. v. State*, 17 S.W. 67, 71 (Tex. 1891) (holding that when "granting a charter" to a corporation, Texas can "prescribe conditions, upon the performance of which the continued existence of the corporation may be made to depend").

Texas's RTE statute easily fits within this long-standing constitutional doctrine. It is visitorial in nature and derives from the Texas Constitution's grant of similar authority to the Attorney General. *State v. Farmers' Loan & Tr. Co.*, 17 S.W. 60, 64 (1891). *Humble Oil & Ref. Co. v. Daniel*, 259 S.W.2d 580, (Tex. App.—Beaumont 1953); *see also* Texas. Const. Art. IV, § 22. And the principal remedy under visitorial statutes, historically, and the RTE statute, specifically, is revocation of a corporation's corporate charter—its authorization to do business in the State. Tex. Bus. Orgs. § 12.155; *Essgee Co.*, 262 U.S. at 155–56; *see also* Tex. Civ. Prac. & Rem. Code §§ 66.001 *et seq.* (procedure for initiating charter revocation proceedings).

Against this historical backdrop, the Supreme Court has said that when the government "subpoenas corporate books or records, the Fourth Amendment [only] requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984); *See v. City of Seattle*, 387 U.S. 541, 542–43 (1967) ("The agency has the right to conduct all reasonable inspections of such documents which are contemplated by statute, but it must delimit the confines of a search by designating the needed documents in a formal subpoena."); *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 189, 209–211 (1946) (describing how an administrative subpoena merely seeks "the production of specified records"). An RTE indisputably qualifies as a "subpoena" within the meaning of this authority.

The RTE issued here easily meets those criteria, and Spirit's Complaint does not contend otherwise. First, the RTE is limited in scope to defects in fuselages that Spirit manufactured for Boeing and the separate and Spirit's DEI commitments and practices, including the related topic of whether DEI initiatives negatively impacted product quality. *See* PUF ¶¶ 20– 24. Second, the purpose of the RTE was to further an investigation into possible violations of Texas law by Spirit, specifically whether Spirit's public statements about product safety and quality were fraudulent and violated the Texas Deceptive Practices Act. *See* PUF ¶ 25. The RTE also sought to investigate whether Spirit's DEI commitments and practices violated state employment law. *See* PUF ¶ 25; *see also* Tex. Labor Code § 21.051 (outlawing the "fail[ure] or refus[al] to hire an individual" based on that individual's race or other protected characteristic). Third, the RTEs specified a limited number of narrowly drawn document categories for Spirit to copy and produce to OAG with little-to-no burden. *See* PUF ¶¶ 20–24. In short, they complied with the Fourth Amendment's requirements for administrative subpoenas.

## II.    Spirit Cannot Sustain a Facial Challenge to the RTE Statute.

Spirit's facial attack hinges on the claim that the RTE statute violates the Fourth Amendment because it fails to provide an opportunity for "precompliance review" in all circumstances. ECF No. 1 at ¶¶ 39–40. Presumably, Spirit is relying on the Supreme Court's recent *City of Los Angeles v. Patel*, 576 U.S. 409 (2015) decision—the first and only time the Supreme Court has concluded a document demand law was facially invalid for failure to provide precompliance review. In that case, the Supreme Court invalidated a city ordinance requiring a hotel owner to grant police access to its registry of guest information and where owners who refused could be "arrested on the spot," with no precompliance review. *Id.* at 421.

However, *Patel* does not support the conclusion that the RTE statute facially violates the Fourth Amendment, much less that it violates the Fourth Amendment in all its applications—for the following three reasons:

***First***, corporations like Spirit—unlike the hotel owners in *Patel*—***do*** have options for precompliance review of an RTE. The Texas State courts and the Fifth Circuit have said so explicitly, as explained below. ***Second***, corporations like Spirit—unlike the hotel owners in *Patel*—are not expected to comply "on the spot" when they receive an RTE. Instead, the Attorney General customarily gives recipients 20 days to respond, just like it did with Spirit here. And in that time, corporations can easily seize the opportunity for precompliance review, just like Spirit did here. ***Third***, even if Spirit did not take advantage of its opportunities for precompliance review, it—unlike the hotel owners in *Patel*—could not actually be penalized by the Attorney General until completion of court proceedings providing complete review of Spirit's defenses to a penalty.

