UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SPIRIT AEROSYSTEMS, INC., | Civil Action No. 1:24-cv-00472-DII |
| *Plaintiff*, | |
| v. | **ORAL ARGUMENT REQUESTED** |
| W. KENNETH PAXTON, *in his official capacity as Attorney General of Texas*, JANE NELSON, *in her official capacity as Secretary of State of Texas*, | |
| *Defendants*. | |

---

**SPIRIT AEROSYSTEMS, INC.'S MOTION FOR
SUMMARY JUDGMENT AND PERMANENT INJUNCTION**

---

McCARTY LAW PLLC
Darren L. McCarty (SBN: 24007631)
darren@mccartylawpllc.com
1410B West 51st Street
Austin, TX 78756
Telephone: (512) 827-2902

WILMER CUTLER PICKERING HALE
AND DORR LLP
Matthew T. Martens (*pro hac vice*)
    matthew.martens@wilmerhale.com
Jaclyn N. Moyer (*pro hac vice*)
    jaclyn.moyer@wilmerhale.com
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6921

*Attorneys for Plaintiff Spirit
AeroSystems, Inc.*

**TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................1

II.    STATEMENT OF UNDISPUTED MATERIAL FACTS ......................................2

    A.    Spirit Is A Kansas-Based Corporation That Manufactures Aerostructures ............2

    B.    The Texas Request To Examine Statute .................................................................3

    C.    The Texas Attorney General Seeks To Compel A Kansas-Based Company To Produce Documents About Out-Of-State Events .................................................5

III.    LEGAL STANDARD...........................................................................................8

IV.    ARGUMENT ......................................................................................................9

    A.    Texas's Request To Examine Statute Is Unconstitutional On Its Face ..................9

        1.    The Fourth Amendment Forbids Warrantless Administrative Searches Without Opportunity For Precompliance Judicial Review..............9

        2.    The RTE Statute Unconstitutionally Grants The Attorney General Discretionary Authority To Demand Immediate Access To Any Business Records Of A Filing Entity Without Precompliance Judicial Review ....................................................................................................11

        3.    The May 13 Request Cannot Save A Facially Invalid Statute......................17

        4.    The RTE Statute Does Not Satisfy The "Closely Regulated Industry" Exception .................................................................................................19

    B.    The Attorney General Should Be Enjoined From Issuing Requests Pursuant To The RTE Statute ..............................................................................21

V.    CONCLUSION..................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Airbnb, Inc. v. City of New York*,
    373 F. Supp. 3d 467 (S.D.N.Y. 2019)................................................................13, 21

*Annunciation House, Inc. v. Paxton*,
    Cause No. 2024DCV0616 (Tex. Dist. Ct., El Paso County) ....................................7

*Brigham City v. Stuart*,
    547 U.S. 398 (2006)................................................................................................19

*Byrd v. United States*,
    584 U.S. 395 (2018)................................................................................................12

*Calmes v. United States*,
    926 F. Supp. 582 (N.D. Tex. 1996) ......................................................................21

*Camara v. Municipal Court of the City and County of San Francisco*,
    387 U.S. 523 (1967)................................................................................................17

*City of Los Angeles v. Patel*,
    576 U.S. 409 (2015)........................................................................................ *passim*

*Coca-Cola Co. v. Harmar Bottling Co.*,
    218 S.W.3d 671 (Tex. 2006)..............................................................................6, 20

*Cotropia v. Chapman*,
    978 F.3d 282 (5th Cir. 2020) ......................................................................... *passim*

*Donovan v. Lone Steer, Inc.*,
    464 U.S. 408 (1984)................................................................................................14

*ESI/Employee Solutions, L.P. v. City of Dallas*,
    450 F. Supp. 3d 700 (E.D. Tex. 2020).........................................................9, 12, 14

*Florida v. Jardines*,
    569 U.S. 1 (2013)..............................................................................................12, 17

*Humble Oil & Refining Co. v. Daniel*,
    259 S.W.2d 580 (Tex. Civ. App. 1953) ........................................................ *passim*

*Katz v. United States*,
    389 U.S. 347 (1967)..........................................................................................10, 12

*Louisiana v. Biden*,
    55 F.4th 1017 (5th Cir. 2022) ................................................................................22

*Mapp v. Ohio*,
   367 U.S. 643 (1961) ............................................................................................9

*New York v. Burger*,
   482 U.S. 691 (1987) ......................................................................................2, 20

*Patel v. City of Los Angeles*,
   738 F.3d 1058 (9th Cir. 2013) ........................................................................12

*See v. City of Seattle*,
   387 U.S. 541 (1967) ....................................................................................10, 14

*Sheline v. Dun & Bradstreet Corp.*,
   948 F.2d 174 (5th Cir. 1991) ............................................................................8

*Skinner v. Railway Labor Executives' Association*,
   489 U.S. 602 (1989) ..........................................................................................9

*United States v. Jones*,
   565 U.S. 400 (2012) ........................................................................................12

*United States v. Morton Salt Co.*,
   338 U.S. 632 (1950) ......................................................................................9, 10

*United States v. Rafoi*,
   60 F.4th 982 (5th Cir. 2023) .............................................................................8

*United States v. U.S. District Court for Eastern District of Michigan*,
   407 U.S. 297 (1972) ........................................................................................17

*US Airways, Inc. v. O'Donnell*,
   627 F.3d 1318 (10th Cir. 2010) ........................................................................6

*Valentine v. Collier*,
   993 F.3d 270 (5th Cir. 2021) ..........................................................................21

*Walker-Texas Inv. Corp. v. State*,
   323 S.W.2d 603 (Tex. Civ. App. 1959) .............................................4, 7, 15, 16

*Zadeh v. Robinson*,
   928 F.3d 457 (5th Cir. 2019) ......................................................................19, 20

