**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **SPIRIT AEROSYSTEMS, INC.,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **W. KENNETH PAXTON, in his official** | § | **A-24-CV-472-DII** |
| **capacity as Attorney General of Texas,** | § | |
| **and JANE NELSON, in her official** | § | |
| **capacity as Secretary of State of Texas,** | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Before the court are Plaintiff's Motion for Summary Judgment and Permanent Injunction (Dkt. 17), Defendant's Cross Motion for Summary Judgment (Dkt. 15),[1] and all related briefing. Plaintiff Spirit AeroSystems, Inc. ("Plaintiff") brings this action against Defendants W. Kenneth Paxton ("Attorney General"), in his official capacity as Attorney General of Texas, and Jane Nelson, in her official capacity as Secretary of State of Texas,[2] to challenge the facial constitutionality of the Request to Examine Statute ("RTE Statute") and enjoin enforcement of the Requests to Examine issued to Plaintiff. Dkts. 1, 17; TEX. BUS. ORGS. CODE §§ 12.151–12.156. After reviewing the pleadings, the relevant case law, and oral arguments, the undersigned submits the following Report and Recommendation to the District Court.

---

[1] The motions for summary judgment were referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Text Orders dated Jul. 9, 2024.

[2] Nelson had not appeared in the case at the time these motions were filed and briefed, and she did not participate in the current motion practice.

The issue before the court and, accordingly, this Report and Recommendation are not about whether the Attorney General has a right to request information from corporations doing business within this state. The question addressed is whether the RTE Statute is the proper vehicle with which to request information from filing entities within the state. The Attorney General certainly has this ability; and other statutes continue to serve this purpose in a constitutional fashion—and even would have served his purpose here.[3] With the intervening Supreme Court decision, *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), the RTE Statute's plain language precludes a facially constitutional reading. At its most basic level, *Patel* requires precompliance review for administrative searches, and the plain language of the RTE Statute precludes such review.

## I.   BACKGROUND[4]

### A.   The RTE Statute[5]

---

[3] *See* TEX. BUS. ORGS. CODE § 17.61 (authorizing the Attorney General to issue an administrative subpoena under the Texas Deceptive Trade Practices Act. At oral arguments, the Attorney General stated that this subpoena does not necessarily provide the same scope as the RTE Statute when asked why not use this instead).

[4] Based on the motions and accompanying documents submitted by the parties, the undersigned finds that the following material facts are undisputed.

[5] The full text of the RTE statute states:

Sec. 12.151. AUTHORITY OF ATTORNEY GENERAL TO EXAMINE BOOKS AND RECORDS. Each filing entity and foreign filing entity shall permit the attorney general to inspect, examine, and make copies, as the attorney general considers necessary in the performance of a power or duty of the attorney general, of any record of the entity. A record of the entity includes minutes and a book, account, letter, memorandum, document, check, voucher, telegram, constitution, and bylaw.

Sec. 12.152. REQUEST TO EXAMINE. To examine the business of a filing entity or foreign filing entity, the attorney general shall make a written request to a managerial official, who shall immediately permit the attorney general to inspect, examine, and make copies of the records of the entity.

Sec. 12.153. AUTHORITY TO EXAMINE MANAGEMENT OF ENTITY. The attorney general may investigate the organization, conduct, and management of a filing entity or foreign filing entity and determine if the entity has been or is engaged in acts or conduct in violation of: (1) its governing documents; or (2) any law of this state.

Sec. 12.154. AUTHORITY TO DISCLOSE INFORMATION. Information held by the attorney general and derived in the course of an examination of an entity's records or documents is not public information, is not subject to Chapter 552, Government Code, and may not be disclosed except: (1) in the course of an administrative or judicial proceeding in which the state is a party; (2) in a suit by the state to: (A) revoke the registration of the foreign filing entity or terminate the certificate of formation of the filing entity; or (B) collect penalties for a violation of the law of this state; or (3) to provide information to any officer of this state charged with the enforcement of its laws.

The RTE statute provides the Attorney General with the power to "inspect, examine, and make copies, as the attorney general considers necessary in the performance of a power or duty of the attorney general" any "record" of any filing entity registered to do business in Texas. TEX. BUS. ORGS. CODE § 12.151. A "record" includes "minutes and a book, account, letter, memorandum, document, check, voucher, telegram, constitution, and bylaw." *Id.* This statute exists to help the OAG determine "if the entity has been or is engaged in acts or conduct in violation of: (1) its governing documents; or (2) any law of this state." TEX. BUS. ORGS. CODE § 12.153. The Attorney General will conduct these investigations "as [he] considers necessary." *Id.* at § 12.151.

When an entity receives a written request from the Attorney General ("Request"), the entity must "immediately permit the attorney general to inspect, examine, and make copies of the records of the entity." TEX. BUS. ORGS. CODE § 12.152.

The statutory provisions include two penalties. First, a filing entity that "fails or refuses to permit the attorney general to examine or make copies of a record, without regard to whether the record is located in this or another state, forfeits the right of the entity to do business in this state, and the entity's registration or certificate of formation shall be revoked or terminated."[6] TEX. BUS. ORGS. CODE § 12.155. To revoke or terminate an entity's registration, the Attorney General can

---

Sec. 12.155. FORFEITURE OF BUSINESS PRIVILEGES. A foreign filing entity or a filing entity that fails or refuses to permit the attorney general to examine or make copies of a record, without regard to whether the record is located in this or another state, forfeits the right of the entity to do business in this state, and the entity's registration or certificate of formation shall be revoked or terminated.

