# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION

| | |
|---|---|
| SPIRIT AEROSYSTEMS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> W. KENNETH PAXTON, in his official capacity as Attorney General of Texas, AND JANE NELSON, in her official capacity as Secretary of State of Texas, <br><br> *Defendants*. | Civil Action No. 1:24-cv-00472-DII |

# DEFENDANT W. KENNETH PAXTON'S OBJECTIONS

# TO REPORT & RECOMMENDATION

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

    I.      SPIRIT'S CONDUCT UNDER INVESTIGATION..............................................2

    II.     THE ATTORNEY GENERAL'S INVESTIGATIVE AUTHORTIY ...................3

    III.    PROCEDURAL HISTORY....................................................................................5

STANDARD OF REVIEW ....................................................................................................6

ARGUMENT ........................................................................................................................6

    I.      BINDING PRECEDENT CONFIRMS THAT RTE RECIPIENTS HAVE MULTIPLE AVENUES FOR PRECOMPLIANCE REVIEW FOR REASONABLENESS ...............................................................................................6

         A.     Texas Appeals Courts Have Repeatedly Reviewed RTEs..........................6

         B.     Modern Texas Procedural Doctrine Provides at Least Two Paths to Precompliance Review .........................................................8

         C.     An RTE Recipient Will Always Obtain Review Before Penalties are Imposed .................................................................................11

         D.     *City of Los Angeles v. Patel* is Materially Distinguishable.......................12

    II.     Spirit Cannot Sustain a Facial Challenge Based on the RTE Statute's Allowance for the Attorney General to Demand Compliance "Immediately".......................................................................13

         A.     Spirit Lacks Standing to Challenge the RTE's Statute's "Immediate" Compliance Provision .........................................................13

         B.     Spirit Cannot Sustain a Facial Challenge to the Statute ...........................15

         C.     A Reasonable Limiting Construction Would Moot Spirit's Argument.......................................................................................19

CONCLUSION....................................................................................................................20

CERTIFICATE OF SERVICE ............................................................................................21

# TABLE OF AUTHORITIES

**Cases:**                                                                      **Page(s)**

*Acosta v. American Postal Workers Union*,
  2017 WL 6886673 (C.D. Cal. Dec. 4, 2017) ............................................................................ 17

*Allibone v. Freshour*,
  No. 03-17-00357-CV, 2017 WL 5663607, (Tex. App.—Austin Nov. 21, 2017, pet. denied) ... 10

*Baca v. Ladd*,
  77 F.3d 480 (5th Cir. 1996)....................................................................................................... 14

*Bailey v. Fair & Walker Unit Owners Ass'n*,
  2023 WL 2119490 (N.D. Ga. Jan. 17, 2023).............................................................................. 17

*Bernard v. Gulf Oil Corp.*,
  841 F.2d 547 (5th Cir. 1988)................................................................................................ 2, 14

*Blum v. Yaretsky*,
  457 U.S. 991 (1982) ............................................................................................................ 13, 14

*Bryan v. Cano*,
  2021 WL 12301968 n.4 (W.D. Tex. Dec. 15, 2021) ................................................................... 9

*Chesterfield Fin. Co. v. Wilson*,
  328 S.W.2d 479 (Tex. App.—Eastland 1959)....................................................................*Passim*

*City of El Cenizo v. Texas*,
  890 F.3d 164 (5th Cir. 2018).................................................................................................... 15

*City of Elsa v. M.A.L.*,
  226 S.W.3d 390 (Tex. 2007)................................................................................................... 8, 9

*City of Los Angeles v. Patel*,
  576 U.S. 409 (2015) ..........................................................................................................*Passim*

*City of Pasadena v. Smith*,
  292 S.W.3d 14 (Tex. 2009) ...................................................................................................... 19

*Comm'n for Law. Discipline v. Benton*,
  980 S.W.2d 425, 442 (Tex. 1998)............................................................................................. 19

*Cotropia v. Chapman*,
  721 F. App'x 354 (5th Cir. 2018).................................................................................. 1, 10, 11

*Cotropia v. Chapman*,
    978 F.3d 282 (5th Cir. 2020) .................................................................................. 19

*Cruz v. Abbott*,
    849 F.3d 594 (5th Cir. 2017) .................................................................................. 13

*Cuomo v. Clearing House Ass'n*,
    557 U.S. 519 (2009) ................................................................................................. 3

*Dika-Homewood, LLC v. Off. Max*,
    2022 WL 3682214 (S.D. Fla. June 16, 2022) ........................................................ 17

*Discover Prop. & Cas. Co. v. Blue Bell Creameries USA, Inc.*,
    622 F. Supp. 3d 349 (W.D. Tex. 2022) ................................................................... 6

*Doe I v. Landry*,
    909 F.3d 99 (5th Cir. 2018) .................................................................................... 19

*Doe v. United States*,
    253 F.3d 256 (6th Cir. 2001) ................................................................................... 4

*Donovan v. Lone Steer, Inc.*,
    464 U.S. 408 (1984) ........................................................................................... 9, 12

*El Paso Indep. Sch. Dist. v. McIntyre*,
    584 S.W.3d 185 (Tex. App.—El Paso 2018) .......................................................... 9

*ESI/Employee Solutions v. City of Dallas*,
    528 F. Supp. 3d 564 (E.D. Tex. 2021) ............................................................. 16, 17

*Essgee Co. of China v. United States*,
    262 U.S. 151 (1923) ................................................................................................. 3

*Honors Academy, Inc. v. Texas Educ. Agency*,
    555 S.W.3d 54 (Tex. 2018) ...................................................................................... 9

*Humble Oil & Refining Company v. Daniel*,
    259 S.W.2d 580 (Tex. App.—Beaumont 1953) ................................................... 7, 9

*In re Gee*,
    941 F.3d 153 (5th Cir. 2019) .................................................................................. 14

*In re Grand Jury Proceedings*,
    802 F.3d 57 (1st Cir. 2015) .................................................................................... 20

*In re Smith*,
   333 S.W.3d 582 (Tex. 2011) ............................................................................... 13

*In re Subpoena Duces Tecum*,
   228 F.3d 341 (4th Cir. 2000) ............................................................................... 11

*Lewis v. Casey*,
   518 U.S. 343 (1996) ............................................................................................ 14

*Longmore v. Guste*,
   921 F.2d 620 (5th Cir. 1991) ................................................................................ 6

