UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SPIRIT AEROSYSTEMS, INC., | Civil Action No. 1:24-cv-00472-DII |
| *Plaintiff*, | |
| v. | |
| W. KENNETH PAXTON, *in his official capacity as Attorney General of Texas*, JANE NELSON, *in her official capacity as Secretary of State of Texas*, | |
| *Defendants*. | |

**PLAINTIFF SPIRIT AEROSYSTEMS, INC.'S RESPONSE TO DEFENDANT W.
KENNETH PAXTON'S OBJECTIONS TO THE REPORT AND RECOMMENDATION**

McCARTY LAW PLLC
Darren L. McCarty (SBN: 24007631)
darren@mccartylawpllc.com
1410B West 51st Street
Austin, TX 78756
Telephone: (512) 827-2902

WILMER CUTLER PICKERING HALE
AND DORR LLP
Matthew T. Martens (*pro hac vice*)
    matthew.martens@wilmerhale.com
Jaclyn N. Moyer (*pro hac vice*)
    jaclyn.moyer@wilmerhale.com
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6921

*Attorneys for Plaintiff Spirit
AeroSystems, Inc.*

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT ........................................................................................................................3

I.      The RTE Statute Is Facially Unconstitutional Under The Fourth Amendment..................4

        A.      The RTE Statute, By Its Terms, Forecloses Precompliance Review of the
                Reasonableness of a Request to Examine..........................................................4

        B.      No Texas Court Has Ever Held That Precompliance Review of the
                Reasonableness of a Request to Examine Is Available. ........................................7

                1.      The Request to Examine Cases the Attorney General Cites Actually
                        Foreclose Precompliance Review of the Reasonableness of a Request
                        to Examine. ........................................................................................7

                2.      The So-Called Modern Procedural Doctrines the Attorney General
                        Invokes Also Foreclose Precompliance Review of the Reasonableness
                        of a Request to Examine. .....................................................................9

        C.      The Fourth Amendment Requires an Opportunity for Precompliance,
                Not Merely Pre-Enforcement, Review. .............................................................12

        D.      This Court Cannot Rewrite the RTE Statute to Render It Constitutional..............14

II.     Spirit Can Challenge The Facial Unconstitutionality Of The RTE Statute. ......................15

        A.      Spirit Has Standing to Bring a Facial Challenge. ...............................................15

        B.      The RTE Statute Is Unconstitutional in All Its Applications. ..............................18

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adams v. Aircraft Spruce & Specialty Co.*,
    284 A.3d 600 (Conn. 2022) ................................................................................2

*Airbnb, Inc. v. City of New York*,
    373 F. Supp. 3d 467 (S.D.N.Y. 2019)................................................................12

*Allibone v. Freshour*,
    No. 17-00357, 2017 WL 5663607 (Tex. App. Nov. 21, 2017) ........................12

*Babbitt v. United Farm Workers National Union*,
    442 U.S. 289 (1979)....................................................................................17, 18

*Braidwood Management, Inc. v. EEOC*,
    70 F.4th 914 (5th Cir. 2023) ............................................................................16

*Camara v. Municipal Court of City & County of San Francisco*,
    387 U.S. 523 (1967).....................................................................................6, 12

*Chesterfield Finance Co. v. Wilson*,
    328 S.W.2d 479 (Tex. Civ. App. 1959) ....................................................3, 8, 9

*City of Elsa v. M.A.L.*,
    226 S.W.3d 390 (Tex. 2007)............................................................................11

*City of Los Angeles v. Patel*,
    576 U.S. 409 (2015)............................................................................... *passim*

*Computer & Communications Industry Assoc. v. Paxton*,
    No. 24-CV-849, 2024 WL 4051786, __ F. Supp. 3d __ (W.D. Tex. Aug.
    30, 2024) .....................................................................................................14, 20

*Cotropia v. Chapman*,
    721 F. App'x 354 (5th Cir. 2018) ....................................................................12

*Donovan v. Lone Steer, Inc.*,
    464 U.S. 408 (1984)............................................................................3, 4, 6, 8

*El Paso Independent School District v. McIntyre*,
    584 S.W.3d 185 (Tex. App. 2018)....................................................................11

*ESI/Employee Solutions, L.P. v. City of Dallas*,
    450 F. Supp. 3d 700 (E.D. Tex. 2020) ........................................................3, 13

*Fund Texas Choice v. Deski*,
    No. 22-CV-859, 2023 WL 8856052 (W.D. Tex. Dec. 21, 2023) ....................................18

*Guilbeau v. Schlumberger Tech. Corp.*,
    719 F. Supp. 3d 702 (W.D. Tex. 2024) (J. Pulliam) ............................................................4

*Hale v. Henkel*,
    201 U.S. 43 (1906)................................................................................................................3

*Humble Oil & Refining Company v. Daniel*,
    259 S.W.2d 580 (Tex. Civ. App. 1953)..........................................................6, 7, 8, 10, 15

*In re Grand Jury Proceedings*,
    802 F.3d 57 (1st Cir. 2015) ....................................................................................7, 14, 20

*Patel v. Texas Department of Licensing & Regul.*,
    469 S.W.3d 69 (Tex. 2015)................................................................................................10

*State v. Stephens*,
    663 S.W.3d 45 (Tex. Crim. App. 2021)............................................................................13

*Texas v. United States*,
    787 F.3d 733 (5th Cir. 2015) ............................................................................................16

*Thomas v. Arn*,
    474 U.S. 140 (1985)..............................................................................................................4

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982)............................................................................................................18

*Walker-Texas Investment Corp. v. State*,
    323 S.W.2d 603 (Tex. Civ. App. 1959) .........................................................................9, 13

## STATUTES, RULES, AND REGULATIONS

15 U.S.C. § 49..................................................................................................................................20