### A.  *Multiple avenues exist for RTE recipients to seek precompliance review.*

Contrary to Spirit's claim, state and federal courts have steadfastly recognized that entities can seek precompliance review of Texas's RTEs and other materially similar administrative subpoenas, even if the statutory structure governing those subpoenas does not explicitly provide for such review. Over the course of decades, Texas appellate courts, the United States Court of Appeals for the Fifth Circuit, and others have found that recipients have at their disposal multiple legal pathways that allow for the requisite opportunity, including declaratory judgment actions and suits to quash or otherwise obtain protection from an allegedly improper RTE. This Court is bound by this body of unbroken precedent as set forth in the following sections. And because the Fourth Amendment guarantees only the *opportunity* for precompliance review, these binding authorities compel the conclusion that the RTE Statute is not unconstitutional in all applications, and thus the Court should enter judgement in the Attorney General's favor as a matter of law. *See Patel*, 576

U.S. at 421 ("To be clear, we hold *only* that a hotel owner must be afforded *an opportunity* to have a neutral decisionmaker review an officer's demand.") (emphasis added).

     *1.*    *Declaratory Judgment Actions*

Far from supporting its claim, the authorities cited in Spirit's Complaint reveal that Texas courts have long recognized that RTE recipients have the right to bring a declaratory judgment action to litigate the propriety of an RTE. *See* ECF No. 1 at ¶ 18. For example, in the *Humble Oil* case, 259 S.W.2d 580, Humble Oil produced its records in response to an RTE issued by the Attorney General under the predecessor version of the RTE statute, but "reserved the right" to challenge the demand on the grounds that the statutory scheme violated the Fourth Amendment's prohibition on unreasonable searches and seizures and that the RTE exceeded the Attorney General's powers *See id.* at 581–87 (writ ref'd N.R.E.), *cert. denied*, 347 U.S. 936 (1954). Ultimately, Humble Oil sought "return" of the disputed records via a declaratory judgment action. *Id.* at 587–88. After carefully evaluating the statutory scheme and the arguments of the parties, a Texas Court of Appeals concluded that "[t]he question of the validity of [these] statutes and the authority of the Attorney General to act as he did herein thereunder . . . is properly raised" in a "suit for a declaratory judgment." *Id.* at 588 ("We believe that the present controversy is a proper one for determination under the Uniform Declaratory Judgments Act."). Spirit cannot plausibly contend that precompliance review is unavailable when *Humble Oil*—the leading case on the Attorney General's RTE authority—says the opposite.

Spirit may contend that although *Humble Oil* recognized that *review* is available, it did not address a ***precompliance*** posture. But that is a distinction without a difference. More recently, the Austin Court of Appeals recognized that declaratory judgment actions are available under Texas law to challenge the legitimacy of an administrative subpoena precompliance. *Alliborne v. Freshour*, NO. 03–17–00357–CV, 2017 WL 5663607, at *2 (Tex. App.—Austin Nov. 21, 2017)

(pet. filed). In *Alliborne*, a physician challenged an administrative subpoena from the state medical board seeking, among other things, a declaratory judgment pursuant to the Uniform Declaratory Judgment Act. *Id.* at *2. And the court heard that precompliance challenge. The physician contended that the subpoena was overbroad and sought irrelevant information, as well as violated the Fourth Amendment because the statutory scheme did not "afford[] a licensee an opportunity for prompt judicial review of the constitutionality of the subpoena." *Id.* After hearing evidence, the trial rejected the challenge on the merits, concluding that the subpoena was "in all respects reasonable in scope and valid." *Id.* at *3. The Austin Court of Appeals adopted the trial court's reasoning and affirmed. *See id.* at *6–7. Thus, the litigant in that case achieved full precompliance review. As the uniform view of the Texas intermediate appellate courts, *Alliborne* is tantamount to a decision from the Texas Supreme Court under *Erie* and, therefore, binds this Court. *See Spears v. Crown Central Petrol. Corp.*, 133 Fed. Appx. 129, *131 (5th Cir. June 1, 2005) (a federal district court interpreting state law must form its best "*Erie* guess" of how the state's highest court would "decide were the question before it"); *Southwest Airlines Co. v. Roundpipe, LLC.* 375 F. Supp. 3d 687, 702–03 (N.D. Tex. 2019) ("[I]n the absence of an opinion from the state's highest court, the Fifth Circuit has held that federal courts must . . . defer to intermediate state appellate court decisions, unless convinced that the state's highest court would decide otherwise.").