## Rules, Regulations, Statutes

Cal. Civ. Proc. Code § 1060 ....................................................................................18

Tex. Bus. Orgs. Code § 9.001 ...................................................................................3

Tex. Bus. Orgs. Code §§ 12.152-12.156 ............................................................ *passim*

Tex. Bus. Orgs. Code, Title I, ch. 12 ............................................................................14

Tex. Gov't Code § 422.003 ...........................................................................................14

Tex. Labor Code § 21.003(a)(2) ......................................................................................6

Tex. Penal Code § 12.22 .................................................................................................4

Tex. Sec. Act § 4007.053 ................................................................................................6

22 Tex. Admin. Code § 179.4(d) ...................................................................................11

Fed. R. Civ. P. 56(a) .......................................................................................................8

## Constitutional Authority

U.S. Const. amend. IV ............................................................................................ *passim*

U.S. Const. amend. XIV ..................................................................................................9

## Other Authorities

James E. Davis & Jon L. Gillum, *Government Pre-Suit Investigative Powers: A Survey of Common Issues Arising from Investigations by the Texas Attorney General and the Texas Department of Insurance*, 14 Tex. Tech. Admin. L.J. 301 (2013) ....................................................................................................................4

Plaintiff Spirit AeroSystems, Inc. respectfully moves this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff further moves this Court for a permanent injunction precluding Defendant W. Kenneth Paxton, in his official capacity as the Texas Attorney General, from issuing requests pursuant to or otherwise seeking to enforce requests under Texas Business Organizations Code § 12.151, *et seq*.

## I.     INTRODUCTION

The Texas Attorney General issued a so-called "Request to Examine" to Spirit AeroSystems, Inc. ("Spirit"), a company headquartered in Kansas that manufactures aerostructures—that is, components of an aircraft's airframe. The Request to Examine was issued pursuant to Texas Business Organizations Code §§ 12.151-12.156 (the "RTE Statute"), which among other things gives the Attorney General unlimited authority to demand immediate access to "any record" of a filing entity or foreign filing entity (such as Spirit) registered in Texas. Tex. Bus. Orgs. Code § 12.151. Upon receipt of such a request, a company must "immediately permit" the Attorney General to "inspect, examine, and make copies of" the entity's records. *Id.* § 12.152. Failure to permit the Attorney General immediate access leads to forfeiture of the right to do business in the State and exposes company management to criminal sanctions. *Id.* §§ 12.155-12.156.

Spirit has significant objections to the reasonableness of the Attorney General's overbroad and burdensome Request to Examine. The Supreme Court has made clear that "in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *City of Los Angeles v. Patel*, 576 U.S. 409, 420 (2015); *see also Cotropia v. Chapman*, 978 F.3d 282, 286 (5th Cir. 2020). But the RTE Statute provides no mechanism for presenting those objections to a neutral decisionmaker in

a precompliance review.  That alone renders the statute facially unconstitutional under the Fourth Amendment.

As there is *no* Texas law regulating the commercial aircraft manufacturing industry, it is not a "closely regulated industry" exempted from the Fourth Amendment's precompliance review requirement.  And even if it were such an industry, the RTE Statute would nonetheless violate the Fourth Amendment because it fails to provide "certainty and regularity" in its application by "limit[ing] the discretion of the inspecting officers."  *New York v. Burger*, 482 U.S. 691, 703 (1987); *see also Cotropia*, 978 F.3d at 287 (quoting *Burger*, 482 U.S. at 703); *Patel*, 576 U.S. at 426-427.  Far from limiting the Attorney General's discretion, the RTE Statute affords the Attorney General "the full and unlimited and unrestricted right to examination of the corporation's books and records at any time and as often as he may deem necessary."  *Humble Oil & Refining Co. v. Daniel*, 259 S.W.2d 580, 589 (Tex. Civ. App. 1953).  Conferring on a state official such sweeping (and unreviewable) discretion to invade Spirit's privacy interests is constitutionally intolerable under the Fourth Amendment.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    Spirit Is A Kansas-Based Corporation That Manufactures Aerostructures

Spirit is one of the world's largest manufacturers of aerostructures for commercial aircraft, defense platforms, and business and regional jets.  Welner Decl. ¶ 3.  Spirit is headquartered in Wichita, Kansas and incorporated in Delaware.  *Id.* ¶ 2.  As is most relevant here, Spirit manufactures the fuselages used in Boeing 737 airplanes.  Fuselage design and delivery of the final fuselage product to Boeing takes place entirely outside Texas, at Spirit's 650-acre campus in Wichita, Kansas.  *Id.* ¶ 4.  The Wichita campus includes Spirit's corporate offices, 1.9 million square feet of space for the engineering and design group, 8.1 million square feet of manufacturing space, and 2.7 million square feet for warehouses and support functions.  *Id.* ¶ 4.

Spirit operates a single facility in Texas, near the Dallas Love Field Airport.  Welner Decl.
¶ 5.  Spirit's Dallas facility is small: it totals less than 200,000 square feet and employs
approximately 98 of Spirit's 20,655 employees worldwide.  *Id.* ¶ 5-6.  The Dallas facility is focused
narrowly on providing maintenance, repair, and overhaul services, with a particular specialty for
repairing nacelle and flight control surfaces; it is not involved in corporate governance or the
production of fuselages.  *Id.* ¶ 5.  Spirit has no manufacturing operations in Texas.  *Id.*  But to
operate its repair-and-maintenance facility in Dallas and conduct any other business in the State,
Spirit is required to and did register as a foreign filing entity under the Texas Business
Organizations Code.  *See* Tex. Bus. Orgs. Code § 9.001; Welner Decl. ¶ 7.