Sec. 12.156. CRIMINAL PENALTY. (a) A managerial official or other individual having the authority to manage the affairs of a filing entity or foreign filing entity commits an offense if the official or individual fails or refuses to permit the attorney general to make an investigation of the entity or to examine or to make copies of a record of the entity. (b) An offense under this section is a Class B misdemeanor.

TEX. BUS. ORGS. CODE §§ 12.151–12.156.

[6] An entity's registration is filed with the Texas Secretary of State.

bring "an action in the nature of quo warranto" against a corporation that "does or omits an act that requires a surrender or causes a forfeiture of its rights and privileges as a corporation." TEX. CIV. PRAC. & REM. § 66.001(4).

The second penalty in the RTE Statue is the criminal penalty. *See* TEX. BUS. ORGS. CODE § 12.156. This provision criminalizes the "managerial official or other individual" of an entity for "fail[ing] or refus[ing] to permit the attorney general to make an investigation of the entity or to examine or to make copies of a record of the entity." *Id.* The offense is a "Class B misdemeanor" which, in Texas, can lead to a 180-day jail sentence, $2,000 fine, or both. *Id.*; TEX. PENAL CODE § 12.22. Furthermore, the Attorney General's staff has the legal authority to arrest on the spot those who violate the RTE Statute.  *See* TEX. CRIM. PRO. § 14.01(b) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); *id.* § 2.12(22) ("peace officers" include "[i]nvestigators commissioned by the attorney general").

### B.    The Request to Examine Plaintiff

Plaintiff, Spirit AeroSystems, Inc., is "one of the world's largest manufacturers of aerostructures for commercial aircraft, defense platforms, and business and regional jets." Dkt. 18-11, ¶ 3. Plaintiff "also provides aftermarket maintenance, repair, and overhaul ('MRO') services for commercial, business, and regional jets." *Id.* Plaintiff is a corporation organized under the laws of Delaware, and its principal place of business is in Wichita, Kansas. *Id.* ¶ 2. Plaintiff designs and delivers fuselages used in Boeing's 737 Max aircraft from Plaintiff's Wichita campus—which houses over 650 acres, 12,000 employees, and corporate headquarters. *Id.* ¶ 4.

Plaintiff's only Texas facility is a maintenance and repair outpost outside of Dallas Love Field Airport in Dallas, Texas, and it employs around 98 of Plaintiff's approximately 20,655 employees worldwide. Dkt. 18-11, ¶¶ 5, 6. The Dallas facility "provides MRO services to

commercial, business, and regional jets, with a particular focus on repairing nacelle and flight control services." *Id.* ¶ 5. The Dallas facility is not involved in corporate governance decisions or the design and manufacture of fuselages. *Id.* To conduct business in Texas, including operating the Dallas facility, Plaintiff "was required to and did register as a foreign filing-entity under Texas Business Organizations Code § 9.001." *Id.* ¶ 7.

On March 28, 2024, after a series of malfunctions involving Boeing 737 Max jets,[7] the Attorney General issued a Press Release stating he "opened an investigation into Spirit AeroSystems Holdings, Inc., after reoccurring issues with certain airplane parts provided to Boeing." Dkt. 18-3. The Press Release stated that the investigation centers on "apparent manufacturing defects" that led "to numerous concerning or dangerous incidents." *Id.* And the Press Release described a Request to Examine, stating that Plaintiff was "instructed to produce a variety of documents relevant to manufacturing defects in their products . . . [and] documents related to its diversity, equity, and inclusion ('DEI') commitments, and whether those commitments are unlawful or are compromising the company's manufacturing processes." *Id.*

The corresponding Request to Examine ("March 28 Request"), issued under § 12.151, was erroneously addressed to Spirit AeroSystems Holdings, Inc., Plaintiff's parent company, which is not a foreign filing entity registered in Texas. Dkt. 18-2; Dkt. 18-11 ¶ 8. The March 28 Request included a prominent notice of the two penalties in the RTE Statute—the loss of Plaintiff's right to do business in the state and the criminal penalty. Dkt. 18-2, at 2. After Plaintiff filed this action, the Attorney General sent Plaintiff's counsel a letter stating the March 28 Request "is hereby

---

[7] *See* Dkt. 15, at 2; Dkt. 18-11 ¶ 9 (referencing airplane crashes in October 2018 and March 2019, as well as an incident in January 2024 where a door plug malfunctioned on a flight from Portland, Oregon to San Bernardino County, California).

rescinded null and void." Dkt. 18-1 ¶ 5; Dkt. 18-4. On the same day, the Attorney General issued

a new Request to Examine directed to Plaintiff (the "May 13 Request"). Dkt. 18-1 ¶ 6; Dkt. 18-5.

From the March 28 Request to the May 13 Request, only one request was removed.[8]

*Compare* Dkt. 18-2 *with* Dkt. 18-5. The May 13 Request, however, changed the second page of

the Request from a notice about the statutory penalties to a "Notice of Rights and Penalties." *Id.*

The May 13 Request states, "you are encouraged to meet and confer with the Office of the Attorney

General if you contend that any of the information sought . . . is constitutionally protected or

otherwise legally exempt." Dkt. 18-5, at 2. It goes on to inform Plaintiff that if no agreement can

be reached "on the scope of documents sought, [Plaintiff] *may attempt to obtain judicial review* of

the RTE before June 3, 2023," through either a suit for a declaratory judgment[9] or injunctive

relief[10] in Texas state court. *Id.* (emphasis added). "In such a suit," the May 13 Request continues,

"the Office of the Attorney General will not dispute the availability of judicial review." *Id.*

Plaintiff has moved for summary judgment on its challenge to the RTE Statute, arguing

that the statute is facially unconstitutional and violates the Fourth and Fourteenth Amendments.