*Loper Bright Enters. v. Raimondo*,
   144 S. Ct. 2244 (2024) ........................................................................................ 16

*Mallory v. Norfolk S. Ry. Co.*,
   600 U.S. 122 (2023) ............................................................................................ 18

*Miura Corp. v. Davis*,
   2020 WL 5224348 (C.D. Cal. June 25, 2020) ..................................................... 11

*Moody v. NetChoice*,
   144 S. Ct. 2383 (2024) .................................................................................. 15, 16

*Nat'l. Horsemen's Benevolent & Protective Ass'n v. Black*,
   53 F.4th 869 (5th Cir. 2022) ............................................................................... 15

*NLRB v. Noel Canning*,
   573 U.S. 513 (2014) ....................................................................................... 2, 16

*Oklahoma Press Pub. Co. v. Waling*,
   327 U.S. 186 (1946) .............................................................................................. 4

*Patel v. Tex. Dep't of Licensing & Reg.*,
   469 S.W.3d 69 (Tex. 2015) ................................................................................... 9

*Rose v. Doctors Hosp.*,
   801 S.W.2d 841 (Tex. 1990) ............................................................................... 12

*Roy v. City of Monroe*,
   950 F.3d 245 (5th Cir. 2020) .............................................................................. 20

*See v. City of Seattle*,
   387 U.S. 541, 545 (1967) ............................................................................. 12, 17

*State v. Farmers' Loan & Tr. Co.*,
  17 S.W. 60 (Tex. 1891) ............................................................................................... 4, 11

*State v. Stephens*,
  663 S.W.3d 45 (Tex. Ct. Crim. App. 2021) ................................................................... 12

*State v. Zurawski*,
  690 S.W.3d 644 (Tex. 2024) ...................................................................................... 8, 12

*Stenberg v. Carhart*,
  530 U.S. 914 (2000) ......................................................................................................... 20

*Sw. Airlines Co. v. Roundpipe*,
  375 F. Supp. 3d 687 (N.D. Tex. 2019) ............................................................................... 7

*Tera II, LLC v. Rice Drilling*,
  2022 WL 1114943 (S.D. Ohio Apr. 14, 2022) ................................................................. 17

*United States v. Hansen*,
  599 U.S. 762 (2023) ......................................................................................................... 20

*United States v. Rahimi*,
  144 S. Ct. 1889 (2024) .......................................................................................... 2, 16, 20

*Village of Hoffman Ests. v. Flipside, Hoffman*,
  455 U.S. 489 (1982) .................................................................................................. 15, 19

*Walker-Texas Inv. Corp. v. State*,
  323 S.W.2d 603 (Tex. Civ. App. 1959) ................................................................. 7, 8, 11

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008) ............................................................................................. 2, 17, 18

*Wilson v. United States*,
  221 U.S. 361 (1911) ................................................................................................. 3, 18

*Word of Faith World Outreach v. Morales*,
  986 F.2d 962 (5th Cir. 1993) ........................................................................................... 13

*Zadeh v. Robinson*,
  928 F.3d 457 (5th Cir. 2019) ........................................................................................... 18

**Statutes**

12 U.S.C. § 5562(f) ................................................................................................ 17

15 U.S.C. § 49 ........................................................................................................ 17

28 U.S.C. § 636(b) .................................................................................................. 6

Tex. Bus. Orgs. Code § 1.002(22) .......................................................................... 4

Tex. Bus. Orgs. Code § 1.002(29) .......................................................................... 4

Tex. Bus. Orgs. Code § 9.001 ................................................................................. 2

Tex. Bus. Orgs. Code §§ 12.151-12.156 ........................................................ *Passim*

Tex. Bus. Orgs. § 12.259 ........................................................................................ 11

Tex. Const. art. IV, § 22 ...................................................................................... 1, 3

Tex. Occ. Code § 153.007 ....................................................................................... 10

Tex. Occ. Code § 153.007(e) ................................................................................... 10

**Rules**

Fed. R. Civ. P. 45 .................................................................................................... 16

Fed. R. Civ. P. 45(a)(1)(A)(iii) ............................................................................... 17

Fed. R. Civ. P. 45(d)(3)(A)(i) ................................................................................. 17

Fed. R. Crim. P. 17(c) ............................................................................................. 11

Tex. R. Civ. P. 176.6 ............................................................................................... 10

Tex. R. Civ. P. 176.6(e) ........................................................................................... 10

Tex. R. Civ. P. 192.6(b) ........................................................................................... 10

Tex. R. Civ. P. 781 .............................................................................................. 4, 12

## INTRODUCTION

"Texas law contemplates the opportunity for precompliance review of an administrative subpoena before a neutral decisionmaker." *Cotropia v. Chapman*, 721 F. App'x 354, 358 n.2 (5th Cir. 2018). But the Report and Recommendation (R&R) insists Texas law does **not** contemplate this review, and on that basis declared facially unconstitutional a statute that has been on Texas's books for over 100 years. That was wrong and the R&R should not be adopted.

The Texas Attorney General has a constitutional obligation to "inquire into the charter rights of all private corporations." Tex. Const. art. IV, § 22. Over one hundred years ago, the Texas Legislature concluded an "emergency" existed, because no statute expressly empowered the Attorney General to demand corporate records. *Chesterfield Fin. Co. v. Wilson*, 328 S.W.2d 479, 482 (Tex. App.—Eastland 1959). The Request to Examine (RTE) statute was born. Tex. Bus. Orgs. Code § 12.151-.156. And for over 100 years that statute has been used in countless settings and generated multiple appellate court decisions without interruption.

The R&R, if adopted, will needlessly put an end to this longstanding practice. The R&R posits that the RTE statute is facially unconstitutional for failure to afford RTE subpoena recipients any "precompliance review" within the meaning of *City of Los Angeles v. Patel*, 576 U.S. 409 (2015). That is categorically wrong. Unlike in *Patel*, an RTE subpoena recipient can always seek a protective order under the Texas Rules of Civil Procedure. *See Cotropia*, 721 F. App'x at 358 nn.2, 3. Moreover, unlike in *Patel*, Texas courts entertain equitable claims for an injunction in this setting. The RTE statute does not *itself* explicitly spell out these options, but that does not mean precompliance review is unavailable, and it does not make the statute facially unconstitutional.