Tex. Bus. Orgs. Code
    § 12.151............................................................................................................*passim*
    § 12.152............................................................................................................*passim*
    § 12.155..................................................................................................................1, 15
    § 12.156.............................................................................................................1, 5, 15

Tex. Code Crim. Proc.
    § 2.12(22) ....................................................................................................5
    § 14.01(b) ...................................................................................................5

Tex. R. Civ. P.
    176 ......................................................................................................11, 12
    176.1 ........................................................................................................11
    176.5(b) ....................................................................................................11
    176.6(e) ....................................................................................................11

## CONSTITUTIONAL AUTHORITY

U.S. Const. amend. XIV ..................................................................................... *passim*

## OTHER AUTHORITIES

Davis & Gillum, *Government Pre-Suit Investigative Powers: A Survey of
    Common Issues Arising from Investigations by the Texas Attorney General
    and the Texas Department of Insurance*, 14 Tex. Admin. L. J. 301 (2013) .......................5

## <u>INTRODUCTION</u>

The Texas Request to Examine Statute, Tex. Bus. Orgs. Code §§ 12.151, *et seq.* (the "RTE Statute"), authorizes the Attorney General to, in his unlimited discretion, "inspect" or "examine" "any record" of a filing entity registered to do business in Texas.  Tex. Bus. Orgs. Code § 12.151. A filing entity that receives a request from the Attorney General to conduct such an examination (a "Request to Examine") and fails to "immediately permit" the Attorney General to do so "shall" have its registration revoked and its managerial officials can be subject to criminal prosecution. *Id.* §§ 12.152, 12.155, 12.156.  The RTE Statute makes no provision for precompliance judicial review of the reasonableness of a Request to Examine.

Binding precedent compels the conclusion that the RTE Statute is facially unconstitutional. In *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), the Supreme Court held that a city ordinance allowing a police officer to demand immediate access to a hotel's records facially violated the Fourth Amendment because it made no provision for precompliance judicial review and subjected hotel managers to criminal penalties for noncompliance with the police officer's demand.  "[I]n order for an administrative search to be constitutional," the *Patel* Court explained, "the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker.  576 U.S. at 420.  The magistrate judge here correctly recognized that, under *Patel*, the instant Fourth Amendment challenge to the RTE Statute "is easy."  Transcript, Oct. 11, 2024 Hearing (hereinafter "Tr."), at 69:17.  The Attorney General's objections, Dkt. 53 (hereinafter "Obj."), to the magistrate judge's Report and Recommendation ("R&R"), Dkt. 52, do nothing to disturb this conclusion.

Plaintiff Spirit AeroSystems, Inc. ("Spirit") therefore respectfully requests that the Court adopt the magistrate judge's R&R to grant Plaintiff's motion for summary judgment and a permanent injunction and deny the Attorney General's cross-motion for summary judgment.

## BACKGROUND

Spirit agrees with the facts as set forth by the magistrate judge's R&R.  *See* Dkt. 52 at 2-6. The Attorney General's reframing of the facts, *see* Obj. at 2-6, does not contain *any* objections to *any* facts as laid out by the magistrate judge.  Nevertheless, several statements in the Attorney General's recharacterization of the case background warrant response.

1.      The Attorney General's assertion that he has a "particularly strong interest in investigating the underlying allegations" of Boeing aircraft malfunctions in California and overseas "because Texans are regular passengers on Boeing aircraft" is meritless.  Obj. at 3.  The Boeing fuselages are not manufactured in Texas.  Welner Decl., Dkt. 18-11 at ¶¶ 4-5.  The magistrate judge thus rightly referred to the Attorney General's investigative theory as "an enormous reach . . . when none of the crashes happened in Texas."  Tr. at 31.  The Attorney General's jurisdictional overreach would be at the center of Spirit's reasonableness challenge to his Request to Examine—*if* it had an opportunity to present its arguments on the merits.[1]

2.      The Attorney General spills a great deal of ink on his authority to "supervise corporate compliance with state laws."  Obj. at 3-4.  But as the magistrate judge correctly observed, the issue here is not whether the Attorney General may investigate corporations but rather the "proper vehicle" with which he may do so.  Dkt. 52 at 2.  When asked by the magistrate judge at oral argument why the Attorney General had not simply used an administrative subpoena (such as a civil investigative demand under the Deceptive Trade Practices Act), counsel for the Attorney General responded that such subpoenas "don't necessarily provide the scope that the RTE Statute provides" and Spirit could argue that any documents requested do not "come[] within the scope of

---

[1] The Attorney General lacks personal jurisdiction over Spirit to conduct an investigation of out-of-state activities by an out-of-state corporation.  *See Adams v. Aircraft Spruce & Specialty Co.*, 284 A.3d 600, 617-619 (Conn. 2022) (holding that the court lacked personal jurisdiction over a seller of aircraft parts for claim that part malfunctioned and led to in-state crash).

that relatively narrow grant for an administrative subpoena."  Tr. at 53:2-13.

The Attorney General defends his use of the RTE Statute by reference to the supposed "long used visitorial powers" and the fact that "[t]he corporation is a creature of the state."  Obj. at 3 (internal quotation marks omitted).  But Spirit is incorporated in Delaware, and thus, as the Texas Secretary of State has acknowledged, the laws of Delaware—not Texas—govern Spirit's internal affairs.  *See* Dkt. 18-9 at 1.  Furthermore, the RTE Statute came into being more than 115 years after the Fourth Amendment to the U.S. Constitution was ratified, being first "enacted in 1907, when President Theodore Roosevelt was engaged in 'trust-busting' of monopolies." *Chesterfield Fin. Co. v. Wilson*, 328 S.W.2d 479, 481 (Tex. Civ. App. 1959).  Thus, the Supreme Court has noted that, notwithstanding any "visitorial power over state corporations," an "order for the production of [a corporation's] books and papers may constitute an unreasonable search and seizure within the Fourth Amendment."  *Hale v. Henkel*, 201 U.S. 43, 75-76 (1906).