Spirit's complaint suggests that it may try to distinguish *Alliborne* as having been about an administrative subpoena, whereas here Spirit may contend that what it at issue is an administrative *search*. Compl. ¶ 39 (conflating the two). But the RTE is indeed an administrative subpoena, just like the one at issue in *Alliborne*. An administrative ***subpoena*** seeks "the production of specified records." *Oklahoma Press*, 327 U.S. at 189. And that is all that happened here. By contrast, an administrative ***search*** involves physical entry. *See Doe v. United States*, 253 F.3d 256, 264 (6th

Cir. 2001) ("distinguishing "administrative searches, as opposed to administrative subpoenas"). That "would raise significantly different questions." *Dow Chem. Co. v. United States*, 476 U.S. 227, 237 (1986). But it is not what happened here.

2.     *Action for Protective Order*

In any event, corporations like Spirit have even more opportunities for precompliance review, such as through an action for a protective order. In *Cotropia v. Chapman*, a physician brought claims under 42 U.S.C. § 1983 alleging that the Texas medical board and its examiner violated the Fourth Amendment by searching his records using a warrantless subpoena. *See* 721 F. App'x 354, 356–58 (5th Cir. Mar. 12, 2018). In discussing the challenged subpoena, the court noted that *precompliance* review was available to the physician, explaining that under general Texas civil procedural rules, "the person to whom the subpoena [was] directed can, for example, seek a protective order in Texas state court." *Id.* at 358, n.3; *see also id.* at n.2 (affirming the general proposition that "Texas law contemplates the opportunity for precompliance review of an administrative subpoena before a neutral decisionmaker"). The court reasoned, "In this scenario, similar to a situation where [the medical board] files suit to enforce a subpoena, a court can determine whether the subpoena is valid prior to compliance." *Id.* at 358, n.3.

3.     *Action for an Injunction*

Spirit could also obtain review through an action for injunctive relief. The Texas Supreme Court has expressly held that litigants can achieve review of government conduct through an action for injunction to remedy constitutional violations. *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007). And most, if not all, of the arguments that an RTE recipient might raise to challenge an RTE would be of the constitutional variety only; namely, "the Fourth Amendment requires that [all administrative] subpoena[s] be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *Donovan v. Lone Steer,*

13

*Inc.*, 464 U.S. 408, 415 (1984). If a corporation like Spirit believes that an RTE does not satisfy these prerequisites and that, instead, a fishing expedition is afoot, it can seek review under *City of Elsa*.

> 4.    The absence of a statutory provision explicitly authorizing affirmative precompliance review is not fatal to the RTE Statute

In the face of a substantial body of law recognizing and supporting the right of a registered entity to obtain precompliance review of an RTE, Spirit argues that the absence of an explicit statutory "provision" granting a formal opportunity for precompliance review dooms the RTE Statute. ECF No. 1 at ¶ 40. Spirit, however, cannot rest on this formalism to elide the wealth of adverse, binding precedent.

Indeed, Spirit's position reflects nothing more than a flawed overreading of *Patel*, where the Court had no occasion to address the proposition advanced by Spirit. There, as the Court itself recognized, "the City [did] not even attempt to argue that [California law] affords hotel operators *any opportunity whatsoever*" for review. 576 U.S. at 421 (emphasis added). Indeed, in its opening merits brief the City took pains to distinguish the ordinance from "administrative subpoenas," such as an RTE, claiming that the ordinance was not like such subpoenas, and that such subpoenas "would be *worthless*" because giving "hotel owners notice and ample time to submit" the sought-after information would give owners the chance to "falsif[y]" the hotel registry records. City of Los Angeles Opening Merits Brief at 41 (emphasis added). The City later doubled down in its reply brief, disclaiming any conceivable role for precompliance review. *See* City of Los Angeles Reply Brief at 1 (insisting that "*frequent and unannounced spot checks are the only way to catch hotels*") (emphasis added).