## B.    The Texas Request To Examine Statute

The RTE Statute gives the Attorney General unlimited discretion to demand immediate
access to "any record" of any filing entity or foreign filing entity registered in Texas.  Tex. Bus.
Orgs. Code § 12.151.  The statute defines "record" broadly to include "minutes" and any "book,
account, letter, memorandum, document, check, voucher, telegram, constitution, and bylaw."  *Id.*
Upon written request from the Attorney General (a "Request to Examine" or "Request"), a filing
entity must "immediately permit" the Attorney General to "inspect, examine, and make copies of"
its records.  *Id.* § 12.152.  What is more, the statute—which Texas state courts have referred to as
a "visitorial statute"—purports to confer on the Attorney General the authority "to make
examination of the records of the corporation as often as he may deem necessary immediately after
presentation of a letter of request for such examination."  *Humble Oil*, 259 S.W.2d at 589.  In other
words, the statute "give[s] to the Attorney General an unlimited and unrestricted right of visitation"
and "grant[s] the Attorney General the full and unlimited and unrestricted right to examination of
the corporation's books and records at any time and as often as he may deem necessary."  *Id.*

3

Noncompliance carries severe penalties.  An entity that "fails or refuses" to comply with a Request to Examine "forfeits the right … to do business" in Texas and its foreign filing registration—which is filed with the Texas Secretary of State—"shall be revoked or terminated." Tex. Bus. Orgs. Code § 12.155.  Texas law empowers the Attorney General to bring "quo warranto proceedings" against any corporation that "does or omits an act that requires a surrender or causes a forfeiture of its rights and privileges as a corporation."  Tex. Civ. Prac. & Rem. § 66.001(4); *see also Walker-Texas Inv. Corp. v. State*, 323 S.W.2d 603, 606 (Tex. Civ. App. 1959) (affirming revocation of corporation's charter where corporation had refused to permit the Attorney General to examine its books and records).  Furthermore, the RTE Statute provides for criminal penalties. Any "managerial official or other individual having the authority to manage the [entity's] affairs" who "fails or refuses" to comply with a Request can be convicted of a Class B misdemeanor.  Tex. Bus. Orgs. Code § 12.156.  In Texas, an individual convicted of a Class B misdemeanor can be sentenced to 180 days in jail.  *See* Tex. Penal Code § 12.22.

Despite authorizing sweeping intrusions by the State into private records—records in which companies have a recognized privacy interest under the Fourth Amendment—the RTE Statute provides "no express mechanisms" to allow a company to seek precompliance review of a Request.  Davis & Gillum, *Government Pre-Suit Investigative Powers: A Survey of Common Issues Arising from Investigations by the Texas Attorney General and the Texas Department of Insurance*, 14 Tex. Tech. Admin. L.J. 301, 323 (2013).  The RTE Statute also lacks any substantive standards to challenge the reasonableness or breadth of a Request.  Nor does it provide any mechanism for delaying inspection or time to comply.  Indeed, precompliance review is inconsistent with the statutory scheme, which requires "immediate" compliance with a Request on pain of severe consequences.  *See* Tex. Bus. Orgs. Code §§ 12.152, 12.155, 12.156.

**C.      The Texas Attorney General Seeks To Compel A Kansas-Based Company To Produce Documents About Out-Of-State Events**

Following decreases in Spirit's share value, shareholders of Spirit's parent company, Spirit AeroSystems Holdings, Inc. ("Spirit Holdings"), filed a federal securities fraud class action in New York, making certain allegations concerning the company's quality control processes.  Martens Decl. ¶ 8.  An amended complaint was filed in that action in December 2023.  *Id*.  On January 5, 2024, a Boeing 737 Max aircraft operated by Alaska Airlines suffered a door plug blowout on a flight from Portland, Oregon to San Bernardino County, California.  Welner Decl. ¶ 9.

On March 28, 2024, the Texas Attorney General announced an investigation of alleged "manufacturing defects" in fuselages that Spirit manufactures for Boeing entirely outside Texas, and "incidents" involving Boeing 737 jets that likewise occurred entirely outside the State. Martens Decl. ¶ 3; Welner Decl. ¶¶ 4-5.  The Attorney General issued a press release stating that he was seeking a "variety of documents relevant to manufacturing defects in [Spirit Holdings'] products" and, more specifically, "documents related to [the company's] diversity, equity, and inclusion ('DEI') commitments, and whether those commitments are unlawful or are compromising the company's manufacturing processes."  Martens Decl. Ex. 2.  That same day, the Attorney General issued a Request to Examine under § 12.151 ("March 28 Request"), erroneously addressed to Spirit Holdings, which is not a foreign filing entity registered in Texas, and purporting to require the production of documents responsive to fourteen different demands. Martens Decl. Ex. 1.  Among other things, the March 28 Request sought documents related to the federal securities fraud class action filed against Spirit Holdings in New York.  *Id.*  The Request also sought documents related to DEI hiring practices.  *Id.*

Notably, the Attorney General has no investigative authority whatsoever with regard to securities law violations, employment discrimination, or airplane manufacturing defects.  The

investigation of state securities law violations is assigned to the Texas Securities Board.  Tex. Sec.
Act § 4007.053.  The investigation of employment discrimination in violation of Texas law is
assigned to the State's Labor Commissioner.  Tex. Labor Code § 21.003(a)(2).  And Texas law
does not assign the regulation of airline manufacturing to any state government entity or official.[1]
In any event, Texas substantive law presumptively applies only to conduct within the State.  *See
Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 682 (Tex. 2006) ("We start with the
principle that a statute will not be given extraterritorial effect by implication but only when such
intent is clear.").

Nevertheless, the Attorney General prominently warned Spirit Holdings in bold letters that
noncompliance with the March 28 Request would result in the loss of its right to do business in
the State and in criminal penalties for certain company managers.  Martens Decl. Ex. 1.  The
Attorney General declined a request by Spirit's counsel to withdraw the March 28 Request but
indicated that he would delay the response date so that Spirit could bring the instant action.
Martens Decl. ¶ 4.