Dkt. 17, at 9. The Attorney General has cross-moved for summary judgment on that claim. Dkt.

15.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure

only "if the movant shows there is no genuine dispute as to any material fact and that the movant

is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine only if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*

---

[8] "Produce Spirit's procedures, guidelines, and/or details of its Incentive Compensation Plan." Dkt. 18-2, at 8.
[9] *Humble Oil & Refining Company v. Daniel* 259 S.W.2d 580, 588 (Tex. App.—Beaumont 1953) (writ ref'd n.r.e.).
[10] *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007).

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Summary judgment is particularly appropriate where "the only issue before the court is a pure question of law." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991). "A facial challenge to the constitutionality of a statute," like the one here, "presents a pure question of law." *United States v. Rafoi*, 60 F.4th 982, 996 (5th Cir. 2023).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004).

The court will view the summary judgment evidence in the light most favorable to the non-movant. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id.*

## III.   APPLICABLE LAW

The Fourth Amendment protects "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.[11]

---

[11] The Fourth Amendment is incorporated against the States pursuant to the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961).

It is well-settled that the rights secured by the Fourth Amendment "appl[y] to government officials conducting administrative inspections of private commercial property." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 198 (5th Cir. 2009); *see See v. City of Seattle*, 387 U.S. 541, 544 (1967) ("We find strong support in these [administrative] subpoena cases for our conclusion that warrants are a necessary and a tolerable limitation on the right to enter upon and inspect commercial premises."); *see also ESI/Emp. Sols., L.P. v. City of Dallas*, 450 F. Supp. 3d 700, 724 (E.D. Tex. 2020) ("The rights secured by the Fourth Amendment extend not only to physical searches, but also include compulsory inspection of documents in a commercial establishment.").

Generally, the Fourth Amendment requires that searches be conducted only pursuant to warrants supported by probable cause. *See Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 619 (1989) ("Except in certain well-defined circumstances, a search or seizure . . . is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause."). The Supreme Court has "repeatedly held that 'searches conducted outside the judicial process, without prior approval by [a] judge or [a] magistrate [judge], are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015) (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). One such exception is the special needs exception which is where a search serves "a 'special need' other than conducting criminal investigations." *Id.* at 420. An administrative search can be considered a type of special needs exception to the warrant requirement. *Id.*

In *City of Los Angeles v. Patel*, a recent, seminal case addressing a facial challenge to a municipal code provision authorizing an administrative search, the Supreme Court applied Fourth Amendment principles. In *Patel*, the Court considered a facial challenge to a city ordinance providing that hotel records "shall be made available to any officer of the Los Angeles Police

Department for inspection" upon demand. 576 U.S. at 413 (quoting L.A. MUN. CODE § 41.49(3)(a) (2015)). If a hotel operator failed to comply with a police officer's demand to inspect records under this statute, the operator would be subject to a misdemeanor charge punishable by up to six months in jail and a $1,000 fine. *Id.* Indeed, a hotel operator who refused to comply could "be arrested on the spot." *Id.* at 421. Given that the contemplated document inspections were administrative searches, the Supreme Court concluded that the ordinance was "facially unconstitutional because it penalizes [hotel operators] for declining to turn over their records without affording them any opportunity for precompliance review." *Id.* at 412.

*Patel* had two major holdings. First, facial challenges under the Fourth Amendment are not categorically barred. *Patel*, 576 U.S. at 415. Second, "in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Id.* at 420. Specifically, the subject must have "the opportunity to 'question the *reasonableness* of the subpoena, *before* suffering any penalties.'" *Id.* (quoting *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984)) (emphasis added). The opportunity for precompliance review by a neutral decisionmaker is critical to the constitutionality of administrative searches because it minimizes the "intolerable risk that searches . . . will exceed statutory limits, or be used as a pretext to harass." *Id.* at 421.

IV.   **ANALYSIS**

   **A.   Constitutional Defects of the RTE Statute**

Texas's RTE Statute shares the same constitutional defect as the statute in *Patel*. The RTE Statute requires an entity's managerial official to "*immediately* permit" the Attorney General access to the entity's records, TEX. BUS. ORGS. CODE § 12.152 (emphasis added). In a state court filing earlier this year, the Attorney General stated that "the common ordinary meaning of

9

'immediately' is that the OAG must be given access to the records right away." Dkt. 18-8 Ex. A, at 10. And that the RTE Statute's requirement of "immediate[]" compliance must be interpreted "as written," meaning that a request recipient must permit access to the requested documents "right away." *Id.* at 10, 12. Furthermore, he referred to a time extension given to the entity in question as a "matter of grace." *Id.* at 8.

In the present instance, the Attorney General takes the opposite tack and argues that "the RTE Statute must be read to contain a 'reasonable time' qualifier. *See In re Grand Jury Proceedings*, 802 F.3d 57, 67–68 (1st Cir. 2015) (explaining the general consensus of how courts treat materially similar issue[s])." Dkt. 15, at 16. This treatment, of inferring a reasonable time, however, is aimed at a statute which "does not specify when this [document] must be provided," and the subsequent conversation centers around "addressing this gap." *In re Grand Jury Proceedings*, 802 F.3d at 67–68. In those instances, the court can apply a "reasonable time." *Id.* at 68. That is not the situation at hand. There is no gap to be filled in the RTE Statute for it sets a time: "immediately." TEX. BUS. ORGS. CODE § 12.152.