The RTE statute's allowance for the Attorney General to demand compliance "immediately," Bus. Orgs. Code § 12.152, also does not facially doom the statute. First, Spirit

AeroSystems, Inc. (Spirit) lacks standing to challenge this provision because "a plaintiff lacks standing to litigate injurious conduct to which he was not subjected." *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 550 (5th Cir. 1988). Spirit was not asked to give the Attorney General records "immediately"—it was given 20 days to comply; the boilerplate amount of time that State and federal agencies customarily give to subpoena recipients. Moreover, Spirit's challenge to the statute is facial, which means Spirit must show the statute is unconstitutional "in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). The undisputed evidence shows that, in almost all instances, the Attorney General gives RTE subpoena recipients weeks to comply and does not demand immediate compliance. *See infra* at 16; *see also NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014) ("[T]he longstanding practice of the government can inform our determination of what the law is.") (cleaned up). That is fatal for Spirit because unless the "hypothetical faults" it identifies in the statute "occur in every case, they do not justify invalidating" the statute facially. *United States v. Rahimi*, 144 S. Ct. 1889, 1903 (2024).

The Court should reject the R&R and enter summary judgment for Defendants.

## BACKGROUND

### I.  SPIRIT'S CONDUCT UNDER INVESTIGATION

Spirit manufactures aircraft components. R&R at 4. It is the main aircraft parts supplier to the Boeing Company. *Id.* Spirit operates a facility near Dallas Love Field. *Id.* To operate that facility, Texas law required that Spirit register as a foreign filing entity under the Texas Business Organization Code. *Id.* (citing Tex. Bus. Orgs. Code § 9.001).

There has been a well-publicized and notorious "series of malfunctions involving Boeing 737 Max jets." R&R at 5. Moreover, there is an ongoing class action lawsuit against Spirit brought by shareholders alleging the company has made serious misrepresentations about product quality and manufacturing. *See Hang Li et al. v. Spirit Aerosystems*, No. 1:23-cv-03722-PAE (S.D.N.Y).

Because Texans are regular passengers on Boeing aircraft, and thus indirect consumers of Spirit's products, the Attorney General of Texas has a particularly strong interest in investigating the underlying allegations to evaluate whether unlawful acts have occurred.

## II.     THE ATTORNEY GENERAL'S INVESTIGATIVE AUTHORITY

The RTE Statute codifies the Attorney General's authority to supervise corporate compliance with state laws.

"The corporation is a creature of the state." *Wilson v. United States*, 221 U.S. 361, 383 (1911). "It receives certain special privileges and franchises, and holds them subject to the laws of the state." *Id.* Historically, this included the right of the state to "demand the production of the corporate books and papers" to determine "how the[] [corporate] franchise[] has been employed." *Id.* This widely recognized right is known as the "visitorial power." *Essgee Co. of China v. United States*, 262 U.S. 151, 155–56 (1923). Governments have long used visitorial powers "to detect the abuses [corporations] ha[ve] committed, to discover its violations of law[,] and to inflict punishment by forfeiture of franchises or otherwise." *Essgee Co.*, 262 U.S. at 155–56. To that end, a registered entity "must submit its books and papers to duly constituted authority when demand is suitably made." *Id.*; s*ee also Cuomo v. Clearing House Ass'n*, 557 U.S. 519, 525 (2009) (same).

The Texas Constitution charges the Attorney General with exercising this power. Tex. Const. art. IV, § 22. In 1907, the Texas Legislature recognized "there was an emergency" because no statute expressly authorized the Attorney General to seek corporate records. *Chesterfield Fin. Co.*, 328 S.W.2d at 481. The Legislature responded with the RTE Statute. *See id.* (describing the RTE Statute's original, materially similar version). The RTE Statute is now codified at Texas Business Organizations Code 12.151-.156. The RTE statute provides the Attorney General authority to investigate a corporation's violations of "its governing documents" or "any law of this

state." Tex. Bus. Orgs. Code § 12.153. It also provides three provisions particularly relevant to Spirit's constitutional challenge.

**First**, Section 12.152 provides: "To examine the business of a [corporate[1]] entity, the attorney general shall make a written request to a managerial official, who shall immediately permit the attorney general to inspect, examine, and make copies of the records of the entity." Tex. Bus. Orgs. Code § 12.152. The Attorney General makes these requests through a written request known as a "Request to Examine" (RTE).

**Second**, Section 12.155 provides that a corporation that "fails or refuses" to comply with an RTE may lose its right to "do business in the state." *Id.* § 12.155. To enforce this provision, the Attorney General must bring a court action where the corporation is permitted by law to raise any defenses available. *State v. Farmers' Loan & Tr. Co.*, 17 S.W. 60, 64 (Tex. 1891) ("must" be done through court process); Tex. R. Civ. P. 781.

**Third**, Section 12.156 provides that a corporate officer is subject to a misdemeanor penalty if he "fails or refuses" to comply with an RTE. Tex. Bus. Orgs. Code 12.156.

Importantly, the Attorney General has no right under this statute to ***seize*** records, nor to enter a corporation's premises without consent. *Chesterfield*, 328 S.W.2d at 481 ("The Attorney General has not attempted to and does not claim the right to 'seize' the records of appellants."). As such, it is clear that RTEs constitute administrative subpoenas. *See, e.g.*, *Oklahoma Press Pub. Co. v. Waling*, 327 U.S. 186, 189 (1946) (administrative subpoenas definitionally seek "the production of specified records"). They are not, by contrast, "searches." *See Doe v. United States*, 253 F.3d 256, 264 (6th Cir. 2001) (distinguishing searches from subpoenas).

---

[1] The statute refers to a "filing entity or foreign filing entity." Definitionally, these are corporations that, respectively, are Texas-based or based in another State but registered to do business in Texas. *See, e.g.*, Tex. Bus. Orgs. Code § 1.002(22), (29).

### III.    PROCEDURAL HISTORY

On March 28, 2024, the Office of the Attorney General (OAG) issued an RTE to Spirit Holdings, requesting that the company produce documents relevant to the concerning revelations above, with a deadline of April 17, 2024. R&R at 5. The RTE sought the production of documents falling within 14 narrow specifications, divided between those concerning Spirit's representations about manufacturing defects and those concerning the company's diversity, equity, and inclusion (DEI) commitments. *Id.*

At Spirit's request, OAG granted two extensions beyond the initial twenty-day deadline to produce documents in response to the RTE, and a third extension to allow for the parties' cross-motions. ECF No. 1 ¶ 30. Thereafter, Spirit filed this lawsuit against OAG on May 1, 2024.