3.      Finally, the Attorney General's repeated insistence that a Request to Examine is an administrative subpoena as opposed to an administrative search is perplexing given that administrative subpoenas are also subject to the Fourth Amendment's limitations, including the requirement of precompliance review before a neutral decisionmaker.  *See Patel*, 576 U.S. at 420; *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984) (holding that recipient of an administrative subpoena must be allowed to "question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it"); *ESI/Emp. Sols., L.P. v. City of Dallas*, 450 F. Supp. 3d 700, 727 (E.D. Tex. 2020) (concluding that city ordinance did not "provide constitutionally adequate precompliance review of administrative subpoenas").

## ARGUMENT

As the magistrate judge rightly concluded, making "th[e] call" that the RTE Statute is unconstitutional "is easy."  Tr. at 69.  The RTE Statute suffers from all the same constitutional

infirmities as did the city ordinance at issue in *City of Los Angeles v. Patel*, *supra*, because the statute's requirement of "immediate[]" compliance necessarily precludes the **pre**compliance review required by the Fourth Amendment.   But even were the "immediate" compliance requirement not in the plain text of the RTE Statute, Texas case law has both interpreted the RTE Statute as placing no reasonableness limits on the Attorney General's discretion to issue a Request to Examine and afforded the Attorney General sovereign immunity from suits challenging his use of that discretion.   Thus, there is no forum for judicial review of the reasonableness of a Request. Finally, the Attorney General's belated argument that, though Spirit has received a Request to Examine, it lacks standing to raise a facial challenge to the RTE Statute, is frivolous.[2]

## I.    The RTE Statute Is Facially Unconstitutional Under The Fourth Amendment.

### A.    The RTE Statute, By Its Terms, Forecloses Precompliance Review of the Reasonableness of a Request to Examine.

"[I]n order for an administrative search to be constitutional," the Fourth Amendment requires that "the subject of the search … be afforded an opportunity to obtain precompliance review before a neutral decisionmaker."  *Patel*, 576 U.S. at 420.  Specifically, the subject must have "the opportunity to 'question the reasonableness of the subpoena, before suffering any penalties.'"  *Id.* (quoting *Donovan*, 464 U.S. at 415).  This opportunity for precompliance judicial review for reasonableness is critical to the constitutionality of administrative searches because it minimizes the "intolerable risk that searches … will exceed statutory limits, or be used as a pretext

---

[2] Although the magistrate judge did not reach Spirit's as-applied challenge to the RTE Statute, the as-applied challenge provides an alternative ground for the Court to enter summary judgment for Spirit.  The RTE Statute is unconstitutional as applied to Spirit by means of the Attorney General's May 13 Request, as explained in Spirit's Complaint, Dkt. 1, its Motion for Summary Judgment, Dkt. 17, and its Reply in Support of its Motion for Summary Judgment, Dkt. 25.  *See Guilbeau v. Schlumberger Tech. Corp.*, 719 F. Supp. 3d 702, 709 (W.D. Tex. 2024) (Although a district court is "not require[d] to review an issue de novo if no objections are filed," the federal rules do "not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard." (quoting *Thomas v. Arn*, 474 U.S. 140, 154 (1985)).

to harass." *Id*. at 421.

As the magistrate judge concluded in his R&R, Dkt. 52 at 9, the RTE Statute is indistinguishable from the ordinance at issue in *Patel* and suffers from the same constitutional defects, namely the absence of an opportunity for precompliance review of the reasonableness of a Request to Examine. As an initial matter, the RTE Statute provides no mechanism to allow a company to seek precompliance review of the reasonableness of a Request to Examine. *See* Davis & Gillum, *Government Pre-Suit Investigative Powers: A Survey of Common Issues Arising from Investigations by the Texas Attorney General and the Texas Department of Insurance*, 14 Tex. Tech. Admin. L.J. 301, 323 (2013) ("The Request to Examine statute provides no express mechanisms to challenge the attorney general's authority to examine records."). What is more, the RTE Statute requires that the recipient of a Request to Examine comply "immediately," Tex. Bus. Orgs. Code § 12.152—a word that the Attorney General has said means "right away," Dkt. 18-8 Ex. A, at 10. Thus, as a temporal matter, the plain text of the RTE Statute precludes an opportunity for precompliance judicial review because it is impossible to obtain judicial review prior to the statutorily-required immediate compliance. If an entity fails to immediately comply with the Attorney General's demand, the entity's managerial officials can be criminally prosecuted for a misdemeanor offense, *id.* § 12.156, and the Attorney General's staff can arrest those officials on the spot, *see* Tex. Code Crim. Proc. §§ 2.12(22), 14.01(b). In other words, a Request to Examine recipient and its managerial officials are, at the moment of receipt, put to the choice of complying with the Request or violating the statutory "immediately permit" requirement. There is simply no opportunity for the "precompliance review before a neutral decisionmaker" that the Constitution requires. *Patel*, 576 U.S. at 420.

Furthermore, the Fourth Amendment requires that the opportunity for precompliance

review include review of the reasonableness of a Request.  *See Donovan*, 464 U.S. at 415 (holding that Fourth Amendment requires an opportunity "to question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it").  But the RTE Statute precludes any review of a Request's reasonableness by "grant[ing] to the Attorney General ***the full and unlimited and unrestricted right to examination*** of the corporation's books and records at ***any time* and *as often as he may deem necessary***."  *Humble Oil & Refining Company v. Daniel*, 259 S.W.2d 580, 589 (Tex. Civ. App. 1953) (emphasis added).  An "unlimited" right to visit a business and examine its records is necessarily inconsistent with judicial review of a Request's reasonableness and "strikes" another "blow" to the RTE Statute.  Dkt. 52 at 11.