For this reason, it should come as no surprise that there does not appear to be a single case holding that the absence of an explicit statutory grant for precompliance review is fatal to an

administrative subpoena statute, particularly when established alternative opportunities for precompliance review exist. Nor would such a holding make sense. As the Supreme Court made clear in *Patel*, it has "never attempted to prescribe the exact form an opportunity for precompliance review must take." *Id.* This flexible approach dovetails with the totality-of-the-circumstances standard for evaluating reasonableness under the Fourth Amendment and ensures the ability to provide constitutional protections tailored to the statutory scheme and factual circumstances of a particular investigation. *See v. City of Seattle*, 387 U.S. 541, 545 (1967) (an administrative subpoena must "be measured, in terms of probable cause to issue a warrant, against a flexible standard of reasonableness that takes into account the public need for effective enforcement of the particular regulation involved"); *Kalthoff v. Douglas County*, No. 3:21-cv-00293-RCJ-CLB, 2021 WL 3010006, at *5 (D. Nev.) (recognizing that precompliance review can take multiple forms and holding that right to appeal notice of violation of city ordinance to advisory board sufficient precompliance review); *Miura Corp. v. Davis*, No. 2:20-cv-05497-SVW-ADS, 2020 WL 5224348, at *6 (C.D. Cal) (holding that there was no evidence that the County would unconstitutionally apply the terms of its order "[a]lthough the language of the Order [was] vague regarding this process [of precompliance review]")*.*

### B.  RTE recipients have a reasonable time to seek judicial review.

Spirit also asserts that the RTE statute infringes the Fourth Amendment on the ground that granting the Attorney General "immediate[]" access to records means it has no opportunity to seek precompliance review. ECF No. 1 ¶ 3. But Spirit overlooks that courts infer a reasonable-time-to-comply provision in such statutes and that OAG has a historical practice of not seeking immediate access and, instead, affording at least 20 days to respond. Moreover, **Spirit** was given 20 days to respond, so it is not apparent how **Spirit** can raise this argument.

15

"Rules and statutes authorizing subpoenas often omit a minimum number of days for complying but will typically provide a 'reasonable time' to comply," and when the operative law lacks such language, "courts have inferred such reasonable-time restrictions" into the law itself. *ESI/Emp. Sols. v. City of Dallas*, 528 F. Supp. 3d 564, 575 n.3 (E.D. Tex. 2021) (citing examples); *Acosta v. Am. Postal Workers Union (APWU) Local4653*, No. ED MC 17-16-JGB, 2017 WL 6886673, at *4 (C.D. Cal. Dec. 4, 2017) (where statute did not indicate time for compliance, finding that "five days between service of the subpoena and the time for compliance is not necessarily unreasonable" under the circumstances "as to make the subpoena defective"). So, although the RTE statute uses the term "immediate" to specify when compliance may be made due, a court striving to construe the statute in a constitutional way would read it to provide a default reasonable time for compliance. That dooms Spirit's argument.

Moreover, as explained in the Declaration of Christopher Krhovjak (an OAG investigator with nineteen years of experience with RTEs), the vast majority of the RTEs issued by OAG have not demanded immediate compliance by the registrant and instead have granted twenty days or more. Krhovjak Decl. ¶¶ 4–5. Both the First RTE (now rescinded) and Second RTE to Spirit provided 20 days to respond, consistent with OAG historical practice, and in fact OAG consented to two extensions requested by Spirit to the First RTE. OAG's undisputed practice—both here and historically—obviates any material concern over Section 12.152, and in any event, the RTE Statute must be read to contain a "reasonable time" qualifier. *In re Grand Jury Proceedings*, 802 F.3d 57, 67–68 (1st Cir. 2015) (explaining the general consensus of how courts treat materially similar issue).

### C. There is no possibility of imposing penalties prior to an RTE recipient receiving precompliance review.

As explained *supra*, RTE recipients plainly have the ability to obtain precompliance review. But even assuming that were not true, and that they were subject to immediate compliance, Spirit's constitutional challenge would still fail. That is because the RTE statute **guarantees** judicial review "prior to" a recipient "**suffering penalties** for refusing to comply." *See v. City of Seattle*, 387 U.S. 541, 545 (1967) (emphasis added); *Donovan v. Lone Steer, Inc.*, 464 U.S. 408 (1984) (Fourth Amendment provides "protection for a subpoenaed employer by allowing him to question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it, by raising objections in an action in district court"). Specifically, the Attorney General cannot not impose the principal penalty of corporate registration forfeiture until after commencing a quo warranto suit in court and overcoming any objections to compliance. Therefore, Spirit or any other RTE recipient would not "suffer" any penalty until after review occurred.