On May 1, Spirit filed its complaint, raising facial and as-applied challenges to the RTE
Statute under the Fourth Amendment, noting in the complaint that the Attorney General had
directed the March 28 Request to the wrong legal entity.  Compl. ¶¶ 6-7, 21-22.  On May 13, the
Attorney General sent a letter to Spirit's counsel "rescind[ing]" the March 28 Request, thus
rendering moot the as-applied constitutional challenge to that Request.  Martens Decl. ¶ 5.  The
Attorney General simultaneously issued a new Request to Examine directed to Spirit (the "May

---

[1] And with good reason, as some courts have held that state laws purporting to regulate
aviation safety are preempted by federal law.  *See, e.g.*, *US Airways, Inc. v. O'Donnell*, 627 F.3d
1318, 1326-1327 (10th Cir. 2010) ("[F]ederal regulation occupies the field of aviation safety to
the exclusion of state regulations").

13 Request"). Martens Decl. Ex. 4. The May 13 Request changed little of substance from the March 18 Request, removing only a single demand (for "Spirit's procedures, guidelines, and/or details of its Incentive Compensation Plan"). *Compare* Martens Decl. Ex. 1 *with* Ex. 4. What is different about the May 13 Request is that the Attorney General has revised the "Notice" section substantially and now "encourage[s]" Spirit "to meet and confer with the Office of the Attorney General if you contend that any of the information sought … is constitutionally protected or otherwise legally exempt from production." Martens Decl. Ex. 4. The Notice section further claims that if Spirit "cannot reach agreement with the Office of the Attorney General . . . , you may attempt to obtain judicial review of the [Request to Examine] before June 3, 2023" through either a suit for declaratory judgment or injunctive relief in Texas state court. *Id.* And the Request further advises that "the Office of the Attorney General will not dispute the availability of judicial review." *Id.*

This is different from how the Attorney General initially intended to exercise the unfettered discretion granted to him by the RTE Statute and from how he exercised his discretion under that same statute only four months ago during his investigation of Annunciation House, Inc., a non-profit entity organized under Texas law and registered to do business in the state. *See Annunciation House, Inc. v. Paxton*, Cause No. 2024DCV0616 (Tex. Dist. Ct., El Paso County, Feb. 16, 2024), OAG's [Proposed] Petition and Counterclaim in the Nature of Quo Warranto ("Annunciation Petition"), at ¶ 4, attached as Martens Decl. Ex. 7. There, the Attorney General served a Request to Examine on Annunciation House on February 7, 2024, demanding "immediate access" to certain documents. *Id.* ¶¶ 20-21. In doing so, the Attorney General cited his "broad" and "expansive" power under the RTE Statute, *id.* ¶ 9, and claimed his "power to demand access to a corporation's records 'immediately' is … historically well-established," *id.* at ¶ 31 (citing *Walker-Texas*, 323

S.W.2d at 606). He further characterized any period of time he grants a Request recipient to respond "a matter of grace." *Id.* at ¶ 24. Extending this "grace," the Attorney General permitted Annunciation House just one day to comply. *Id.* Annunciation House filed an action in Texas state court the next day—within the one-day "grace" period—seeking a declaratory judgment and temporary restraining order. The Attorney General responded ***not*** by conceding the availability of judicial review but rather by immediately filing a petition to forfeit Annunciation House's registration to do business in the State and to appoint a receiver to wind up its affairs. *Id.* at ¶¶ 26, 45. According to the Attorney General, Annunciation House had violated its statutory obligation to provide "immediate"—which means "right away"—access to its records, and "[t]he Court must enforce the statute 'as written' and 'refrain from rewriting text that lawmakers chose.'" *Id.* at ¶¶ 30, 34.

## III.   LEGAL STANDARD

Summary judgment must be granted where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is particularly appropriate where "the only issue before the court is a pure question of law." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991). "A facial challenge to the constitutionality of a statute," like the one here, "presents a pure question of law." *United States v. Rafoi*, 60 F.4th 982, 996 (5th Cir. 2023).

## IV.     ARGUMENT

### A.     Texas's Request To Examine Statute Is Unconstitutional On Its Face

1.     *The Fourth Amendment Forbids Warrantless Administrative Searches Without Opportunity For Precompliance Judicial Review*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.[2] It is well-settled that "[t]he rights secured by the Fourth Amendment extend not only to physical searches, but also include compulsory inspection of documents in a commercial establishment." *ESI/Emp. Sols., L.P. v. City of Dallas*, 450 F. Supp. 3d 700, 724 (E.D. Tex. 2020); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 651-652 (1950) (Fourth Amendment "is not confined literally to searches and seizures as such, but extends as well to the orderly taking under compulsion of process").

As a general rule, the Fourth Amendment requires that searches be conducted only pursuant to warrants supported by probable cause.  *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015); *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 619 (1989) ("Except in certain well-defined circumstances, a search or seizure ... is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause.").  The Supreme Court has "repeatedly held that 'searches conducted outside the judicial process, without prior approval by [a] judge or [a] magistrate judge, are *per se* unreasonable … subject only to a few specifically established and well-delineated exceptions."  *Patel*, 576 U.S. at 419 (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)).

---

[2] The Fourth Amendment is incorporated against the States pursuant to the Fourteenth Amendment.  *Mapp v. Ohio*, 367 U.S. 643, 654 (1961).

The limited exceptions to the warrant requirement have careful bounds.  For instance, the warrant requirement does not apply where the government acts pursuant to "special needs" and "where the primary purpose of the searches is [d]istinguishable from the general interest in crime control."  *Patel*, 576 U.S. at 420 (internal quotation marks omitted).  In these cases, which involve so-called "administrative searches," the government need not obtain a warrant.