More important than the Attorney General's interpretation of the statute is the statute's plain language. The statute lacks any provision enshrining the process to obtain an extension of time, nor does the statute include a *right* to a time extension. *See* TEX. BUS. ORGS. CODE § 12.151, *et seq.* Like *Patel*, if a managerial official of the filing entity fails to immediately comply with the demand for information, the official can be criminally prosecuted for a misdemeanor offense, TEX. BUS. ORGS. CODE § 12.156, and the Attorney General's staff can, as they could in *Patel*, arrest that official on the spot, *see* TEX. CRIM. PRO. §§ 2.12(22), 14.01(b). In fact, the RTE Statute goes farther than the statute at issue in *Patel*. While the RTE statute requires "immediate[]" compliance, the statute in *Patel* provided that "[w]henever possible, the inspection shall be conducted at a time and

in a manner that minimizes any interference with the operation of the business." *Patel*, 576 U.S. at 413. Furthermore, the RTE Statute allows the Attorney General to revoke the entity's registration, which allows the entity to do business in the state, by filing quo warranto proceedings. TEX. BUS. ORGS. CODE § 12.155; TEX. CIV. PRAC. & REM. CODE § 66.001(4).

The RTE Statute further lacks any mechanism that would allow a filing entity to seek precompliance review of the reasonableness of a Request to Examine. *See* Davis & Gillum, *Government Pre-Suit Investigative Powers: A Survey of Common Issues Arising from Investigations by the Texas Attorney General and the Texas Department of Insurance*, 14 TEX. TECH. ADMIN. L.J. 301, 323 (2013) ("The Request to Examine statute provides no express mechanisms to challenge the attorney general's authority to examine records."). Precompliance review of the reasonableness of a Request to Examine is itself inconsistent with the directive to "immediately permit" the Attorney General access; the statute leaves no time for precompliance review on the reasonableness of the request. TEX. BUS. ORGS. CODE § 12.152.

Moreover, the statute provides that the Attorney General can conduct these investigations "as [he] considers necessary," *id.* at § 12.151, and Texas state courts have interpreted this language as giving "the Attorney General an unlimited and unrestricted right of visitation and examination." *Humble Oil & Ref. Co. v. Daniel*, 259 S.W.2d 580, 589 (Tex. App.—Beaumont 1953, writ ref'd n.r.e.). In addition to the immediacy requirement, this unrestricted power strikes a second blow to the RTE Statute. When the RTE Statute "grant[s] to the Attorney General *the full and unlimited and unrestricted right to examination* of the corporation's books and records at *any time* and *as often as he may deem necessary*," *id.*, it "creates an intolerable risk that searches authorized by it will exceed statutory limits, or be used as a pretext to harass [businesses]." *Patel*, 576 U.S. at 421 (critiquing the ordinance because it would allow a hotel to be searched "10 times a day, every day,

for three months, without any violation being found").[12] Such "unlimited and unrestricted right of visitation and examination," *Humble Oil*, 259 S.W.2d at 589, "as the attorney general considers necessary," TEX. BUS. ORGS. CODE § 12.151, precludes the opportunity for a reasonableness review of a Request. *Patel*, 576 U.S. at 421. Giving the Attorney General an "unlimited" right to visit a business and examine its records means not only is there no time to allow for a reasonableness review, but also there is no metric for what is reasonable under the statute. *See id.*

These fatal omissions from the RTE Statute mean there is no opportunity to obtain the constitutionally required precompliance review of the reasonableness of a Request to Examine. Without a codified mechanism for precompliance review, filing entities such as Plaintiff can refuse to answer a Request to Examine only by assuming the risk of arrest, criminal prosecution, and revocation of their business registration. *Patel* makes it clear that the Fourth Amendment prohibits forcing people to make this decision, but as the RTE Statute stands, the only other option is to rely on the "grace" of the Attorney General. As the Supreme Court explained decades ago, "[t]he practical effect of this system is to leave the [company] subject to the discretion of the official in the field. This is precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested party warrant the need to search." *Camara v. Mun. Court of City & Cnty. of San Francisco*, 387 U.S. 523, 532–33 (1967).

The Attorney General concedes that the RTE Statute is "not elegantly written" and "not how a legislature would write a statute like this today." Or. Arg. Tr. at 28. At oral argument, the Attorney General invited this court to "read in[to]" the textual requirement for "immediate[e]"

---

[12] The court notes that after *Patel*, the ordinance at issue was amended to say an "officer of the Los Angeles Police Department may request an operator consent to inspect the record as part of the Department's public safety responsibilities." L.A. MUN. CODE § 41.49(3)(a) (2017) (updating previous language stating that hotel guest records "shall be made available to any officer of the Los Angeles Police Department for inspection"). However, this court makes no recommendation as to whether or how the RTE Statute should be amended to achieve constitutionality. That is for the legislature to determine. This court only decides, as required by *Patel*, that the RTE Statute is unconstitutional as written.

compliance a provision for compliance "in a reasonable time." *Id.* at 34. But earlier this year, the Attorney General represented to another court in a signed pleading (subject to Texas Rule Civil Procedure 13) that the word "immediate" means "right away" and must be interpreted "as written" no matter how "unfair" its application. Doc. 18-8 Ex. A, at 10, 12 (internal quotation marks omitted).