To resolve any confusion and clarify certain legal misconceptions about the RTE, on May 13, 2024, OAG rescinded the original RTE and issued a revised one to Spirit, with a new 20-day deadline (June 3, 2024) to produce the requested documents. R&R at 6; ECF No. 18-5. That RTE put Spirit on notice of important procedural rights.  Specifically:

> **TAKE NOTICE THAT** you are encouraged to meet and confer with the Office of the Attorney General if you contend that any of the information sought in Attachment A is constitutionally protected or otherwise legally exempt from production to the Office of the Attorney General.
>
> If you cannot reach agreement with the Office of the Attorney General on the scope of documents sought, you may attempt to obtain judicial review of the RTE before June 3, 2023 through a "suit for a declaratory judgment," *Humble Oil & Refining Company v. Daniel* 259 S.W.2d 580, 588 (Tex. App.—Beaumont 1953) (writ ref'd N.R.E.), or a suit for injunctive relief, *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007).
>
> In such a suit, the Office of the Attorney General will not dispute the availability of judicial review.

ECF No. 18-5.

On November 1, the Magistrate Judge issued the R&R recommending the District Judge grant Spirit's motion for summary judgment and deny the Attorney General's cross-motion. R&R at 24. The R&R also recommends declaring the RTE Statute facially unconstitutional. *Id.* The R&R

provides two reasons for that recommendation. First, that the "RTE Statute . . . lacks any mechanism that would allow a [corporation] to seek precompliance review of the reasonableness of a Request to Examine." R&R at 11. Second, and relatedly, that the "RTE statute requires an entity's managerial official to '*immediately* permit' the Attorney General access to the entity's records." *Id.* at 9 (emphasis original).

## STANDARD OF REVIEW

This Court must make a de novo determination of those portions of the R&R to which an objection is made, 28 U.S.C. § 636(b); *Longmore v. Guste*, 921 F.2d 620, 623 (5th Cir. 1991). "Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Discover Prop. & Cas. Co. v. Blue Bell Creameries USA, Inc.*, 622 F. Supp. 3d 349, 353 (W.D. Tex. 2022).

## ARGUMENT

I.  **BINDING PRECEDENT CONFIRMS THAT RTE RECIPIENTS HAVE MULTIPLE AVENUES FOR PRECOMPLIANCE REVIEW FOR REASONABLENESS.**

Binding precedent forecloses Spirit's argument that precompliance review is unavailable to RTE recipients. There is a rich history of Texas appeals courts conducting review—including precompliance review—of RTE challenges. Under modern Texas procedural doctrine, Spirit has at least two straightforward paths to precompliance review.  Those options, combined with the Attorney General's own recognition that precompliance review is available, sharply distinguish *Patel*. *Contra* R&R at 8.

### A. Texas Appeals Courts Have Repeatedly Reviewed RTEs.

There is abundant Texas appeals court precedent conducting merits review of RTEs. Because no Texas Supreme Court opinion even hints that these precedents were wrong to conduct such review, the opinions are functionally binding on this Court under *Erie* doctrine. *Sw. Airlines*

*Co. v. Roundpipe*, 375 F. Supp. 3d 687, 702-03 (N.D. Tex. 2019) ("[T]he Fifth Circuit has held that federal courts must . . . defer to intermediate state appellate court decisions, unless convinced that the state's highest court would decide otherwise.").

A Texas appeals court first conducted RTE review in *Humble Oil & Refining Company v. Daniel*, 259 S.W.2d 580 (Tex.App.—Beaumont, 1953). The corporation there argued that the Attorney General could not use an RTE to demand its records for use in a separate, ongoing litigation—and *it won* on that point. *Id.* at 591. Along the way, the court expressly held that "the authority of the Attorney General to act as he did" under the RTE statute was a "justiciable controversy." *Id.* at 588;[2] *see also* ECF No. 18-5 (putting Spirit on notice of this case). In other words, over 60 years ago a Texas State appeals court put a dagger through the heart of Spirit's central complaint about the RTE Statute.

But there is more. In *Chesterfield Finance*, a Texas appeals court conducted precompliance review of a corporation's claim that the Attorney General should not be allowed to copy its records to use as evidence of "usury laws" violations. 328 S.W.2d at 481. The district court actually "granted a restraining order" against the RTE. *Id.* at 480. But the appeals court held that an inquiry into usury is properly part of the Attorney General's power to police a corporation's "charter rights and privileges," and so the corporation lost its RTE challenge on the merits. *Id.* at 482.

Then, in *Walker-Texas Invest. Corp. v. State*, a Texas appeals court again conducted review of a corporation's reasons for refusing to produce records. The corporation "did not at any time" permit the Attorney General's agents to review its documents. *Walker-Texas*, 323 S.W.2d 603, 606

---

[2] The procedural posture of *Humble Oil* is unusual; the corporation there produced its documents "under protest" and then sued to have the documents *returned*. 259 S.W.2d at 583. But nothing in the opinion or Texas procedural laws indicate that this happenstance made any difference to the RTE's reviewability.

(Tex. App—Austin 1959). Its reason was that the Attorney General's signature on the RTE letter was affixed by the Attorney General's "secretary," instead of the Attorney General personally. *Id.* at 605-07. This frivolous refusal resulted in the company's charter being forfeited. *Id.* at 607. But the corporation was able to litigate this frivolous refusal through the courts nonetheless, and before the charter forfeiture occurred.

**B.   Modern Texas Procedural Doctrine Provides at Least Two Paths to Precompliance Review.**

The foregoing cases occurred long ago, when Texas courts were not as precise about how and why they were exercising jurisdiction. But modern Texas procedural doctrine shows that those cases rightly entertained challenges to RTEs. And modern procedural doctrine gives Spirit at least two crystal clear pathways to precompliance review: (1) An *ultra vires* suit for injunctive relief; and (2) a petition for protective order under the Texas Rules of Civil Procedure. Under either pathway, an RTE recipient can litigate all merits arguments that it has a constitutional right to raise.