Thus, it is clear from the RTE Statute's text and structure that it fails to provide for the constitutionally required opportunity for precompliance review of the reasonableness of a Request to Examine.  Without an opportunity for such review, companies like Spirit can resist the Attorney General's demand to inspect corporate documents only by assuming the risk of arrest, criminal prosecution, and business registration revocation.  *Patel* makes clear that the Fourth Amendment prohibits putting people or companies "to this kind of choice."  576 U.S. at 421.  As the Supreme Court explained decades ago, "[t]he practical effect of this system is to leave the [company] subject to the discretion of the official in the field.  This is precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested party warrant the need to search."  *Camara v. Municipal Court of City & Cnty. of San Francisco*, 387 U.S. 523, 532-533 (1967).

The constitutional defect in the RTE Statute is implicated each and every time the Attorney General issues a Request under the auspices of the RTE Statute, thus rendering the statute facially unconstitutional.  Regardless of what "grace" the Attorney General might extend for compliance

6

with a Request to Examine, *see* Dkt. 18-8 at 8-9, the RTE Statute demands that upon receipt of the Request the "managerial official … shall immediately permit the attorney general to inspect, examine, and make copies of the records," Tex. Bus. Orgs. Code § 12.152, and no Request to Examine is subject to a statutory requirement that it be reasonable in scope, *see Humble Oil*, 259 S.W.2d at 589.  That the Attorney General now sings a different tune, asking this Court to read a "reasonable time" provision (though not a reasonable scope limitation) into the RTE Statute (Obj. at 20), is an implicit concession that the statute as written is unconstitutional.  In any event, reading a "reasonable time" to comply into a statute is only appropriate where there is a "gap" in the statute. *See In re Grand Jury Proceedings*, 802 F.3d 57, 67-68 (1st Cir. 2015).  The "immediat[e]" provision of the RTE Statute leaves "no gap to be filled."  Dkt. 52 at 10.

**B.      No Texas Court Has Ever Held That Precompliance Review of the Reasonableness of a Request to Examine Is Available.**

The Attorney General contends that "[b]inding precedent" demonstrates that Texas state courts "conduct[] merits review of RTEs."  Obj. at 6.  This linguistic sleight of hand obscures the relevant issue.  What the Fourth Amendment requires, as interpreted in *Patel*, is an opportunity for ***precompliance*** judicial review ***of the reasonableness*** of a particular Request.  *See supra* at 5-6. The Attorney General has yet to cite a single case providing for such review in the more than 115 years the RTE Statute has been on the books.  To the contrary, the cases he cites hold that his authority under the RTE Statute is "unlimited," *see Humble Oil*, 259 S.W.2d at 589, and thus not subject to a reasonableness limitation a court could apply even were judicial review available.

**1.      The Request to Examine Cases the Attorney General Cites Actually Foreclose Precompliance Review of the Reasonableness of a Request to Examine.**

As the Attorney General notes, the cases addressing the RTE Statute "occurred long ago, when Texas courts were not precise about how and why they were exercising jurisdiction."  Obj.

at 8.  Stated more directly, **none** of the Attorney General's cases **held** that judicial review (much less, precompliance review) of a Request's reasonableness is available.

The Attorney General points to *Humble Oil* as the case in which a Texas court "first conducted RTE review."  Obj. at 7.  But the review in that case occurred ***post-compliance*** in an action to obtain ***return*** of the seized documents.  *Humble Oil*, 259 S.W.2d at 583, 589.  After-the-fact review for return of documents already inspected is, by definition, not precompliance review. And even then, the *Humble Oil* court did not review the reasonableness of the particular Request to Examine, instead noting that the RTE Statute affords the Attorney General "an ***unlimited*** and ***unrestricted*** right of visitation and examination of the books and records of the corporation."  *Id.* at 589 (emphasis added).  Nothing in *Humble Oil* holds that an RTE recipient can bring a precompliance action contesting the reasonableness of a Request to Examine—which is the review the Fourth Amendment requires, *see Patel*, 576 U.S. at 420; *Donovan*, 464 U.S. at 415.[3]

The Attorney General next cites *Chesterfield* as a case in which a court supposedly "conducted precompliance review" of an RTE.  Obj. at 7.  But what *Patel* requires is an opportunity for precompliance review ***of the reasonableness*** of a Request.  *See supra* at 5-6; *Patel*, 576 U.S. at 420; *Donovan*, 464 U.S. at 415.  No such review was sought or conducted in *Chesterfield*. Rather, the appellants there "admit[ted] in their brief that the Attorney General has the unrestricted and unlimited right to examine and inspect its records."  328 S.W.2d at 481.  The "only question" on appeal was whether the Attorney General had the legal "right to copy appellant's records."  *Id.* Thus, *Chesterfield* did not hold that precompliance review of the *reasonableness* of a Request to Examine was available to an RTE recipient; rather, it extended the *Humble Oil* holding to allow

---

[3] To the extent that *Humble Oil* held that a post-hoc declaratory judgment action satisfies the Fourth Amendment, that reasoning clearly does not survive *Patel*.

the Attorney General to make copies of documents that appellant had already conceded the Attorney General had the unlimited authority to inspect. 328 S.W.2d at 481.

Further, the Attorney General invokes *Walker-Texas Investment Corp. v. State*, 323 S.W.2d 603, 606 (Tex. Civ. App. 1959), as a case where a Texas court supposedly "conducted review of a corporation's reasons for refusing to produce records." Obj. at 7. Again, however, that case did not involve precompliance review but rather was a quo warranto proceeding in which the corporation's registration was being revoked for failure to comply with a Request. *See Walker-Texas*, 323 S.W.2d at 606. What is more, *Walker-Texas* expressly rejects the notion that the reasonableness of a Request to Examine is a defense to—or even properly raised in—a quo warranto revocation action. *See id.* at 606-07 (holding that, in a quo warranto proceeding, the trial court properly excluded evidence "bearing on whether or not the search was unreasonable and unconstitutional"). Rather than helping the Attorney General, *Walker-Texas* expressly forecloses even the post-compliance review route that he suggests exists for RTE recipients.[4]

In sum, while the Attorney General claims that "binding precedent" demonstrates that Texas courts afford the constitutionally required precompliance review of the reasonableness of a Request to Examine, he has not cited a single Request to Examine case in which that review occurred—much less a case holding that such review is legally available to Request recipients.