As relevant here, the statute provides that a corporation "that fails or refuses to permit the attorney general to examine or make copies of a record . . . forfeits the right of the entity to do business in this state, and the entity's registration or certificate of formation shall be revoked or terminated." Tex. Bus. Orgs. Code § 12.155. Importantly, this provision is not self-effectuating; rather, the Attorney General must invoke the judicial process to effectuate a registration forfeiture. Specifically, Texas law mandates that the "attorney general" must "petition" a district court "for leave to file an information in the nature of quo warranto." Tex. Civ. Prac. & Rem. Code §§ 66.001(d), 66.002. "[Q]uo warranto proceedings are the sole and exclusive remedy by which the legality of the existence and organization of a public or private corporation may be questioned." *Walling v. N. Cent. Tex. Municipal Water Auth.*, 348 S.W.2d 532, 533 (Tex. 1961). "[T]he final inquiry must in all cases be made in and through the courts." *Farmers' Loan & Tr. Co.,* 17 S.W. at

64. And in such a proceeding, the defendant "shall be entitled to all the rights in the trial and investigation of the matters alleged against him, as in cases of trial in civil cases in this State." Tex. R. Civ. P. 781 (discussing procedure for quo warranto). Therefore, an RTE recipient can refuse to produce documents, with no penalties accruing until after (1) OAG initiates quo warranto proceedings; (2) the recipient asserts all of its grounds for withholding the documents; and (3) a final court order issues rejecting those grounds for withholding.

Numerous courts, including the Fifth Circuit, have held that the opportunity for defensive precompliance review in this manner is consistent with the Fourth Amendment. *Cotropia*, 721 F. App'x at 358, n.3 (finding adequate precompliance review in "a situation where [the medical board] files suit to enforce a subpoena" because "a court can determine whether the subpoena is valid"); *State ex rel. Shriver v. Leech*, 612 S.W.2d 454 (Tenn. 1981) (finding no violation because the visitorial statute "requires judicial approval before any compulsory compliance or sanctions can be obtained by the attorney general . . . . If the subpoenaed party is of the opinion the requests contained in the demand are unreasonable, he can refuse to comply with the demand and raise the issue as a defense to any action brought by the attorney general"); *Doe v. United States*, 253 F.3d 256, 263–64 (6th Cir. 2001) (concluding subpoena raised no constitutional concerns because "the reasonableness of an administrative subpoena's command can be contested in federal court before being enforced.") (relying on *In re Subpoena Duces Tecum*, 228 F.3d 341, 347–49 (4th Cir.2000)); *Kalthoff v. Douglas County*, No. 3:21-cv-00293-RCJ-CLB, 2021 WL 3010006, at *5 (D. Nev.) (stressing timing of penalty imposition is most important consideration).

Importantly, the penalty of charter revocation was simply not at issue in *Patel*. Instead, in *Patel*, a non-compliant hotel owner could be "arrested on the spot." 576 U.S. at 421. In that way, the hotel owner would not be able to obtain review "prior to suffering penalties" (a potentially

unwarranted arrest) "for refusing to comply." *City of Seattle*, 387 U.S. at 545. Regardless, the Second RTE that the Attorney General issued Spirit provided explicit notice of this potential penalty for non-compliance, including that Spirit could raise grounds for non-compliance and objections in a subsequent quo warranto proceeding before forfeiture could occur. This constitutes more than ample protection for recipients. In fact, at least some states allow "a corporation [to be] dissolved by the state without judicial proceedings" at all. 16A Fletcher Cyclopedia of Corporations § 8112.10.

**III.    The Attorney General Cannot Prosecute Spirit for a Misdemeanor, and the Misdemeanor Provision is in any Event Severable.**

Spirit argues the RTE statute is facially unconstitutional because it "subjects company executives to prosecution for a Class B misdemeanor" under Section 12.156. Compl. ¶¶ 40–41. But under binding State court precedent, the Attorney General cannot bring such a prosecution. Nor, to OAG's knowledge, do District Attorneys ever bring such prosecutions. And even if the misdemeanor provision *did* raise a constitutional problem, it is severable.

*A.    Under Stephens, the Attorney General cannot criminally enforce the misdemeanor provision.*

No company executive is at a plausible risk of being criminally charged under section 12.156. Under the highest State criminal court's interpretation of Texas constitutional law, the Attorney General lacks independent authority to initiate criminal prosecutions categorically. *See State v. Stephens*, 663 S.W.3d 45, 56 (Tex. Ct. Crim. App. 2021) ("Absent the consent and deputization order of a local prosecutor or the request of a district or county attorney for assistance, the Attorney General has no authority to independently prosecute criminal cases in trial courts."). Moreover, even prior to *Stephens*, the Office of the Attorney General did not "arrest[] or prosecute[] any individual for failure to respond to an RTE." Krhovjak Decl. ¶ 7. Nor, to the Attorney General's knowledge, does any District Attorney in the state of Texas ever prosecute

anyone for failing to respond to an RTE—whether before or after *Stephens*. *Id.* ¶ 8–9. And the Attorney General does not refer non-compliant companies to District Attorneys for prosecution, *id.* ¶ 9–10, so it is not apparent how a prosecution could ever occur. Because of all of that, it is doubtful that Spirit would even have ***standing*** to challenge the RTE statute's misdemeanor provision—much less to argue that the provision renders the statute *facially* unconstitutional *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (facial challenge to statute requires showing it "is unconstitutional in all of its applications").