But "in order for an administrative search to be constitutional, the subject of the search ***must*** be afforded an opportunity to obtain precompliance review before a neutral decisionmaker."  *Patel*, 576 U.S. at 420 (emphasis added).  The availability of "judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply" is "constitutionally required in the case of investigative entry upon commercial establishments."  *See v. City of Seattle*, 387 U.S. 541, 545 (1967).  The same constitutionally protected interests are implicated in the "orderly taking" of documents without physical intrusion on property.  *Morton Salt*, 338 U.S. at 651-652; *cf. Katz v. United States*, 389 U.S. 347, 360-361 (1967) (Harlan, J., concurring) (Fourth Amendment is implicated where an authority "inva[des] … a constitutionally protected privacy interest to gather information").  The opportunity for judicial review is critical to the constitutionality of administrative searches because it minimizes the "intolerable risk that searches … will exceed statutory limits, or be used as a pretext to harass."  *Patel*, 576 U.S. at 421.

In *Patel*, the Los Angeles ordinance at issue "require[d] hotel operators to record information about their guests," including the guest's name and address, the number of people in the guest's party, the date and time of arrival and departure time, the make, model, and license plate number of the guest's car parked on hotel property, the rate charged, and method of collection.  *Patel*, 576 U.S. at 412-413.  The ordinance also required hotels to make those records "available to any officer of the Los Angeles Police Department for inspection."  *Id.* at 413.  On

review, the Supreme Court concluded that the Fourth Amendment protected the hotel's right to privacy in this information. *See id.* at 420. Because the contemplated inspections were administrative searches, the Supreme Court concluded that the ordinance was "facially unconstitutional because it penalizes [hotel operators] for declining to turn over their records without affording them any opportunity for precompliance review." *Id.* at 412.

Applying *Patel*, the Fifth Circuit recently held that a state regulatory inspection authority similar to that under the RTE Statute was unconstitutional. *See Cotropia v. Chapman*, 978 F.3d 282, 287 (5th Cir. 2020). In that case, the Texas Administrative Code gave the Texas Medical Board and its representatives "the power … to inspect and copy records of purchases and disposals of drugs" by a medical practice. 22 Tex. Admin. Code § 179.4(d). Pursuant to this regulation, an investigator from the Texas Medical Board searched a medical clinic and made copies of certain of its records. Relying on *Patel*, the clinic's physician challenged the search of his clinic as violative of the Fourth Amendment, and the Fifth Circuit concluded that the Texas Medical Board's investigator had "violated [the physician's] constitutional rights when she copied documents in [the clinic's] office without any precompliance review of the administrative subpoena." *Cotropia*, 978 F.3d at 287.

        2.       The RTE Statute Unconstitutionally Grants The Attorney General Discretionary Authority To Demand Immediate Access To Any Business Records Of A Filing Entity Without Precompliance Judicial *Review*

The RTE Statute, which purports to grant to the Attorney General the same inspection powers as the ordinance and regulation at issue in *Patel* and *Cotropia*, respectively, suffers from that same constitutional infirmity.

        a.       The RTE Statute Implicates Fourth Amendment Privacy Interests

There is no serious question that the RTE Statute implicates the Fourth Amendment because the Attorney General can, through a Request to Examine, seek "any record" of a domestic

or foreign filing entity.  Tex. Bus. Orgs. Code § 12.151.  When the government compels a business to turn over its "papers," the Fourth Amendment is implicated.  *See Patel v. City of Los Angeles*, 738 F.3d 1058, 1061 (9th Cir. 2013) ("The 'papers' protected by the Fourth Amendment include business records like those at issue here."), *aff'd Patel*, 576 U.S. 409; *see also ESI/Emp. Sols., L.P.*, 450 F. Supp. 3d at 724.   A search or seizure occurs when the state **either** "physically occupie[s] private property for the purpose of obtaining information," *United States v. Jones*, 565 U.S. 400, 404 (2012), **or** "inva[des] … a constitutionally protected privacy interest to gather information," *Katz*, 389 U.S. at 360-361 (Harlan, J., concurring); *see also Byrd v. United States*, 584 U.S. 395, 403-404 (2018) ("Fourth Amendment cases have clarified that the test [derived from *Katz*] supplements, rather than displaces, 'the traditional property-based understanding of the Fourth Amendment.'" (quoting *Florida v. Jardines*, 569 U.S. 1, 11 (2013)).  Spirit's privacy interests in both its real property and business records are implicated by the RTE Statute, which "give[s] the Attorney General an unlimited and unrestricted right of visitation" to effectuate his "full and unlimited and unrestricted right to examination of the corporation's books and records." *Humble Oil & Refining Co. v. Daniel*, 259 S.W.2d 580, 589 (Tex. Civ. App. 1953).

> b.     The RTE Statute Requires Immediate Access To Confidential Business Records Without Any Opportunity For Pre-Compliance Review

The Fourth Amendment requires that, when the government demands business records without a warrant in an administrative search, the subject of the search be "afforded an opportunity to obtain precompliance review before a neutral decisionmaker."  *Patel*, 576 U.S. at 420; *see also Cotropia*, 978 F.3d at 286.  The RTE Statute provides no such opportunity.

      i.     The Statute Affords No Opportunity For Precompliance
            Review

The RTE Statute is facially unconstitutional because it permits warrantless searches and seizures without any mechanism for precompliance review of a Request before a neutral decisionmaker.[3]  Just as the ordinance in *Patel*, the RTE Statute authorizes the inspection of sensitive and confidential commercial information from a lawful business that has a constitutional right to keep that information private in the absence of a warrant.  *See Patel*, 576 U.S. at 413 (quoting the Los Angeles ordinance as requiring that "hotel guest records 'shall be made available to any officer of the Los Angeles Police Department for inspection'").  And like the ordinance at issue in *Patel*, the RTE Statute is facially invalid "because it lack[s] a mechanism for pre-compliance review" entirely.  *Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 483 (S.D.N.Y. 2019) (citing *Patel*, 576 U.S. at 410).