Moreover, the Attorney General's invitation to this court to read language into the statute is an implicit concession that the statute does not, on its face, allow for the reasonable time period in which to comply that the Attorney General advocates in this court. It is for the Texas legislature, if it so desires, to rewrite the RTE Statute; that is not the province of this court. *See United States v. Stevens*, 559 U.S. 460, 481 (2010) ("We will not rewrite a . . . law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain." (internal citations and quotation marks omitted)). As the Fifth Circuit noted, "Judges are minders, not makers or menders . . . we must take [the legislature] at its word, presume it meant what it said, and refuse to revise statutes under the guise of interpreting them." *Reed v. Taylor*, 923 F.3d 411, 415 (5th Cir. 2019). The Attorney General echoes this point when he aptly pointed out, that the courts must "always refrain from rewriting text the lawmakers chose." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009); *see also* Dkt. 18-8 Ex. A, at 12. The statute states that a managerial official must "immediately permit the attorney general to inspect, examine, and make copies of the records of the entity." TEX. BUS. ORGS. CODE § 12.152. This court takes the legislature at its word: "immediate[]" compliance means immediate compliance.

Furthermore, courts may try to avoid unconstitutional readings of statutes, but the canon of constitutional avoidance requires two competing interpretations, or ambiguity, in a statute. *See McFadden v. United States*, 576 U.S. 186, 196–97 (2015). There is no ambiguity in the RTE

Statute. It is merely an antiquated statute with an unambiguously facially unconstitutional defect made apparent by the passage of time. *See also Computer & Comm. Indus. Ass'n v. Paxton*, 1:24-CV-849-RP, 2024 WL 4051786, __ F. Supp. 3d __, at *18 (W.D. Tex. Aug. 30, 2024) (Pitman, J.) ("we will not rewrite a state law to conform it to constitutional requirements" (internal quotation marks omitted)).

> **B.** **The Attorney General's Arguments Fail**

The Attorney General's arguments to save the RTE Statute fail. First, he argues that a facial constitutional challenge must show the challenged statute is "unconstitutional in all of its applications." *Wa. State Grange v. Wa. State Republican Party*, 552 U.S. 442, 449 (2008). In *Patel*, however, the Supreme Court rejected this same argument and "considered only applications of the statute in which it actually authorizes or prohibits conduct." 576 U.S. at 418. So, "when addressing a facial challenge to a statute authorizing warrantless searches, the proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant." *Id.* The RTE Statute actually authorizes the Attorney General to demand "immediate[]" access to a filing entity's documents, and no part of the statutory scheme limits the scope of the Attorney General's authority or provides for precompliance review. Applications of that statutory grant of authority are what *Patel* says to examine for facial unconstitutionality. *See id.* Immediate, unrestricted access for an administrative search without any precompliance review regarding the reasonableness of the request is exactly what *Patel* makes clear can never be constitutional. *See id.* at 428 (holding that city's ordinance "is facially invalid insofar as it fails to provide any opportunity for precompliance review before a hotel must give its guest registry to the police for inspection.").

Although the May 13 Request did not require the immediate production of documents,[13] and the Attorney General stated he would not object to Plaintiff seeking judicial review, that is a "matter of grace" on the part of the Attorney General. Dkt. 18-8 Ex. A, at 8. The Attorney General claims that this extension is part of a longstanding practice of granting RTE recipients additional time to respond to a Request to Examine, but this grace is not enshrined in or required by the statute. *See* Dkt. 16-18 ¶¶ 4–6 (the OAG grants at least 10 days, often over 20 days for the "vast majority of the RTEs"); TEX. BUS. ORGS. CODE §§ 12.151–12.156. The Fourth Amendment exists precisely so that individuals and entities do not need to rely on the discretionary "grace" of executive officials to protect their liberties. *See Camara*, 387 U.S. at 532–33 ("The practical effect of this system is to leave the occupant subject to the discretion of the official in the field. This is precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested party warrant the need to search.").

The Fourth Amendment and *Camara* do not require respondents to rely on executive officials for the protection of their constitutional rights. The RTE Statute, which can only approximate something constitutional with the Attorney General's grace, must be unconstitutional in all of its applications. The Attorney General's choice in certain instances *not* to exercise the RTE Statute to its full power cannot defeat a facial challenge to the statute itself. Per the Attorney General's argument, any statute could be held constitutional if the officials exercising the statute chose to enforce it only in a constitutional way, but that is not the law. Refusing to commit an act that the statute authorizes is not an application of the statute; it is a non-application of the statute. When considering the facial constitutionality of a statute, a court addresses the conduct a statute authorizes, not the constitutionality of an official's decision not to do what the statute authorizes.

---

[13] The May 13 Request gave Plaintiff three weeks—until June 3, 2024—to respond. Dkt. 18-5, at 1.

*See Patel*, 576 U.S. at 418. Here, the RTE Statute authorizes the Attorney General to require immediate compliance with a Request to Examine, and without any statutory provision for a precompliance review of that Request, the immediacy requirement renders any application of that statutory authorization unconstitutional. *See id.* at 428.