**1.   <u>Ultra Vires Suit</u>**: In Texas "[a] plaintiff who alleges that a state actor is improperly applying the law through ongoing enforcement may . . . bring an *ultra vires* claim against that official." *State v. Zurawski*, 690 S.W.3d 644, 661 n.33 (Tex. 2024); *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) ("[A] plaintiff whose constitutional rights have been violated may sue the state for equitable relief."). And the Attorney General put Spirit on notice *in the RTE* of this exact pathway to precompliance review. ECF No. 18-5.

The R&R ***conceded*** that *Chesterfield* conducted precompliance review of an RTE subpoena. R&R at 23. But the R&R contended that, whereas *Chesterfield* presented a question that was "squarely within the ultra vires exception" to the Attorney General's sovereign immunity, here a challenge to the RTE's "reasonableness" would not be within that exception. *Id.* The R&R is simply wrong. Reasonableness review springs from the Fourth Amendment's requirement that a

subpoena be "sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984). And the *ultra vires* pathway may be used to raise any challenge that the officer's action was "unconstitutional." *See Bryan v. Cano*, 2021 WL 12301968 at *8 n.4 (W.D. Tex. Dec. 15, 2021). Necessarily, the *ultra vires* pathway provides that all of the classic subpoena objections about scope, relevance, and specificity are available to RTE recipients. *See also, e.g.*, *Humble Oil*, 259 S.W.2d at 589 (the RTE statute is "not unconstitutional" because it allows "only ***reasonable***" demands (emphasis added)).

The R&R also wrongly asserts that the *ultra vires* pathway is inadequate because it would be unavailable to attack an "officer's exercise of discretion." R&R at 21 (citing *Patel v. Tex. Dep't of Licensing & Reg.*, 469 S.W.3d 69, 76 (Tex. 2015) (emphasis added). That is not true when the discretion forces the officer to "exceed[] the bounds of [his] authority." *Honors Academy, Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018). And when an officer takes action that conflicts with the constitution (such as by issuing an unreasonable subpoena), he exceeds the bounds of his authority. *City of Elsa*, 226 S.W.3d at 392 ("[A] plaintiff whose constitutional rights have been violated may sue the state for equitable relief."). That is why the Texas Supreme Court permitted an injunctive suit against government officials for allegations they "improperly disclosed information" in violation of constitutional privacy rights. *Id.* at 391-92; *see also El Paso Indep. Sch. Dist. v. McIntyre*, 584 S.W.3d 185, 198 (Tex. App.—El Paso 2018, no pet.) (claim that government employees "acted inappropriately by demanding information" and then "initiat[ing] criminal charges" against persons who would not comply, could "be addressed by injunctions").

    **2.**    **Petition for Protective Order**: The Texas Rules of Civil Procedure also provide *another* pathway to review—an RTE recipient can "move for a protective order . . . before the time

specified for compliance." Tex. R. Civ. P. 176.6(e). Under this path, an RTE recipient can likewise seek merits-based review based on all of the usual arguments, including "undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights." Tex. R. Civ. P. 192.6(b).

Binding precedent—including cases that post-date *Patel*—establish that this pathway is available to challenge administrative subpoenas precompliance. In *Allibone v. Freshour*, the Texas Medical Board issued an administrative subpoena under Texas Occupations Code Section 153.007. That Section does not textually provide for precompliance review. The recipient attacked its constitutionality on this exact ground—namely, that the statute did not afford him "an opportunity for prompt judicial review of the" subpoena. No. 03-17-00357-CV, 2017 WL 5663607, at *2 (Tex. App.—Austin Nov. 21, 2017). But the Medical Board's attorney conceded that the Court *could* conduct "review of the subpoena," including whether it sought evidence "reasonably related" to the Board's investigation. *Id.* at *2 n.4.[3] Because the recipient had brought an action for protective order under Texas Rule of Civil Procedure 176.6, the court (rightly) conducted that review. *Id.* at *4-5. And the Fifth Circuit has adopted *Allibone* and recognized that "Texas law contemplates the opportunity for precompliance review of an administrative subpoena before a neutral decisionmaker," including specifically for a "protective order." *Cotropia*, 721 F. App'x at 358 nn.2-3 (citing *Allibone*).

**3.**     The R&R quibbles (at 12) that there is no "*codified* mechanism" for precompliance review. But the fact that these precompliance review pathways are not spelled out in the RTE

---

[3] The R&R contends "[s]overeign immunity was not implicated in th[is] case[] because the statute authorizing the Texas Medical Board to issue subpoenas expressly authorizes litigation challenging such subpoenas." R&R at 22. That is wrong twice over.  Sovereign immunity was raised explicitly. *Allibone,* 2017 WL 5663607, at *2 n.4.  And the relevant statute authorizes ***the medical board*** to initiate litigation about subpoenas—it does not on its face allow subpoena recipients to challenge the subpoenas. Tex. Occ. Code § 153.007(e).

statute *itself* does not doom the statute. Courts often review motions to quash brought under other, generally applicable statutory procedures. *See, e.g.*, *In re Subpoena Duces Tecum*, 228 F.3d 341, 345 (4th Cir. 2000) (entertaining challenge to administrative subpoenas under quashing produce established in Federal Rule of Criminal Procedure 17(c)); *see also Miura Corp. v. Davis*, 2020 WL 5224348, at *6 (C.D. Cal. June 25, 2020) (rejecting *Patel* challenge to COVID-19 Order that was "relatively vague" and did "not clearly state procedures" for review, because government identified generally applicable review pathway would be available).

### C.  An RTE Recipient Will Always Obtain Review Before Penalties are Imposed.

In any event, even if an RTE recipient fails to take advantage of these precompliance review pathways, the RTE statute still guarantees review before any *penalty* is imposed. The Attorney General's remedies for noncompliance require it to prove *in court*, *before imposing a penalty* that the RTE recipient had no valid basis for noncompliance.

If an RTE recipient refuses to comply, the Attorney General can seek an injunction forcing compliance. Tex. Bus. Orgs. § 12.259. In that posture, an RTE recipient enjoys the functional equivalent of precompliance review. *See Cotropia*, 721 F. App'x at 358 n.3 (when agency "files suit to enforce a subpoena, a court can determine whether the subpoena is valid prior to compliance"). The RTE statute also authorizes the Attorney General to initiate charter forfeiture proceedings if he deems the refusal to comply is egregious enough to warrant that exercise of discretion. *See* Bus. Orgs. Code § 12.155; *Walker-Texas*, 323 S.W.2d at 606. But in that scenario the Attorney General has to go through the courts in what are known as quo warranto proceedings. *State v. Farmers' Loan & Tr. Co.*, 17 S.W. 60, 64 (Tex. 1891) ("the final inquiry" on charter revocation "must in all cases be made in and through the courts"); *see also Walker-Texas*, 323 S.W.2d 303. And, in quo warranto proceedings, a corporation "shall be entitled to all the rights . . .

as in other cases of trial of civil cases in this State." Tex. R. Civ. P. 781. So an RTE recipient can likewise obtain review there before any penalty is imposed.