### 2. The So-Called Modern Procedural Doctrines the Attorney General Invokes Also Foreclose Precompliance Review of the Reasonableness of a Request to Examine.

As described above, *see* Section I.A, *supra*, the text of the RTE Statute precludes precompliance judicial review of the reasonableness of a Request because of (1) the obligation

---

[4] In any event, says the Attorney General, at least the company in *Walker-Texas* was "able to litigate" its "frivolous" refusal to comply "before the charter forfeiture occurred." Obj. at 7-8. But *Patel* unambiguously requires pre***compliance*** review, not merely pre-***enforcement*** review. *See* Section I.C, *infra*.

imposed by the RTE Statute for a Request recipient to comply "immediately" or suffer civil and criminal penalties and (2) the "unlimited and unrestricted" nature of the Attorney General's discretionary authority granted by the RTE Statute. But even if the text of the RTE Statute did not itself foreclose the constitutionally mandated precompliance review, the Attorney General's invocations of more modern procedural mechanisms for supposed review would be meritless.

### a)   Ultra vires suit.

The Attorney General argues that, under the ultra vires exception to the sovereign immunity doctrine, a plaintiff can bring an injunctive action in state court when a government official "exceeds the bounds of his authority." Obj. at 9. Again, the Attorney General engages in linguistic sleight of hand. The ultra vires exception allows for suits alleging "that a state official acted without legal authority," *not* suits "complain[ing] of a government officer's exercise of his discretion." *Patel v. Texas Dep't of Licensing & Regul.*, 469 S.W.3d 69, 77 (Tex. 2015) (internal quotation marks omitted). But the RTE Statute, as written by the Texas Legislature and interpreted by the Texas state courts, imposes no limits whatsoever on the Attorney General's discretionary authority to inspect corporate documents. Rather, the RTE Statute empowers the Attorney General to inspect documents "as [he] considers necessary," *id.* § 12.151, language that Texas state courts have interpreted as "giv[ing] to the Attorney General an unlimited and unrestricted right of visitation and examination" and "grant[ing] to the Attorney General the full and unlimited and unrestricted right to examination of the corporation's books and records at any time and as often as he may deem necessary." *Humble Oil*, 259 S.W.2d at 589. This grant of unlimited authority precludes an argument that the Attorney General acted without legal authority in issuing even the broadest Request to Examine imaginable. Instead, a challenge to the reasonableness of a Request to Examine would be contesting the Attorney General's exercise of discretion in issuing that particular Request—which is what the ultra vires exception does *not* allow.

10

*City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007), on which the Attorney General relies (Obj. at 9), is not to the contrary.  In *El Paso Independent School District v. McIntyre*, 584 S.W.3d 185 (Tex. App. 2018), the court explained that, notwithstanding *City of Elsa*, an action seeking to enjoin state government actors from seeking documentation regarding parents' homeschooling activities was not subject to the ultra vires exception to sovereign immunity because the action was not challenging the constitutionality of a statute but rather its discretionary application by the state official.  *See id.* at 198-199.  So too here.  Spirit cannot invoke the ultra vires doctrine to avoid the Attorney General's sovereign immunity from a state court injunctive action challenging his discretionary decision to request documents pursuant to the RTE Statute.

**b)    Petition for protective order.**

The Attorney General next argues that Texas Rule of Civil Procedure 176 provides a "pathway to review."  Obj. at 9.  This argument, too, is meritless.  Rule 176 addresses "subpoenas," which "must be issued in the name of 'The State of Texas' and must" state, among other things, the "cause number" and "the court in which the suit is pending."  Tex. R. Civ. P. 176.1.  Once the subpoena is served, "[p]roof of service" must be filed with the court, Tex. R. Civ. P. 176.5(b), and a person served with such a subpoena "may move for a protective order."  Tex. R. Civ. P. 176.6(e).

These provisions have no application here.  A Request to Examine issued pursuant to the RTE Statute, including the Request issued to Spirit, has none of the characteristics specified in Rule 176.  The Request to Examine does not, on its face, purport to be a subpoena, does not cite Rule 176 for its authority, does not state that it was issued in the name of "The State of Texas," does not include a case number or identify a court in which a suit is pending, and was not followed by the filing of a proof of service.  *See* Martens Decl., May 13 Request, Dkt. 18-5.  Thus, the Attorney General's invocation of Rule 176 as applicable to a Request to Examine is unfounded.

Not surprisingly, then, the Attorney General is unable to cite a single case applying Rule

176 to review Requests to Examine. *See* Obj. at 9-11. Instead, he cites two unpublished cases applying Rule 176 to administrative subpoenas issued by the Texas Medical Board. *See Allibone v. Freshour*, No. 17-00357, 2017 WL 5663607, at *2 (Tex. App. Nov. 21, 2017); *Cotropia v. Chapman*, 721 F. App'x 354, 358 nn.2-3 (5th Cir. 2018). Even then, neither of those cases held that Rule 176 was a proper mechanism for challenging an administrative subpoena. Those cases simply assumed, without deciding, that Rule 176 could be used to review what was plainly an "administrative subpoena," *Cotropia*, 721 F. App'x at 358 n.2 (citing Tex. Occ. Code § 153.007; 22 Tex. Admin. Code § 179.4); *Allibone*, 2017 WL 5663607, at *4, not a Request to Examine.