The misdemeanor provision in the RTE statute thus bears no resemblance to the ordinance at issue in *Patel*, where police officers would show up to hotels demanding documents and could arrest non-compliant hotel employees "on the spot," and where failure to immediately comply put company employees at risk of "criminal penalty." *Patel*, 576 U.S. at 421 (quoting *Camara v. Mun. Court of City & Cnty. of San Francisco*, 387 U.S. 523, 533 (1967)). The RTE statute's misdemeanor provision cannot be enforced by the Attorney General under Texas law, and as a historical matter the Attorney General and state prosecutors have not enforced it. The RTE statute thus is not facially unconstitutional on this, or any other basis.

### B. *The misdemeanor provision is severable.*

To the extent this Court does have Fourth Amendment concerns with the misdemeanor provision of the RTE statute, section 12.156 is severable, and the remainder of the law should be left intact. The Supreme Court "presumes that an unconstitutional provision in a law is severable from the remainder of the law or statute." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2350 (2020). In *United States v. Booker*, 543 U.S. 220 (2005), when striking down the mandatory provisions of the federal sentencing guidelines but leaving the rest intact, the Court held that any portions of a law "must [be] retain[ed]" if they are "constitutionally valid," are "capable of functioning independently," and are "consistent with [the legislature's] basic

objectives in enacting the statute." *Id.* at 228–29 (citations omitted). "[I]t is fairly unusual for the remainder of a law not to be operative." *Barr*, 140 S. Ct. at 2352. The Court has explained that it prefers to "sever [a law's] problematic portions while leaving the remainder intact" because striking down portions of a law as unconstitutional "frustrates the intent of the elected representatives of the people." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006) (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984)).

In the Fifth Circuit, courts apply Texas law to determine the severability of Texas statutes. *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 216 (5th Cir. 2011). In Texas, courts seek "to retain valid portions and applications of [a] statute whenever possible." *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 844 (Tex. 1990). The key inquiry is whether, "when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected." *Id.*

To the extent it is unconstitutional, the misdemeanor provision at section 12.156 is a textbook case for severability. Its elimination has no effect on the rest of Subchapter B (the Attorney General provisions), including requests to examine under section 12.152, and leaves the remainder of the law "complete in itself. *Rose*, 801 S.W.2d at 844. This result is consistent "with the apparent legislative intent" because it still permits the Attorney General to exercise its authority to regulate Texas-registered businesses. *Id.* It merely removes one avenue for enforcement, while leaving several others available. Thus, if the Court takes issue with section 15.156, this court should adhere to the "strong presumption of severability" and sever it from the rest of the statute, rather than "razing [a] whole statute[]." *Barr*, 2350, 2351.

## CONCLUSION

For the foregoing reasons, summary judgment should be granted in favor of defendants and the case dismissed.

Dated: June 6, 2024                    Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

RYAN S. BAASCH
Chief, Consumer Protection

By:   */s/ Jason C. McKenney*
JASON C. MCKENNEY
State Bar No. 24070245
Assistant Attorney General,
Jason.McKenney@oag.texas.gov
Tel: 214-290-8808
Fax: 214-969-7615

ABIGAIL E. SMITH
Assistant Attorney General
abby.smith@oag.texas.gov

Office of the Attorney General
Consumer Protection Division
12221 Merit Drive, Ste. 650
Dallas, Texas 75251

SCOTT FROMAN
Assistant Attorney General
Office of the Attorney General
Consumer Protection Division
P.O. Box 12548
Austin, Texas 78711

Scott.Froman@oag.texas.gov
Tel: 512-463-1264
Fax: 512-473-8301

*Attorneys for Defendant W. Kenneth Paxton, in his official capacity as Attorney General of Texas*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of June 2024, a copy of the foregoing document was served via electronic mail to all counsel of record.

 */s/ Jason C. McKenney*
JASON C. MCKENNEY
Assistant Attorney General

23