The RTE Statute grants the Attorney General broad authority to inspect, examine, and make copies of "any record" of a filing entity, *see* Tex. Bus. Orgs. Code § 12.151, permits the Attorney General's to issue a Request for these records, *id.* § 12.152, mandates "immediate[]" compliance, *id.*, lays out that the investigation may either be for violations of governing documents or of a Texas law, *id.* § 12.153, indicates how the obtained information should be treated by the Attorney General, *id.* § 12.154, and sets forth severe civil (forfeiture of the right to do business in the state) and criminal (Class B misdemeanor) penalties, *id.* §§ 12.155, 12.156.

---

[3] Facial challenges under the Fourth Amendment are permissible.  Supreme Court precedent holds "not only that facial challenges to statutes authorizing warrantless searches can be brought, but also that they can succeed." *Patel*, 576 U.S. at 418.  When determining whether a law is "unconstitutional in all of its applications," the Court "consider[s] only applications of the statute in which it actually authorizes or prohibits conduct." *Id.* at 418.  Thus, "when addressing a facial challenge to a statute authorizing warrantless searches, the proper focus of the constitutional inquiry is searches that the law actually authorizes"—not searches which would otherwise fall into an exception to the Fourth Amendment. *Id.*

But nowhere in the sections granting this sweeping authority, *see* Tex. Bus. Orgs. Code §§ 12.151-12.156, or indeed in the entire subchapter, *see* Tex. Bus. Orgs. Code, Title I, ch. 12, subch. B, is there any mechanism or provision for objecting to a Request or any forum to have a neutral decisionmaker adjudicate challenges to a Request.[4]   The law is facially devoid of ***any*** precompliance review options for the recipient of a Request, and thus the statute "fail[s] to direct the subject of an administrative subpoena to a neutral forum in which it could obtain review." *ESI/Emp. Sols., L.P.*, 450 F. Supp. 3d at 727.   Additionally, unlike other Texas statutes, the RTE Statute provides no mechanism to delay compliance or extend the time to respond.  *See* Tex. Gov't Code § 422.003 (requiring a "reasonable return date" and providing that the subpoenaed party may file a motion to quash or seek modification).

To the extent that a Request to Examine can be construed as an administrative subpoena, the statute is still unconstitutionally deficient.  Administrative subpoenas can obviate the need for a warrant where there is an opportunity for the subpoena to be challenged in court, but the RTE Statute provides no such means—neither requiring that the agency go to court to seek enforcement of a subpoena nor granting a recipient an avenue for judicial involvement.  *See Patel*, 576 U.S. at 419; *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984) (holding that an administrative search may proceed only with a subpoena so long as the subpoenaed party is allowed to "question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it"). The choice to comply with the subpoena or risk criminal and civil penalties is not reasonable, and thus the RTE Statute is unconstitutional.

---

[4] To the extent Texas courts previously held that the Request to Examine statutory scheme is constitutional, *see Humble Oil*, 259 S.W.2d at 589, that reasoning does not survive later Supreme Court precedent, *see See*, 387 U.S. at 545; *Patel*, 576 U.S. at 420.

ii.     The Statute Requires "Immediate[]" Compliance

The RTE Statute impermissibly burdens Spirit's Fourth Amendment rights by requiring a filing entity to "immediately" surrender protected information in response to a Request, Tex. Bus. Orgs. Code § 12.151, which necessarily precludes any opportunity for precompliance review by any authority whatsoever, much less by the constitutionally required "neutral decisionmaker," *Patel*, 576 U.S. at 420.   The RTE Statute requires *immediate* compliance—conceptually indistinguishable from the police officers arriving at the doors of the hotels in *Patel* and demanding access to records on the spot.  Without opportunity for precompliance review—which is foreclosed by statutory insistence of immediate compliance—this demand is unconstitutional.

It is of no moment for purposes of a facial challenge that the Attorney General sometimes—though not always—grants the subject of a Request to Examine a "grace" period of time to comply. The Attorney General has insisted that the RTE Statute be enforced "as written," Annunciation Petition ¶ 34, and the text of the statute states that the managerial official of a company receiving a Request to Examine "shall immediately permit" the inspection, examination, and making of copies of the records, Tex. Bus. Orgs. Code § 12.152.  The Attorney General represented to a Texas state court in just the past few months that "the common ordinary meaning of 'immediately' is that the OAG must be given access to the records right away" when he issues a Request to Examine.  *See* Annunciation Petition ¶ 30.   The Attorney General argued that his "power to demand access to a corporation's records 'immediately' is … historically well-established," *id.* at ¶ 31 (citing *Walker-Texas Inv. Corp. v. State*, 323 S.W.2d 603, 606 (Tex. Civ. App. 1959)), and characterized any time period he grants for a response "a matter of grace," *id.* at ¶ 24.  Indeed, the Attorney General argued that a Request to Examine recipient violated the law despite the timely filing of a declaratory judgment action challenging the Request.  *Id.* at ¶ 26.