Second, the Attorney General argues that there is precompliance review within the statute in the form of quo warranto proceedings. Before an entity's business registration can be revoked, a quo warranto action must be filed to accomplish the revocation. TEX. CIV. PRAC. & REM. § 66.001. Quo warranto proceedings are an enforcement action to use if "a corporation does or omits an act that requires a surrender or causes a forfeiture of its rights and privileges." *Id.* at § 66.001(4). But pre-enforcement review and precompliance review are not the same. In the former, a managerial official is already facing penalties because he refused to comply with a Request to Examine. In the latter, that managerial official would be able to receive review by a neutral decisionmaker on the reasonableness of the Request to Examine before deciding whether to comply. *See Patel*, 576 U.S. at 421 (stating a choice of either providing access or refusing access and later challenging the search at "'risk of a criminal penalty'" cannot be forced (quoting *Camara*, 387 U.S. at 533)[14]). Precompliance review is review prior to the time by which compliance is required. Quo warranto proceedings, which occur after the bad act or omission, do not satisfy the precompliance requirement. Moreover, the quo warranto process offers no comfort to the individual, who may still be arrested "on the spot" for failure to grant "immediate[]" access to the documents. *Id.*; s*ee* TEX. CRIM. PRO. §§ 14.01(b), 2.12(22).

Nor did the October 11, 2024 hearing on the motions for summary judgment constitute precompliance review, even though the Attorney General suggested it might at the hearing. What

---

[14] "[B]road statutory safeguards are no substitute for individualized review, particularly when those safeguards may only be invoked at the risk of a criminal penalty." *Camara*, 387 U.S. at 533.

the Fourth Amendment requires, as interpreted in *Patel*, is an opportunity to challenge a particular inspection demand, not merely to challenge the statute authorizing inspections. 576 U.S. at 414; *see Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 494 (S.D.N.Y. 2019) (holding that a Section 1983 action "could assess only whether the Ordinance, on its face, was reasonable under the Fourth Amendment. This Court's facial assessment in this litigation would not give a particular [company] a forum to challenge any particular application of the Ordinance."). If the ability to bring a Section 1983 action challenging an inspection statute were enough to satisfy the precompliance review requirement, then the Supreme Court could not have found the city ordinance at issue in *Patel* unconstitutional as the *Patel* Court was itself considering a challenge to that ordinance in a Section 1983 action. In the instant action and at the October 11 Hearing, Plaintiff is challenging the RTE Statute's constitutionality, not seeking review of the particular inspection demands on Plaintiff.

Third, the Attorney General argues that a declaratory judgment action or an injunctive action brought in the Texas state courts can function as precompliance review to challenge particular Requests to Examine. The RTE Statute's immediacy requirement, however, forecloses such a possibility. Any filing entity that received a Request to Examine would already have made the decision to comply with or refuse the Request by the time it filed a declaratory or injunctive state action. Furthermore, there is no metric within the RTE Statute regarding how to assess the reasonableness of a review. TEX. BUS. ORGS. CODE §§ 12.151–12.156.

### C.    No Extrinsic Efforts Save the RTE Statute

For all of the foregoing reasons, the RTE Statute is facially unconstitutional as written, and any efforts to make individual Requests to Examine constitutional (such as the efforts in the May 13 Request) do not eliminate the constitutional infirmity in the language of the statute.

In the May 13 Request, the Attorney General told Plaintiff it could "attempt to obtain" judicial review. Dkt. 18-5, at 2. This is the same argument addressed above—the Attorney General choosing not to act with the full scope of what the RTE Statute authorizes does not make the statute constitutional. This circumscribed conduct is not a relevant application of the statute under *Patel*'s analysis of how to address facial challenges to statutes; the relevant analysis addresses what the statute does authorize. *See Patel*, 576 U.S. at 418. In any event, Plaintiff is not merely entitled to the right to "attempt to obtain" judicial review, but rather to a guaranteed opportunity to review "before he or she faces penalties for failing to comply." *Patel*, 576 U.S. at 420–21 (holding that "in order for an administrative search to be constitutional, the subject of the search *must* be afforded an opportunity to obtain precompliance review before a neutral decisionmaker" (emphasis added)). Neither the May 13 Request, nor, as has been previously discussed, the RTE Statute guarantee an opportunity for judicial review.

Earlier this year, the Attorney General issued a Request to Examine to a third-party entity on the suspicion that the entity ("Annunciation House") was violating state law by, among other things, harboring undocumented migrants. *See* Dkt. 18-8 Ex. A, at 5–7. On February 7, 2024, a Request to Examine was issued to Annunciation House, and "as a matter of grace," the Attorney General granted Annunciation House one day to comply. *Id.* at 8–9. On February 8, 2024, Annunciation House filed an action in state court seeking a temporary restraining order and declaratory judgment.[15] Dkt. 17, at 8. Instead of allowing an attempt to receive precompliance review, the Attorney General deemed the recipient to be in non-compliance with the RTE Statute. *See* Dkt. 18-8 Ex. A, at 13–14 ("If Annunciation House had fulfilled its obligation to permit the

---

[15] A state court in El Paso has since ruled on this matter, holding the RTE Statute facially unconstitutional. *Annunciation House, Inc. v. Paxton*, No. 2024DCV0616, 2024 WL 3332034, at *2 (Tex. Dist., El Paso County July 02, 2024).

Office of the Attorney General to examine *those* records immediately,[16] it would have discharged its 'immediate' obligation and would not have been deemed in non-compliance.").