The R&R asserts that this "pre-enforcement review" is "not the same" as "precompliance review" and so ostensibly fails under *Patel*. R&R at 16. That distinction has no purchase under *Patel*. Subpoena recipients do not have a right to review whenever they want—rather, they must merely get review before "suffering penalties for refusing to comply." *See v. City of Seattle*, 387 U.S. 541, 545 (1967); *Donovan v. Lone Steer, Inc.*, 464 U.S. 408 (1984) (same). And, under the RTE statute, such review is always available—indeed, it is mandatory—before there can be a penalty for failure to comply.[4]

### D. *City of Los Angeles v. Patel* is Materially Distinguishable.

All of these circumstances make this case unlike *City of Los Angeles v. Patel*, 576 U.S. 409 (2015). In that case, Los Angeles authorized its officers to show up at hotels and demand access to documents instantly; hotel operators that did not comply were arrested "on the spot." *Id.* at 421. The City insisted this was the way it had to be—it did "not even attempt to argue that [its code] affords hotel operators any opportunity whatsoever" for precompliance review. *Id.* at 421. Indeed, the City was adamant that permitting precompliance review would destroy the whole purpose of its law. It said the law "would be worthless" if operators had time to seek review, because that time would allow hotels to "falsif[y]" their records. 2014 WL 7205508, at *41 (City's Supreme Court Opening brief). And it said "frequent and unannounced spot checks are the only way to catch

---

[4] The RTE statute also makes noncompliance a misdemeanor. Tex. Bus. Orgs. Code § 12.156. Under current interpretation of the Texas Constitution, however, the Attorney General has no independent authority to enforce this provision (or any other criminal penalty). *State v. Stephens*, 663 S.W.3d 45 (Tex. Ct. Crim. App. 2021). For that reason, the Texas Supreme Court has recognized there is "no credible threat of criminal prosecution" from the Attorney General that would even support *standing*. *Zurawski*, 690 S.W.3d at 659. Moreover, even before *Stephens*, there was **no** history of the Attorney General ever using this provision. ECF No. 16-18 (recounting Attorney General enforcement history). And this penalty is in any event severable—Texas courts seek "to retain valid portions and applications of [a] statute whenever possible." *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 844 (Tex. 1990).

hotels." 2015 WL 737955, at *1 (City's Supreme Court Reply brief). By contrast, here the Attorney General admits (indeed, embraces) the proposition that RTE recipients may enjoy review before suffering penalties. And that concession is critical because it would be surpassing strange for a court to insist that the Attorney General's authority is less forgiving than even he insists that it is. *See, e.g.*, *In re Smith*, 333 S.W.3d 582, 588 (Tex. 2011) ("reasoned interpretations" by "attorney general" afforded deference); *Word of Faith World Outreach v. Morales*, 986 F.2d 962, 968-69 (5th Cir. 1993) (Attorney General representations to limit exercise of authority "materially alters or even eliminates the federal constitutional question"); *see also Cruz v. Abbott*, 849 F.3d 594, 601 (5th Cir. 2017) (agency official affidavit about how he applies the law "carries some weight").

## II. Spirit Cannot Sustain a Facial Challenge Based on the RTE Statute's Allowance for the Attorney General to Demand Compliance "Immediately."

Spirit also cannot establish facial unconstitutionality based on the RTE Statute's allowance for the Attorney General to demand "immediate" compliance. Tex. Bus. Orgs. Code § 12.152. Spirit was not subject to a demand for "immediate" compliance; thus, it lacks standing to challenge the RTE statute on this basis. Moreover, the fact that the "RTE statute ***authorizes*** the Attorney General to demand" immediate access when he deems warranted, R&R at 14 (emphasis added), does not mean the statute is *facially* unconstitutional.

### A. Spirit Lacks Standing to Challenge the RTE's Statute's "Immediate" Compliance Provision.

"It is axiomatic that the judicial power conferred by Art. III may not be exercised unless the plaintiff shows that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. It is not enough that the conduct of which the plaintiff complains will injure *someone*." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (quotations omitted). "[A] plaintiff lacks standing to litigate injurious conduct to which he was not subjected." *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 550 (5th Cir. 1988).

Spirit was not subject to a demand for immediate compliance—it was given "three weeks." *See* R&R at 15 n.13. For that reason, Spirit lacks standing to challenge this "putatively illegal" aspect of the RTE statute. *Blum*, 457 U.S. at 999. That is fatal for Spirit, because the R&R placed heavy weight on this feature of the statute. *See, e.g.*, R&R at 17 ("[T]he RTE Statute's immediacy requirement . . . forecloses" any "precompliance review"). R&R at 23 ("The RTE Statute . . . explicitly prevents such opportunity through its temporal requirements.").

Spirit may claim that it has standing based on its mere receipt of an RTE. But that is not enough to challenge the "immediate" provision. Spirit's receipt of an RTE demanding compliance in three weeks has nothing to do with the "putatively illegal conduct," *Blum*, 457 U.S. at 999, that Spirit claims flows from the statute's grant of authority for the Attorney General to seek "immediate" compliance. In this way, Spirit is in the familiar position of "hav[ing] standing on some issues and not others." *Baca v. Ladd*, 77 F.3d 480 (5th Cir. 1996). Spirit's standing is limited to challenging the RTE *it received*, and any allegedly illegal features of the statute that are present in that RTE.  It does not have standing to challenge provisions, such as the "immediate" compliance one, that do not affect it. *See In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019) ("[P]laintiffs must establish standing for each and every provision they challenge."); *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established.").

For good measure, the facts here differ sharply from *Patel*'s. The Court there did not address standing because the parties "stipulated that [the plaintiff hotels] have been subjected to mandatory record inspections under the ordinance without consent or a warrant." 576 U.S. at 413-14. Indeed, the City admitted at argument that a "plaintiff ha[d] been prosecuted multiple times,

or fined, for failure – for failing to keep the records."[5] Necessarily those hotel operators had standing to ensure they were not subject to this treatment again.