## C. The Fourth Amendment Requires an Opportunity for Precompliance, Not Merely Pre-Enforcement, Review.

The Attorney General alternatively contends that the precompliance review requirement is satisfied because "the RTE statute still guarantees review before any ***penalty*** is imposed" in the form of a quo warranto proceeding. Obj. at 11. This argument misconstrues *Patel*. What that case holds is required by the Fourth Amendment is pre***compliance*** review, not merely pre-***enforcement*** review. The *Patel* Court, citing its prior decision in *Camara*, held that one cannot be put to the choice at the moment of the government's inspection demand of either providing access to the records or refusing access and later challenging the search at "'risk of a criminal penalty.'" *Id.* at 421 (quoting *Camara*, 387 U.S. at 533). It was no answer, the Court had explained in *Camara*, that the subject of the search could, in the later criminal proceeding brought against him after his refusal to provide access, "challenge the inspector's decision to search." 387 U.S. at 532. The statute must afford an opportunity to object to the search in front of a neutral decision-maker in advance of the proceeding in which the State seeks to impose sanctions for noncompliance. *See id.* at 532-33; *see also Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 493 (S.D.N.Y. 2019) ("The Ordinance does not provide for a neutral forum before which a booking service could argue,

12

*before a monthly production deadline*, that the demand … was unreasonable under the Fourth Amendment (e.g., because of its scale or lack of tailoring." (Emphasis added)).  Just as the criminal trial for the misdemeanor violation of the hotel record inspection ordinance did not constitute precompliance review in *Patel*, neither the criminal trial for a misdemeanor RTE Statute violation nor the quo warranto registration revocation proceeding constitute precompliance review here.  Those proceedings both occur ***after*** the date for compliance has passed.  The Fourth Amendment, however, requires an opportunity for review prior to the deadline for compliance.  *See Patel*, 576 U.S. at 420.[5]

In *ESI*, for example, the court described how review of an administrative subpoena was available "only *after* being subject to citation for failing to comply with an administrative subpoena." 450 F. Supp. 3d at 727 (emphasis in original).  But "[t]his is not the order of events contemplated by the Fourth Amendment." *Id.*  "Providing for review only after a citation for noncompliance has issued creates an unconstitutional Hobson's choice for the recipient of an administrative subpoena … : comply with a potentially overbroad subpoena in contravention of Fourth Amendment protections or risk a citation that may or may not withstand review for reasonableness." *Id.*  This, however, is precisely the choice the RTE Statute unconstitutionally forces on Request recipients.[6]  Quo warranto proceedings thus cannot save the constitutionality of

---

[5] In a footnote, the Attorney General reiterates his claim that he cannot prosecute a violation of this provision, citing *State v. Stephens*, 663 S.W.3d 45, 56 (Tex. Crim. App. 2021).  But nothing in the Court's analysis in *Patel* turned on which government office could criminally prosecute violations of the city ordinance.  Indeed, the police officers demanding documents under the city ordinance at issue in that case could not themselves conduct the misdemeanor prosecutions for refusing to permit inspections.  *See* Dkt. 22 at 8.

[6] To make matters worse, one Texas court has held that trial courts presiding over quo warranto proceedings can properly exclude evidence "bearing on whether or not the search was unreasonable and unconstitutional."  *Walker-Texas*, 323 S.W.2d at 606-07.  In other words, not even a post-compliance quo warranto proceeding—the equivalent of the corporate death penalty, *see* Dkt. 22 at 21—guarantees judicial review of the reasonableness of a Request to Examine.

the RTE Statute.

**D.      This Court Cannot Rewrite the RTE Statute to Render It Constitutional.**

During oral argument before the magistrate judge, the Attorney General conceded that the RTE Statute is "not elegantly written" and "not how a legislature would write a statute like this today." Tr. at 28.  So the Attorney General invited the magistrate judge to "read in[to]" the textual requirement for "immediate[e]" compliance a provision for compliance "in a reasonable time." *Id.* at 34.  Now he urges this Court to "adopt a limiting construction" of the RTE Statute.  Obj. at 19.

But as the magistrate judge correctly stated, inferring a "reasonable time" to comply in a statute is only appropriate where there is a "gap" in the statute.  *See In re Grand Jury Proceedings*, 802 F.3d 57, 67-68 (1st Cir. 2015).  The "immediat[e]" compliance requirement in the RTE Statute leaves "no gap to be filled."  Dkt. 52 at 10.  The "immediat[e]" compliance deadline in a state law cannot be stricken and replaced with what a federal court deems a more appropriate compliance period.  *See Computer & Commc'ns. Indus. Ass'n v. Paxton*, No. 24-CV-849, 2024 WL 4051786, __ F. Supp. 3d __, at *18 (W.D. Tex. Aug. 30, 2024) (Pitman, J.) ("[W]e will not rewrite a state law to conform it to constitutional requirements."  (Internal quotation marks omitted)).

Furthermore, as the magistrate judge noted (Dkt. 52 at 12-13), the Attorney General earlier this year represented to another court in a signed pleading (subject to Texas Rule of Civil Procedure 13) that the word "immediate" means "right away" and must be interpreted "as written" no matter how "unfair" its application.  Dkt. 18-8 Ex. A, at 10, 12 (internal quotation marks omitted).  As stated in the R&R, the Attorney General's invitation for the Court to read language into the RTE Statute is an implicit concession that the statute does not, on its face, allow for the reasonable time period in which to comply that the Attorney General advocates in this Court.  And the Attorney General identifies no case law rewriting the RTE Statute in the manner he suggests.  To the contrary, binding case law holds that a federal "court has no authority to rewrite a … law to

14

conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain." *Virginia v. American Booksellers Ass'n*, Inc., 484 U.S. 383, 397 (1988). As stated by the magistrate judge, "'immediate[]' compliance means immediate compliance." Dkt. 52 at 13. It is for the Texas Legislature, if it so desires, to rewrite the RTE Statute; that is not the province of this Court. *See Stevens*, 559 U.S. at 481 ("We will not rewrite a . . . law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain." (internal citations and quotation marks omitted)).