The "immediate" access demanded by the RTE Statute is no different from the *Patel* ordinance requiring that hotels make guest records "available to any officer … for inspection" on demand. *Patel*, 576 U.S. at 413. And the Attorney General's insistence that the statute demands "immediate" compliance highlights the absence of *any* opportunity for judicial review before the Attorney General can leverage both civil and criminal penalties against the entity. Tex. Bus. Orgs. Code §§ 12.155-12.156.

c.      The Statute Permits Physical Intrusion On An Entity's Premises

The unconstitutionality of the RTE Statute is exacerbated by the fact that the statute contemplates **physical** intrusion onto a business's premises by the Attorney General for purposes of inspection and copying business records. *See* Tex. Bus. Orgs. Code § 12.151 ("Each filing entity and foreign filing entity shall permit the attorney general to inspect, examine, and make copies, as the attorney general considers necessary in the performance of a power or duty of the attorney general, of any record of the entity."); *see also Walker-Texas*, 323 S.W.2d at 605; *Humble Oil*, 259 S.W.2d at 581. Both *Walker-Texas* and *Humble Oil* indicate that the authorized agent of the Attorney General was expected to **physically** enter the business premises to either "take" the records or "make copies." *See Walker-Texas*, 323 S.W.2d at 605 (quoting the Request to Examine as stating, "Gentlemen: You will please permit … authorized agent[s] of the Attorney General of Texas, to make an examination and investigation of all books, contracts, accounts, records, minutes, letters, memoranda, by-laws, any other records of Walker-Texas Investment Corporation, Houston, Texas, and **to take or make copies** thereof" (emphasis added)); *Humble Oil*, 259 S.W.2d at 582 (quoting the Request to Examine as stating, "Gentlemen: You will please permit Frank Lake, authorized agent of the Attorney General of Texas, to make an examination and investigation of all books, contracts, accounts, records, minutes, letters, memoranda, by-laws, or any other records and files of the Humble Oil and Refining Company and **to take or make copies thereof**.

16

… The object of this investigation or examination under this letter of visitation is to examine the books, records, files and reports of the Company …, to take from your records photostatic copies and other data … for the purpose of using these data and information in the prosecution of the defense ….” (emphasis added)).

More recently, in the *Annunciation House* matter, the Attorney General invoked § 12.152 as a basis to demand “immediate access” “at your principal office or place of business.”  Martens Decl. Ex. 6.  Even if the privacy interests of a business in its confidential records were not enough to implicate the Fourth Amendment—and they are—this physical intrusion authorized by the statute undoubtedly does.  *See Jardines*, 569 U.S. at 11 (discussing “physical intru[sion]” in the context of the “traditional property-based understanding of the Fourth Amendment”).

### 3.    The May 13 Request Cannot Save A Facially Invalid Statute

Apparently recognizing the constitutional defects in the RTE Statute, the Attorney General served the May 13 Request—after Spirit filed this suit—and pledged to slightly more narrowly exercise his limitless statutory discretion.  But only months ago the Attorney General insisted to a Texas court that the RTE statute must be enforced “as written,” with extensions “a matter of grace.”  Annunciation Petition ¶¶ 34, 24.  And even if the Attorney General is willing, in this matter, to extend his “grace,” the constitutional right of the people to be secure in their papers and premises cannot be left to the whims of the executive or his agents.  *See United States v. U.S. Dist. Court for Eastern Dist. of Mich.*, 407 U.S. 297, 316-317 (1972) (“The Fourth Amendment freedoms cannot properly be guaranteed if … solely within the discretion of the Executive Branch.”); *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 532-533 (1967) (“The practical effect of [a system where an inspector demands warrantless entry] is to leave the occupant subject to the discretion of the official in the field,” which is “precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested

party warrant the need to search.").  While the Attorney General agrees in the May 13 Request not to contest the availability of a declaratory judgment action in Texas state court to challenge the most recent Request to Examine, the Attorney General took a much different position only months ago, arguing that Annunciation House violated the RTE Statute when it failed to permit immediate access to its records and instead filed a declaratory judgment action challenging a Request. Annunciation Petition ¶ 24.

In any event, a declaratory judgment action was available under California law at the time the Supreme Court decided *Patel*, *see* Cal. Civ. Proc. Code § 1060, and yet the Supreme Court deemed the Los Angeles ordinance violative of the Fourth Amendment because the ordinance itself required immediate compliance with no provision for judicial review.  As the Supreme Court explained, the ordinance was devoid of any means "to obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply." *Patel*, 576 U.S. at 414 (internal quotation marks omitted).  Indeed, the Attorney General's handling of the *Annunciation House* matter demonstrates that the filing of a generic declaratory judgment action prior to the expiration of the Request's "grace" period for response will not forestall the Attorney General's claim that an entity violated the RTE Statute by failing to provide immediate access to records and is thus subject to revocation of its registration.

What is more, while declaratory judgment actions exist under Texas law as a general matter, the Attorney General cites no legal authority in the May 13 Request (Martens Decl. Ex. 4) by which a Texas state court could conduct a reasonableness review of a Request to Examine.  To the contrary, the Texas courts have disclaimed such review of Requests to Examine, describing the Attorney General's authority under the RTE Statute as "unlimited and unrestricted." *Humble Oil*, 259 S.W.2d at 589.  The Attorney General's discretionary power, unbounded by any

reasonableness limitation—the touchstone of the Fourth Amendment, *see Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)—creates the very risk of harassment about which the Supreme Court expressed concern in *Patel*.  *See* 576 U.S. at 421.  The Attorney General's promise to be less harassing in this instance after litigation in a federal court was initiated and a federal judge is now looking—with no promise, much less statutory obligation, to take this same approach in the future—can do nothing to save a facially unconstitutional statute that fails to restrain his discretion by law.  For this reason, the Supreme Court stated that "the proper focus of the constitutional inquiry is searches that the law actually authorizes," *Patel*, 576 U.S. at 418, not on the Attorney General's non-binding promise (this once) not to use that full statutory authority.