The Attorney General tries to distinguish Annunciation House from this present issue by stating there were "facts akin to exigent circumstances" involved with the Annunciation House Request to Examine and Annunciation House being deemed in noncompliance with the RTE Statute. Dkt. 21, at 8. The Attorney General cited "concerns about how truthful [Annunciation House] would be in a document production" to bolster its need for an immediate response in that case, unlike the present instance where it provided three weeks. Dkt. 18-8 Ex. A, at 15. In *Patel*, however, the Supreme Court addressed these concerns while still allowing for precompliance review by saying, if a subpoena were issued,[17] "in the even rarer event that an officer reasonably suspects that a hotel operator may tamper with the registry while the motion to quash is pending, he or she can guard the registry until the required hearing can occur, which ought not take long." *Patel*, 576 U.S. at 422.

Thus, the opportunity to file a declaratory judgment action, as advised under the May 13 Request, does not guarantee precompliance review free from risk of penalty, even when filed during a "grace" period, but instead leaves the recipient subject to the Attorney General's actions. And the whole point of *Patel* is that a party subject to an administrative search must be afforded

---

[16] "[T]hose records" being "'at least **some** records' [that] are presumably [readily] available for examination" on-site at the time a Request to Examine is issued. Dkt. 18-8 Ex. A, at 13–14.

[17] The Attorney General argues that a Request to Examine under the RTE Statute is an administrative subpoena, Dkt. 15, at 12, but the RTE Statute does not contain the requisite language or limitations to create an administrative subpoena. *See v. City of Seattle*, 387 U.S. 541, 544 (1967) ("[W]hen an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome."); *see, e.g.,* TEX. GOV'T CODE § 422.003 (exemplifying an administrative subpoena created by the Texas legislature). *Patel* indicates that a motion to quash an administrative subpoena could be sufficient precompliance review, but the RTE Statute is simply not written in a way that creates an administrative subpoena. 576 U.S. at 422.

an opportunity for review by a neutral decisionmaker and not left merely to negotiate with the Attorney General over a Request to Examine.

Even if the Attorney General stands by his assertion that he "will not dispute the availability of judicial review" in a suit for a declaratory judgment, he cannot waive sovereign immunity—only the legislature can. Dkt. 18-5, at 2; *see State v. Zurawski*, 690 S.W.3d 644, 660 (Tex. 2024) ("Under the doctrine of sovereign immunity, the State and its officers are shielded from judicial scrutiny unless the State consents to suit."). The Attorney General cannot waive sovereign immunity by failing to raise it as a defense. *See San Antonio Water Sys. v. Nicholas*, 461 S.W. 3d 131, 136 (Tex. 2015) ("We have consistently held that jurisdictional arguments concerning immunity . . . cannot be waived."). "[I]t is the Legislature's sole province to waive or abrogate sovereign immunity," which may be accomplished "by statute or by resolution." *Tex. Nat. Res. Conserv. Comm'n v. IT-Davy*, 74 S.W.3d 849, 853–54 (Tex. 2002).

The Texas Declaratory Judgments Act ("DJA") "does not contain a general waiver of sovereign immunity, providing only a limited waiver for challenges to the validity of an ordinance or statute." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019). As previously discussed, the ability to challenge the validity of a statute is not the precompliance review of the reasonableness of a Request to Examine that is constitutionally required under *Patel*. To the contrary, the law is clear that the DJA "does not waive sovereign immunity when the plaintiff seeks a declaration of her rights under a statute or other law." *Id.* at 553 (summarizing *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011)). Thus, actions for "declaratory relief are barred absent a legislative waiver of immunity with respect to the underlying action." *Id.* And the RTE Statute, which would provide the basis for the action underlying a declaratory judgment

action of the type that the Attorney General suggests Plaintiff pursue, contains no waiver of sovereign immunity. *See* TEX. BUS. ORGS. CODE §§ 12.151–12.156.

The Attorney General pivots and argues that Plaintiff could pursue an action for injunctive relief under the ultra vires exception to the sovereign immunity doctrine. But, "to fall within this 'ultra vires exception,' a suit must allege that a state official acted without legal authority or failed to perform a purely ministerial act, *rather than attack the officer's exercise of discretion*." *Patel v. Tex. Dep't of Licensing & Reg.*, 469 S.W.3d 69, 76 (Tex. 2015) (emphasis added). As noted above, the RTE Statute confers on the Attorney General the discretionary authority to inspect documents "as [he] considers necessary." TEX. BUS. ORGS. CODE § 12.151. The ultra vires exception does not allow Plaintiff to attack as unreasonable the Attorney General's exercise of discretion under the RTE Statute (which is precisely what *Patel* holds a company like Plaintiff must have an opportunity to do); it only allows Plaintiff to attack the RTE Statute itself.

The Attorney General's reliance on *Zurawski*, *supra*, to provide precompliance review through the ultra vires exception is unavailing. The Attorney General both misreads *Zurawski* and misunderstands the ultra vires exception. *Zurawski* simply observed that the DJA contains "'only a limited waiver [of sovereign immunity] for challenges to the *validity* of an ordinance or statute,'" 690 S.W.3d at 660–61 (quoting *Town of Shady Shores*, 590 S.W.3d at 552), while noting that the DJA's waiver of sovereign immunity differs from the ultra vires exception to sovereign immunity, *see id.* at 661 n.33. But the *Zurawski* decision nowhere purports to alter the Texas Supreme Court's prior holding that the ultra vires exception does not permit actions to "attack the officer's exercise of discretion." *Patel*, 469 S.W.3d at 76. Thus, under settled Texas state law, a party like Plaintiff cannot bring an action challenging the Attorney General's exercise of discretion in fashioning a

particular Request to Examine because the Attorney General enjoys sovereign immunity from such claims.