### B.  Spirit Cannot Sustain a Facial Challenge to the Statute.

Spirit also cannot use the "immediate" compliance provision to sustain its facial challenge.

**1.**        "[F]acial challenges [are] hard to win." *Moody v. NetChoice*, 144 S. Ct. 2383, 2397 (2024). It is not enough for a challenger to show that the RTE statute will sometimes, or even "will often cause Fourth Amendment violations." *City of El Cenizo v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018). Instead, "[t]o sustain such a challenge, [Spirit] must show that no set of circumstances exists under which the statute would be valid." *Nat'l. Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 878 (5th Cir. 2022) (emphasis added). The statute must be unconstitutional "in all of its applications." *Village of Hoffman Ests. v. Flipside, Hoffman Ests.*, 455 U.S. 489, 495 (1982). This heavy burden, coupled with the inherently fact-sensitive nature of Fourth Amendment cases, led many to believe before *Patel* that facial Fourth Amendment challenges were "categorically barred." 576 U.S. at 415. Although we now know they are not, *see id.*, Spirit cannot make the showing necessary to establish facial invalidity.

The statutory grant for the Attorney General to seek "immediate" compliance cannot plausibly show unconstitutionality in all applications because the Attorney General does not **demand** immediate compliance in all (indeed, in nearly any) applications. Recall that the RTE statute provides that:

> To examine the business of a [corporation] the attorney general shall make a **written request** to a managerial official, who shall **immediately permit** the attorney general to inspect, examine, and make copies of the records of the entity.

---

[5] https://www.supremecourt.gov/oral_arguments/argument_transcripts/2014/13-1175_k4lo.pdf

Tex. Bus. Orgs. Code § 12.152 (emphasis added). This language grants discretion to the Attorney General on what deadline to give a corporation for production. Textually, he can seek "immediate[]" production. *Id.* But he can also specify some other time for compliance in the "written request" he gives the corporation. And the undisputed evidence shows that the Attorney General's established practice is to give RTE recipients weeks to comply. A sworn and unrebutted declaration shows that **<u>28 of 29</u>** RTEs issued between September 2016 and the commencement of this litigation "gave at least ten days for compliance." ECF No. 16-18 ¶ 5. That is critical because "longstanding practice of the government" must inform the court's "determination of 'what the law is.'" *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014); *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2258 (2024) (government practice is just "like any other interpretive aid").

The R&R asserted that this enforcement history is irrelevant, because "[t]he Attorney General's choice in certain instances *not* to exercise the RTE Statute to its full power cannot defeat a facial challenge to the statute itself." R&R at 15. The opposite is true; the court "**must** explore the laws' full range of applications" in a facial challenge. *Moody*, 144 S. Ct. at 2398 (emphasis added). It cannot pick the worst possible application and then declare the statute facially unconstitutional. Indeed, "unless these hypothetical faults occur in **every** case, they do not justify invalidating [the statute] on its face." *United States v. Rahimi*, 144 S. Ct. 1889, 1903 (2024).

**2.**      Moreover, the mere fact that the RTE Statute does not textually provide a pre-determined amount of time for compliance does not render the statute facially invalid. "Rules and statutes authorizing subpoenas ***often*** omit a minimum number of days for complying," and leave it to the issuing person to select a number of days that fit the circumstances. *ESI/Employee Solutions v. City of Dallas*, 528 F. Supp. 3d 564, 573 n.3 (E.D. Tex. 2021). Federal Rule of Civil Procedure 45 is one such example. It allows the person issuing the subpoena to require document

production "at a specific time and place," with no minimum amount of days required. Fed. R. Civ. P. 45(a)(1)(A)(iii). Sometimes the party issuing the subpoena gets aggressive, providing only "one business day" to comply. *Dika-Homewood, LLC v. Off. Max*, 2022 WL 3682214, at *1 (S.D. Fla. June 16, 2022); *Bailey v. Fair & Walker Unit Owners Ass'n*, 2023 WL 2119490, at *2 (N.D. Ga. Jan. 17, 2023) (same). Courts will quash these subpoenas if the time given is not "reasonable." Fed. R. Civ. P. 45(d)(3)(A)(i). But "[r]easonableness is always a contextual determination." *Tera II, LLC v. Rice Drilling*, 2022 WL 1114943, at *3 (S.D. Ohio Apr. 14, 2022). The statute *authorizing* the subpoena is not *itself* invalid.

The federal administrative state is also replete with subpoena statutes that "do[] not indicate how much time a respondent must be allowed before the date for compliance with the administrative subpoena." *Acosta v. American Postal Workers Union*, 2017 WL 6886673, at *4 (C.D. Cal. Dec. 4, 2017). The Federal Trade Commission, for example, "shall **at all reasonable times** have access to, for the purpose of examination and the right to copy any documentary evidence of any person." 15 U.S.C. § 49 (emphasis added). No court has concluded that provision is unconstitutional. Similar with the Consumer Financial Protection Bureau—its statute provides a default "20 days" for compliance with an administrative subpoena, but allows the Bureau to specify a "period [that] is shorter"—with no limitation on how short. 12 U.S.C. § 5562(f). If an agency imposes a draconian time to comply, the court can review it for reasonableness. *ESI/Employee Solutions*, 528 F. Supp. 3d 564, 575 (E.D. Tex. 2021); *See v. City of Seattle*, 387 U.S. 541, 545 (1967) (requiring administrative subpoenas to "be measured . . . against a flexible standard of reasonableness"). Courts do not declare these statutes facially unconstitutional.

**3.**     A facial unconstitutionality ruling is particularly unwarranted here because of the great violence it does to Texas state sovereignty. *See Wash. State Grange v. Wash. State Republican*

*Party*, 552 U.S. 442, 450 (2008) (warning that facial invalidity holdings "threaten to short circuit the democratic process"). Operating as a corporation in Texas is a privilege, not a right. *Wilson v. United States*, 221 U.S. 361, 383 (1911) ("The corporation is a creature of the state."). Texas may impose many "condition[s] of doing business []here." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 133 (2023). One prominent condition it has imposed is that, when corporations register to do business here, they commit to allow the Attorney General to see their books to ensure compliance with "any law of this state" or the corporation's "governing documents." Tex. Bus. Orgs. Code §§ 12.151, 12.153. But a facial unconstitutionality holding allows *every* corporation in Texas to flout that commitment.

     **4.**     Spirit and the R&R place heavy weight on representations the Attorney General made about the statute' "immediate" language in a different, *sui generis* setting known as Annunciation House. R&R at 9-10, 13, 15, 18 (all citing ECF No. 18-8—a copy of a filing arising out of that investigation). In Annunciation House, the Attorney General issued an RTE that demanded something close to immediate compliance, and gave the opposing party one day of "grace" when it refused to timely comply. ECF No. 18-8 Ex. A, at 8.  In the process, the Attorney General defended his use of the "immediate" compliance authority by explaining that his power to demand immediate compliance includes the power to force a corporation to comply "right away." ECF No. 18-8 Ex. A at 10.  The Attorney General used the RTE Statute in this way in that *sui generis* setting because of particularized, on-the-ground observations demonstrating facts akin to exigent circumstances that would have, in analogous contexts, provided law enforcement agents reasonable grounds to enter absent a warrant. *See* ECF No. 18-8, Ex. A at 8. Binding precedent confirms "exigent circumstances" could be a valid basis for a subpoena demanding immediate compliance. *Zadeh v. Robinson*, 928 F.3d 457, 464 (5th Cir. 2019).

But the Attorney General's representations in that other case cannot plausibly carry the weight that Spirit and the R&R attach to it. All it shows is that the Attorney General *can* demand immediate compliance—there is a "[s]tatutory grant of power to [the Attorney General] to demand 'immediate' access." ECF No. 18-8 at 10, or, as the R&R puts it, the "RTE Statute *authorizes* the Attorney General to demand 'immediate[]' access." R&R at 14 (emphasis added) This power does not show that, in "all of its applications," the RTE Statute forces an entity to immediately comply. *Village of Hoffman Ests.*, 455 U.S. at 495. Indeed, in the lion's share of RTEs, including the one at issue here, the Attorney General does *not* require immediate compliance. *See* ECF No. 16-18 ¶ 5 (explaining the Attorney General almost always affords weeks for compliance).

If a party (unlike Spirit) is subject to a demand for immediate compliance it can raise an as-applied challenge specific to the particular facts at issue. For example, in *Cotropia v. Chapman*, 978 F.3d 282, 287 (5th Cir. 2020), a state investigator physically entered a doctor's office, refused to leave when asked, and "removed several documents from [the office] desk and made copies" on site. *Id.* at 285. The court concluded that the state investigator alone "violated" a party's rights "when she copied documents in [the party's] office without any precompliance review." *Cotropia*, 978 F.3d at 287 (emphasis added). But no such thing happened here.

### C.  A Reasonable Limiting Construction Would Moot Spirit's Argument.

At a bare minimum, the Court has a duty to adopt a limiting construction, if possible, to solve any constitutional problem it perceives. "In evaluating a facial challenge to a state law, a federal court must . . . consider any limiting construction that a state court or enforcement agency has proffered." *Vill. of Hoffman Ests.*, 455 U.S. at 495 n.5 (1982); *Doe I v. Landry*, 909 F.3d 99, 112 (5th Cir. 2018) (same). The State courts do the same. *See City of Pasadena v. Smith*, 292 S.W.3d 14, 19 (Tex. 2009); *see also Comm'n for Law. Discipline v. Benton*, 980 S.W.2d 425, 442

(Tex. 1998) ("We have limited Rule 3.06(d) so as to render it constitutional by striking [one] term . . . and narrowing [another].").

The federal courts have already explained exactly how such a limiting construction might work here. When a subpoena statute does not itself provide clear timing rules, the courts require compliance "within a *reasonable time*." *In re Grand Jury Proceedings*, 802 F.3d 57, 68 (1st Cir. 2015) (emphasis added). It does not intrude upon the "Texas legislature" for the court to adopt that common-sense interpretation, *contra* R&R at 23-24—instead, the court is "duty-bound" to try. *Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020). That is always so, unless the narrowing construction would "twist the words of the law and give them a meaning they cannot reasonably bear." *Stenberg v. Carhart*, 530 U.S. 914, 941 (2000). Here, such a "reasonable time" construction would work no such twisting. It would also work no inconsistency with the Attorney General's actions in Annunciation House because exigent circumstances support immediacy as being reasonable. By contrast, when there is no exigency, a "reasonable time" must be longer.

Spirit, by contrast, would have this court apply a much-maligned "canon of constitutional collision." *United States v. Hansen*, 599 U.S. 762, 781 (2023). It is trying to take advantage of certain "odd incentives" in facial challenge doctrine, *id.*, asking the Court to adopt the most draconian "reading possible" of this statute—even though that draconian form has not been applied to Spirit—in order to escape a clearly constitutional application of the statute. *See id.* (cautioning courts not to do this). That opportunistic reading is understandable litigation strategy, but it invites this Court to "slay[] a straw man." *Rahimi*, 144 S. Ct. at 1903. This Court should not oblige.

## CONCLUSION

For the foregoing reasons, Court should reject the R&R and enter summary judgment for the Attorney General.

Dated: NOVEMBER 4, 2024                    Respectfully submitted,

                                           KEN PAXTON
                                           Attorney General of Texas

                                           BRENT WEBSTER
                                           First Assistant Attorney General

                                           RALPH MOLINA
                                           Deputy First Assistant Attorney General

                                           JAMES LLOYD
                                           Deputy Attorney General for Civil Litigation

                                           JOHNATHAN STONE
                                           Chief, Consumer Protection


                                    By:    */s/ Matthew T. Kennedy*
                                           MATTHEW T. KENNEDY
                                           Deputy Chief, Consumer Protection
                                           Texas Bar No. 24092619
                                           Office of the Attorney General
                                           P.O. Box 12548
                                           Austin, TX 78711
                                           matt.kennedy@oag.texas.gov
                                           (512) 463-1308
                                           (512) 473-8301 (fax)

                                           *Attorneys for Defendant W. Kenneth Paxton, in his*
                                           *official capacity as Attorney General of Texas*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of November 2024, a copy of the foregoing document was served via electronic mail to all counsel of record.

                                           */s/ Matthew T. Kennedy*
                                           MATTHEW T. KENNEDY
                                           Assistant Attorney General