## II. Spirit Can Challenge The Facial Unconstitutionality Of The RTE Statute.

### A. Spirit Has Standing to Bring a Facial Challenge.

Though not raised earlier, the Attorney General now tries to manufacture a standing issue by portraying the RTE Statute as granting him the discretion to set a compliance deadline. *See* Obj. at 16. This argument both misrepresents Spirit's argument and misconstrues the language of the RTE Statute.

The RTE Statute provides that, upon service of a Request to Examine, the recipient must "immediately permit" the Attorney General to examine the corporation's records. Tex. Bus. Orgs. Code § 12.152. Failure to permit such access exposes the filing entity to registration revocation and the company's managers to criminal prosecution. *Id.* §§ 12.155, 12.156. The RTE Statute does not by its terms allow for precompliance judicial review of a Request to Examine, *see supra* at 5, and even were such review available, the RTE Statute places no reasonableness limitation on the Attorney General's discretion to issue a particular Request, *see Humble Oil*, 259 S.W.2d at 589. These provisions individually, and certainly all of them collectively, preclude the opportunity for precompliance reasonableness review that the Fourth Amendment requires.

Spirit, having been served with a Request to Examine, is thus left with the choice of either producing its documents to the Attorney General without opportunity for the precompliance

judicial review of the Request's reasonableness that the Fourth Amendment guarantees or refusing to produce the documents and thereby exposing itself and its employees to sanction. There is no serious argument that, under these circumstances, Spirit lacks standing to challenge the RTE Statute under which the Attorney General purported to issue the Request. *See*, *e.g.*, *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 926 (5th Cir. 2023) (plaintiff had pre-enforcement standing to sue when forced to "choose either to restrict their religious practices or to risk potential penalties").

To avoid the obvious conclusion that Spirit, as a Request to Examine recipient, has standing to challenge the RTE Statute, the Attorney General argues that the RTE "statute ***authorizes*** the Attorney General to demand immediate access when he deems warranted," Obj. at 13, which the Attorney General claims he has not demanded here. But nothing in the RTE Statutes grants the Attorney General discretionary authority to set the deadline for responding to a Request. Rather, the RTE Statute itself imposes the deadline of "immediate[]" compliance, on pain of penalty, on every recipient of a Request to Examine. That the Attorney General may, "as a matter of grace," Dkt. 18-8 at 10, decline to enforce the statute's deadline does not alter the Request recipient's statutory obligation to "immediately" comply nor does it eliminate the risks to the recipient and its managers for failing to do so. *Cf. Texas v. United States*, 787 F.3d 733, 757 (5th Cir. 2015) ("Declining to prosecute does not convert an act deemed unlawful by Congress into a lawful one").[7]

The Attorney General responds that even if Spirit has standing to challenge the RTE Statute in some respect, Spirit does not have standing to challenge the "immediate[]" compliance

---

[7] In any event, the Attorney General's standing argument simply repeats his merits argument: the statute demands immediate compliance, and the Attorney General has no statutory authority to construe immediate compliance to mean anything but. *See* Dkt. 52 at 10 ("There is no gap to be filled in the RTE Statute for it sets a time: 'immediately.'").

obligation because the Request to Examine served on Spirit purported to afford it three weeks to comply. *See* Obj. at 14. This is pure misdirection: Spirit does ***not*** "[c]hallenge the RTE's Statute's '[i]mmediate [c]ompliance' [p]rovision." Obj. at 13. Sprit ***does*** challenge the RTE Statute as a whole because it authorizes a Fourth Amendment search without providing an opportunity for precompliance reasonableness review. That the RTE Statute requires immediate compliance, places no reasonableness limitation on the Attorney General's discretion to examine, and contains no waiver of the Attorney General's sovereign immunity from suit each individually (and even more so all together) preclude the opportunity for judicial review that the Fourth Amendment requires. Spirit, having received a Request to Examine (which threatened criminal penalties and business registration revocation, Martens Decl., Dkt. 18-2, at 3),[8] is at this very moment injured in its constitutional right by the RTE Statute's structure that precludes precompliance judicial review of that Request and puts Spirit to the unconstitutional choice of compliance (thereby surrendering its privacy interest in the documents at issue) or risking immediate arrest, registration revocation, and criminal prosecution of its officers. The Attorney General's argument that a corporate Request recipient lacks standing to challenge the statute under which the Request was issued when that statute requires either the surrender of the corporation's privacy interest in documents without judicial review or refusal and risk of business registration revocation or criminal prosecution is absurd. *See Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) ("When contesting the constitutionality of a criminal statute, 'it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.' (Internal quotation marks omitted)).

---

[8] Only after Spirit filed this lawsuit did the Attorney General issue a new Request to Examine that removed the threat of criminal penalties but still included the threat of business registration revocation. *See* Martens Decl., Dkt. 18-5, at 3.

The Attorney General's inclusion of a three-week deadline to produce the demanded documents from Spirit in his Request to Examine does nothing to alter this analysis. The statutory deadline of "immediate[]" compliance remains, and the three-week extension included in the Request to Examine "as a matter of grace," Dkt. 18-8 at 10, can be revoked at any time. In any event, even the Request to Examine did not purport to disavow enforcement during the entirety of whatever time was needed to complete judicial review of the Request.[9] *See Fund Texas Choice v. Deski*, No. 22-CV-859, 2023 WL 8856052, at *5 (W.D. Tex. Dec. 21, 2023) (Pitman, J.) ("When prosecutors have 'not disavowed enforcement' of a non-moribund statute, a plaintiff is 'not without some reason in fearing prosecution for violation.'" (quoting *Babbitt*, 442 U.S. at 302)).

In sum, Spirit is faced with an imminent risk to its privacy interests in its business records as a result of the Attorney General's issuance of a Request to Examine pursuant to a statute that does not afford an opportunity for precompliance review of the reasonableness of the Request. Spirit thus has standing to challenge the statute pursuant to which the Request was issued.

### B.    The RTE Statute Is Unconstitutional in All Its Applications.

The Attorney General makes a hodge podge of additional arguments, none of which carry the day. First, the Attorney General argues (Obj. at 15) that, to sustain a facial challenge, a plaintiff must demonstrate that the statute at issue is unconstitutional in "all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982). True enough. But in considering potential applications of a statute, *Patel* instructs that a court "consider[] only applications of the statute in which it actually authorizes or prohibits conduct." 576 U.S. at 418. Thus, "when addressing a facial challenge to a statute authorizing warrantless searches, the proper focus of the constitutional inquiry is searches that the law actually authorizes"—not searches

---

[9] Indeed, even in this litigation the Attorney General has refused to grant an extension for as long as necessary to conclude the litigation of this matter. *See* Second Martens Decl., Dkt. 22-1 at ¶ 7.

which would otherwise fall outside the statute.  *Id.*  Here, the RTE Statute obligates a corporation to "immediately permit" the Attorney General access to its corporate documents with no statutory limitation on the scope of the Request and no opportunity for judicial review of the reasonableness of the Request.  This is what the RTE Statute "actually authorizes."  *Id.*  And that grant of authority is unconstitutional in all its applications because, as *Patel* makes clear, it is ***never*** permissible for a government official to require immediate access to a company's documents without the opportunity for judicial review of reasonableness.  *See id.* at 428 (holding that city's ordinance "is facially invalid insofar as it fails to provide any opportunity for precompliance review before a hotel must give its guest registry to the police for inspection.").

The Attorney General argues that Spirit cannot prove the RTE Statute's unconstitutionality in all applications because he does not demand "immediate" compliance with regard to all Requests to Examine and the language of Tex. Bus. Orgs. Code § 12.152 "grants discretion to the Attorney General on what deadline to give a corporation for production."  Obj. at 16.  To the contrary, the RTE Statute puts Request recipients under an obligation to "immediately permit" the Attorney General access to their corporate books and records upon the issuance of the Request. Tex. Bus. Orgs. Code § 12.152.  Whatever "grace" the Attorney General allows is extraneous to what the text of the statute authorizes, and it is the statute's grant of authority that is being facially challenged in this action.  But even stripped of its immediate compliance requirement, judicial review of the reasonableness of a Request would be unavailable to all request recipients, both because the RTE Statute has been conclusively interpreted by the Texas courts as imposing no reasonableness limitation on the Attorney General's requests and because Texas sovereign immunity doctrine precludes judicial review of a Request's reasonableness.  *See supra* at 6, 10-11.

Second, the Attorney General argues that many subpoena and inspection statutes are silent

as to the time of return and, in those instances, court read into those statutes a reasonable compliance period.  Obj. at 16-17.  Notably, the Attorney General fails to cite even one subpoena statute that, by its terms, requires immediate compliance, as does the RTE Statute.  *See id.*  Other statutory regimes cited by the Attorney General have reasonableness language written into them.  *E.g.*, 15 U.S.C. § 49.  But inferring a "reasonable time" into a statute is only appropriate where there is a "gap" in the statute, *see In re Grand Jury Proceedings*, 802 F.3d at 67-68, and the explicit "immediat[e]" compliance provision leaves "no gap to be filled," Dkt. 52 at 10.  Reasonableness cannot be read into the RTE Statute because the statute explicitly calls for immediate compliance.

Third, the Attorney General claims that holding the RTE Statute unconstitutional does "great violence to Texas state sovereignty" because it allows Texas-registered corporations to "flout" the law and their governing documents.  Obj. at 17-18.  To the contrary, refusing to rewrite the statute preserves Texas state sovereignty.  If the Attorney General is correct about his need to examine the records of foreign filing entities in Texas, that is a power the Texas Legislature can easily grant in a constitutionally compliant statute.  It is not, however, for this Court to grant that authority through a rewrite of Texas law.  *See Computer & Commc'ns. Indus. Ass'n v. Paxton*, 2024 WL 4051786, at *18 ("[W]e will not rewrite a state law to conform it to constitutional requirements."  (internal quotation marks omitted)).

## **CONCLUSION**

For the foregoing reasons, Spirit respectfully requests that the Court adopt the magistrate judge's R&R to grant Plaintiff's motion for summary judgment and deny the Attorney General's cross-motion for summary judgment.

Dated: November 18, 2024.

Respectfully submitted,

/s/  Matthew T. Martens
McCARTY LAW PLLC
Darren L. McCarty (SBN: 24007631)
darren@mccartylawpllc.com
1410B West 51st Street
Austin, TX 78756
Telephone: (512) 827-2902

WILMER CUTLER PICKERING HALE
AND DORR LLP
Matthew T. Martens (*pro hac vice*)
    matthew.martens@wilmerhale.com
Jaclyn N. Moyer (*pro hac vice*)
    jaclyn.moyer@wilmerhale.com
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6921

*Attorneys for Plaintiff Spirit
AeroSystems, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this date filed the foregoing PLAINTIFF SPIRIT AEROSYSTEMS, INC.'S RESPONSE TO DEFENDANT W. KENNETH PAXTON'S OBJECTIONS TO THE REPORT AND RECOMMENDATION, via the Court's CM/ECF system, which will automatically give notice to all counsel of record.

This 18th day of November, 2024.

/s/  Matthew T. Martens
WILMER CUTLER PICKERING HALE
AND DORR LLP
Matthew T. Martens (*pro hac vice*)
   matthew.martens@wilmerhale.com
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6921