4.    The RTE Statute Does Not Satisfy The "Closely Regulated Industry" Exception

The Attorney General may argue that precompliance review is not required because commercial aircraft manufacturing is a "closely regulated industry" and thus fits within an exception to the review requirement.  *See Patel*, 576 U.S. at 424.  In fact, it does not.

a.    Aircraft Manufacturing Is Not A "Closely Regulated Industry"

A narrow exception to the precompliance judicial review requirement exists where the business to be searched is part of a "closely regulated industry," which has "'such a history of government oversight that no reasonable expectation of privacy … could exist for a proprietor over the stock of such an enterprise.'"  *Patel*, 576 U.S. at 424 (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978)).  These industries are "a narrow exception," *id.* at 424, and more is required than that the industry is "extensively regulated and has licensure requirements," *Zadeh v. Robinson*, 928 F.3d 457, 465 (5th Cir. 2019).  Over the past 50 years, the Supreme Court has identified only four such industries: liquor sales, firearms dealing, mining, and automobile junkyards.  *Patel*, 576 U.S. at 424.

Commercial aircraft manufacturing is not one of those industries.  And there is no pervasive scheme of state oversight or "an entrenched history of warrantless searches" that would render the industry entirely lacking in Fourth Amendment protections.  *Zadeh*, 928 F.3d at 466.  Stated another way, there is no "'comprehensive' scheme that puts [airplane manufacturers] on notice that their 'property will be subject to periodic inspections undertaken for specific purposes.'" *Patel*, 576 U.S. at 425 (quoting *Burger*, 482 U.S. at 705).  To expand the list of closely regulated industries without a history or precedent of "pervasive[] regulat[ion]" would permit a "narrow exception to swallow the rule."  *Id.* at 424-425; *see also Zadeh*, 928 F.3d at 466 (rejecting argument that medical industry is closely regulated).

> b.   The RTE Statute Fails To Constrain The Attorney General's Discretion

Even were commercial airplane manufacturing a closely regulated industry, such industries can be subject to administrative searches without precompliance judicial review only if three additional criteria are met: (1) "a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made," (2) warrantless inspections are "necessary to further the regulatory scheme," and (3) the inspection program, in terms of "certainty and regularity," must provide "a constitutionally adequate substitute for a warrant."  *Patel*, 576 U.S. at 426 (quoting *Burger*, 482 U.S. at 702-703).  The RTE Statute fails all three criteria.  First, the Texas Attorney General has no interest, much less a substantial one, in a Delaware corporation's compliance with its charter issued pursuant to Delaware law.  *See* Welner Decl. ¶ 2; Martens Decl. ¶ 9.  Nor does the Texas Attorney General have a substantial interest in regulating manufacturing activities in Kansas.  *See Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 682 (Tex. 2006) ("[A] statute will not be given extraterritorial effect.").  Second, a warrantless inspection regime is not necessary to advance whatever substantial interest the Attorney General will claim the RTE

Statute serves.  *See Patel*, 576 U.S. at 427.  Third, and most problematically, the RTE Statute "fails sufficiently to constrain [the Attorney General's] discretion as to which [businesses or records] he can search and under what circumstances." *Id.*  To the contrary, the statute has no such constraints. As the Texas courts have held, the RTE Statute affords the Attorney General "the full and unlimited and unrestricted right to examination of the corporation's books and records at any time and as often as he may deem necessary." *Humble Oil*, 259 S.W.2d at 589.

*      *      *

Because there are no genuine disputes as to any material facts, and because the RTE Statute is unconstitutional under clear and settled precedent, the Court should enter summary judgment for Spirit and declare the RTE Statute unconstitutional.

**B.     The Attorney General Should Be Enjoined From Issuing Requests Pursuant To The RTE Statute**

This Court "may grant a permanent injunction without a trial on the merits if there are no material issues of fact and the issues of law have been correctly resolved." *Calmes v. United States*, 926 F. Supp. 582, 591 (N.D. Tex. 1996).  In that instance, a plaintiff need only show "(1) that it has succeeded on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damages that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021).  Spirit easily meets this standard.

As set forth above, Spirit is entitled to summary judgment on the merits of its claim that the RTE Statute is unconstitutional.  Given the May 13 Request, Spirit will suffer irreparable injury to its privacy interests if the Attorney General is not enjoined from issuing or enforcing Requests pursuant to the unconstitutional RTE Statute.  *See Airbnb, Inc.*, 373 F. Supp. 3d at 499 (stating that invasion of privacy interest is "quintessential" irreparable harm).  The injury Spirit will suffer in

the absence of an injunction outweighs any public interest, as the public has no interest in the enforcement of an unconstitutional statute. *See Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) ("[T]here is generally no public interest in the perpetuation of unlawful agency action.").

## V.   CONCLUSION

For the foregoing reasons, Spirit respectfully requests that the Court grant summary judgment in its favor, declare the RTE Statute unconstitutional, both facially and as applied, and permanently enjoin the Attorney General's use of the same.

Dated: June 6, 2024.

Respectfully submitted,

/s/ *Matthew T. Martens*

McCARTY LAW PLLC
Darren L. McCarty (SBN: 24007631)
darren@mccartylawpllc.com
1410B West 51st Street
Austin, TX 78756
Telephone: (512) 827-2902

WILMER CUTLER PICKERING HALE
AND DORR LLP
Matthew T. Martens (*pro hac vice*)
matthew.martens@wilmerhale.com
Jaclyn N. Moyer (*pro hac vice*)
jaclyn.moyer@wilmerhale.com
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6921

*Attorneys for Plaintiff Spirit
AeroSystems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date filed the foregoing PLAINTIFF SPIRIT AEROSYSTEMS INC.'S MOTION FOR SUMMARY JUDGMENT, via the Court's CM/ECF system, which will automatically give notice to all counsel of record.

This 6th day of June, 2024.

/s/ *Matthew T. Martens*

WILMER CUTLER PICKERING HALE
AND DORR LLP
Matthew T. Martens (*pro hac vice*)
    matthew.martens@wilmerhale.com
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6921