The Attorney General cites several other decisions that, in his view, purportedly establish that declaratory actions for injunctive relief are an available means to obtain precompliance review of the reasonableness of a particular Request to Examine. None of the four cases the Attorney General cites even discuss the sovereign immunity doctrine, much less hold that a declaratory action is an available means to challenge the reasonableness of a Request to Examine. *See Allibone v. Freshour*, No. 03-17-00357-CV, 2017 WL 5663607 (Tex. App.—Austin Nov. 21, 2017, pet. filed); *Cotropia v. Chapman*, 721 F. App'x 354 (5th Cir. 2018); *Chesterfield Fin. Co. v. Wilson*, 328 S.W.2d 479 (Tex. App.—Eastland 1959, no writ); *Humble Oil*, 259 S.W.2d.

Two of the cases did not even involve Requests to Examine, but instead involved administrative subpoenas from the Texas Medical Board. *See Allibone*, 2017 WL 5663607, at *2; *Cotropia*, 721 F. App'x at 356.[18] Sovereign immunity was not implicated in those cases because the statute authorizing the Texas Medical Board to issue subpoenas expressly authorizes litigation challenging such subpoenas. *See* TEX. OCC. CODE § 153.007(a), (e).

As for the two cases that did involve Requests to Examine, neither involved precompliance review of the reasonableness of a Request. In *Humble Oil*, the entity subject to a Request to Examine brought a declaratory judgment action after the inspection in an effort to obtain return of its documents. 259 S.W.2d at 583. Even then, the challenges raised by the declaratory judgment action—namely, "the validity of the visitorial statutes and the authority of the Attorney General to act as he did," *id.* at 588—are squarely within the DJA's waiver of sovereign immunity and the ultra vires exception. *See Town of Shady Shores*, 590 S.W.3d at 552 (holding that DJA "provid[es]

---

[18] *Cotropia* does address qualified immunity as regards a defendant being sued in her individual capacity, which is not relevant here.

only a limited waiver [to sovereign immunity] for challenges to the validity of an ordinance or statute"); *Patel*, 469 S.W.3d at 76 ("to fall within this 'ultra vires exception,' a suit must allege that a state official acted without legal authority"). The *Humble Oil* opinion did not address whether a state court can consider a declaratory judgment action attacking as unreasonable the Attorney General's exercise of discretion in crafting a particular Request to Examine, which is what *Patel* requires for an administrative inspection regime to pass constitutional muster.

Similarly, in *Chesterfield*, the court stated that "[t]he only question presented is whether or not [the Attorney General] has the right to copy appellants' records for the purpose of using them in suits against appellants." 328 S.W.2d at 481. The appellants "admit[ted]" that the inspection was lawful, *id.*, and instead argued that the Attorney General was "without authority to make copies," *id.* at 480. Again, a claim of this sort is squarely within the ultra vires exception to the sovereign immunity doctrine. *See Patel*, 469 S.W.3d at 76 ("to fall within this 'ultra vires exception,' a suit must allege that a state official acted without legal authority"). But the *Chesterfield* opinion does not suggest that a court may consider an action challenging the reasonableness of a particular Request to Examine.

For all of these reasons, it is clear that the RTE Statute contains a constitutional defect in its plain language. The RTE Statute provides no opportunity to seek precompliance review on the reasonableness of a particular Request, and it explicitly prevents such opportunity through its temporal requirements and grant of unlimited power to the Attorney General (precluding the existence of an unreasonable request). Furthermore, this court rejects the Attorney General's invitation to rewrite the RTE Statute, *see Entergy*, 282 S.W.3d at 443 ("[e]nforcing the law as written is a court's safest refuge in matters of statutory construction, and we should always refrain from rewriting text that lawmakers chose"), and will instead leave that to the Texas legislature,

should it wish to do so. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 76 (1996) (A court is not "free to rewrite the statutory scheme in order to approximate what [it] think[s] [the legislature] might have wanted had it known that [enacting the statute] was beyond its authority. If that effort is to be made, it should be made by [the legislature].").

## V.    RECOMMENDATIONS

For the foregoing reasons, the court **RECOMMENDS** that the District Judge **DENY** Defendant W. Kenneth Paxton's Cross Motion for Summary Judgment (Dkt. 15) and **GRANT** Plaintiff Spirit AeroSystems, Inc.'s Motion for Summary Judgment and Permanent Injunction (Dkt. 17).

The court further **RECOMMENDS** that the RTE Statute, TEX. BUS. ORGS. CODE §§ 12.151–12.156, be **DECLARED** facially unconstitutional and that Defendant W. Kenneth Paxton and his agents be permanently **ENJOINED** and **RESTRAINED** from:

1. Enforcing or attempting to enforce the Request to Examine issued by the Office of the Texas Attorney General on March 28, 2024;

2. Holding or attempting to hold Plaintiff in noncompliance for not producing documents in response to the March 28, 2024 Request, or imposing or attempting to impose any consequences on Plaintiff for not producing documents in response to the March 28, 2024 Request; and

3. Enforcing or attempting to enforce the Request to Examine issued by the Office of the Texas Attorney General on May 13, 2024;

4. Holding or attempting to hold Plaintiff in noncompliance for not producing documents in response to the May 13, 2024 Request, or imposing or attempting to

impose any consequences on Plaintiff for not producing documents in response to the Mary 13, 2024 Request; and

5.   Issuing any other Requests to Examine to Spirit pursuant to Texas Business Organizations Code §§ 12.151–12.156.

## VI.   OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Sers. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED November 1, 2024.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE